IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PATRICIA EDGE, in her own right and as representative of a class of persons similarly situated,

Plaintiff,

vs.

ROUNDPOINT MORTGAGE SERVICING CORPORATION,

Defendant.

Case No.: 1:21-cv-00122-TSK

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS COMPLAINT**

Defendant, RoundPoint Mortgage Servicing Corporation ("RoundPoint"), by and through its undersigned counsel, hereby files the following Memorandum of Law in Support of its Partial Motion to Dismiss Plaintiff's Amended Class Complaint.

## I. INTRODUCTION

This action represents Plaintiff, Patricia Edge's ("Plaintiff"), improper attempt to file a putative class action against RoundPoint that arises out of certain fees that RoundPoint assessed to her mortgage loan in accordance with both the terms of the parties' contract and West Virginia law. As discussed in detail below, Plaintiff's claims are insufficient as a matter of law because she cannot establish that any of the fees at issue were improperly assessed. To the contrary, RoundPoint was permitted to assess these fees because they were incurred solely as a result of Plaintiff's default on her loan and while RoundPoint was in the process of realizing upon its security interest in the subject property.

Although RoundPoint possessed the authority to assess these fees to the loan, it subsequently issued a check of $240.00 to Plaintiff to account for the property inspection fees that it assessed. Despite the fact that Plaintiff never actually paid the two property inspection fees that are at issue in this case[1] and that the plain language of the deed of trust barred her from filing this lawsuit the moment that she accepted RoundPoint's payment, she nonetheless filed this action in an improper attempt to recover a windfall. For the reasons set forth more fully below, RoundPoint respectfully requests that this Court reject Plaintiff's misguided attempt to

[1] Although RoundPoint assessed a total of $240 in property inspection fees to Plaintiff's loan, only the $15.00 fees assessed on July 5, 2017 and August 8, 2017 are actionable in this litigation. As set forth more fully below, the remaining $210 in property inspection fees require no further analysis because they were assessed more than four years before Plaintiff commenced this action and cannot give rise to a timely claim under the West Virginia Consumer Credit and Protection Act ("WVCCPA").

impose liability upon RoundPoint for lawfully assessing fees that she agreed to repay in writing when the loan was originated and that are expressly permitted by West Virginia law.

## II. FACTUAL BACKGROUND

### A. The Loan and the Deed of Trust

Plaintiff received a loan from Morgan Stanley Dean Witter Corporation ("Morgan Stanley") on or about April 26, 2002 in the amount of $128,000 (the "Loan") that was secured by a West Virginia Deed of Trust dated April 26, 2002 (the "Deed of Trust"). A copy of the Deed of Trust is attached to the Affidavit of David Hughes (the "Hughes Affidavit")[2] as **Exhibit A**.[3] The Deed of Trust was secured as a lien against the real property located at 216 Wiseman Street, Bridgeport, WV 26330 (the "Property"). *See* Hughes Affidavit, Ex. A at p. 2. On the same date, Plaintiff executed a West Virginia Note in favor of Morgan Stanley and in the amount of $128,000 (the "Note"). A copy of the Note is attached to the Hughes Affidavit as **Exhibit B**.

In Paragraphs 1 and 3 of the Note, Plaintiff agreed that she would repay the Loan by making monthly payments on the first day of each month and would continue making payments until she paid all of the sums owed in connection with the Loan. *See* Hughes Affidavit, Ex. B at

[2] The Hughes Affidavit and accompanying exhibits are attached to the Motion to Dismiss.

[3] RoundPoint recognizes that it has attached documents outside of the Amended Class Complaint (the "Amended Complaint") to the Hughes Affidavit, and it respectfully submits that this Court may review these documents without converting the instant motion into one for summary judgment. In reviewing a motion to dismiss, courts may consider documents extrinsic to the complaint if they are integral to and explicitly relied on in the complaint and if there is no dispute as to their authenticity. *Tinsley v. OneWest Bank, FSB*, 4 F.Supp.3d 805, 819 (S.D. W. Va. 2014). "When a document is properly considered in the context of a motion to dismiss and it conflicts with the bare allegations of the complaint, the document prevails." *Id*. Each of the documents that are attached to the Hughes Affidavit are indisputably authentic, form the basis of Plaintiff's claims and/or were referenced by Plaintiff in the Amended Complaint. Accordingly, this Court may consider all of the documents attached to the Hughes Affidavit without converting this Motion into a motion for summary judgment.

p. 1. In Paragraph 6(B) of the Note, Plaintiff agreed that she would be in default if she did not "pay the full amount of each monthly payment on the date it is due." *Id*. at p. 2.

In Uniform Covenant 7 of the Deed of Trust, Plaintiff agreed that her lender or its agent "may make reasonable entries upon and inspections of the Property." *See* Hughes Affidavit, Ex. A at p. 6. In addition, Uniform Covenant 14 of the Deed of Trust, which is titled "Loan Charges," states as follows:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, **property inspection and valuation fees**. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.

*Id*. at p. 9 (emphasis added).

Uniform Covenant 14 proceeds to state that the lender possesses the right to issue refunds of any loan charges it assessed by reducing the loan balance or issuing a direct payment to the borrower and that "Borrower's acceptance of any such refund made by direct payment to Borrower **will constitute a waiver of any right of action Borrower might have arising out of such overcharge**." *Id*. (emphasis added). In addition, Uniform Covenant 19 states that if Plaintiff defaulted on the Loan and wished to reinstate it, she was required to, among other things pay "all expenses incurred in enforcing the Security Instrument, including, but not limited to, reasonable attorneys' fees, **property inspection and valuation fees**, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument." *Id*. at p. 10 (emphasis added). Pursuant to Uniform Covenant 22 of the Deed of Trust, if Plaintiff defaulted on the Loan, the lender possessed the right to, *inter alia,* collect reasonable fees and costs of title evidence. *Id*. at p. 11.

**B. Plaintiff Defaults on the Loan**

RoundPoint began servicing the Loan on September 1, 2014. *See* Hughes Affidavit at ¶8; Amended Complaint at ¶4. Plaintiff subsequently defaulted on the Loan, and as of July 2017, the Loan was due for the March 2017 installment and all installments due thereafter. A copy of the Payment History for the Loan is attached to the Hughes Affidavit as **Exhibit C**. On July 2, 2017, RoundPoint's foreclosure counsel ordered a Title Certificate to determine what liens and encumbrances were attached to the Property. A copy of the Title Certificate is attached to the Hughes Affidavit as **Exhibit D**. The cost associated with this Title Certificate was $225. A copy of the invoice for the Title Certificate is attached to the Hughes Affidavit as **Exhibit E**. After RoundPoint paid this cost, it assessed a recoverable advance of $225 titled "TITLE COSTS" to the Loan on July 28, 2017. *See* Hughes Affidavit, Ex. C.

On July 3, 2017 and August 6, 2017, RoundPoint's vendor performed inspections of the Property in accordance with RoundPoint's rights under Uniform Covenant 7 of the Deed of Trust. Copies of the Inspection Detail Reports evidencing these inspections (collectively, the "Inspection Reports") are collectively attached to the Hughes Affidavit as **Exhibit F**. After RoundPoint paid the costs associated with these inspections, it assessed recoverable advances of $15.00 titled "PROP INSPECTION" to the Loan on July 5, 2017 and August 8, 2017. *See* Hughes Affidavit, Ex. C.

Plaintiff remained in default on the Loan until she entered into a Loan Modification Agreement (the "Modification Agreement") with RoundPoint in December 2017. A copy of the Modification Agreement is attached to the Hughes Affidavit as **Exhibit G**. In the Modification

Agreement, Plaintiff and RoundPoint agreed that RoundPoint would capitalize $4,978.96 in past due principal, interest, escrow, and recoverable loan charges (including the outstanding property inspection fees) into the unpaid principal balance of the Loan in order to bring the Loan current and agreed that the new balance would be $98,830.93. *See* Hughes Affidavit, Ex. G at p. 1. On April 1, 2019, RoundPoint transferred the servicing of the Loan to BSI Financial Services, Inc. *See* Hughes Affidavit at ¶24.

### C. RoundPoint Tenders a Check to Plaintiff in the Amount of $240, and She Cashes It.

In or around January 2019, RoundPoint performed a periodic internal review of, among other things, all of the property inspection fees that it assessed to loans secured by West Virginia properties. *See* Hughes Affidavit at ¶15. Following the completion of this review, out of an abundance of caution and in an (apparently unsuccessful) attempt to avoid any potential disputes with Plaintiff, RoundPoint issued a check in the amount of $240 (the "Check") to Plaintiff on March 23, 2020. A copy of the Check is attached to the Hughes Affidavit as **Exhibit H**. RoundPoint's records indicate that Plaintiff cashed the Check on June 3, 2020. *See* Hughes Affidavit at ¶17.

### D. The Instant Action

Plaintiff commenced this action by filing a Class Complaint (the "Complaint") with the Circuit Court of Harrison County, West Virginia on June 15, 2021. A copy of the Complaint is attached to the Hughes Affidavit as **Exhibit I**. RoundPoint filed a Notice of Removal with this Court on September 2, 2021, and it filed an Answer to the Complaint on September 9, 2021. *See* Dkt. Nos. 1, 4. In the Complaint, Plaintiff asserted three putative class claims against RoundPoint and one individual claim and set forth a series of broad and open-ended allegations against RoundPoint that were unsupported by a single exhibit. *See* Hughes Affidavit, Ex. I

*generally*. Although a cursory review of the Payment History unambiguously shows that RoundPoint never assessed a late fee to the Loan that exceeded $15.00, Plaintiff asserted a putative class claim alleging that RoundPoint assessed late fees in excess of $30.00 in violation of the WVCCPA. *See* Hughes Affidavit, Ex. C and Ex. I at ¶¶37-38.

On September 8, 2022, Plaintiff filed the Amended Complaint in order to, among other things, remove her deficient claim arising out of the late fees that RoundPoint assessed to the Loan. *See* Dkt. No. 53. Accordingly, the Amended Complaint contains two putative class claims and one individual claim. *Id*. In Count I, Plaintiff set forth a class claim that alleged that RoundPoint violated W. Va. Code §§46A-2-127(c), 127(g), 128(c), and 128(d) by threatening to collect property inspection fees and other default related fees not permitted by law or contract and violated W. Va. Code §46A-2-124(f) by threatening to take action prohibited by law. *Id*. at ¶¶41-43. In Count II, Plaintiff set forth a class claim that alleged that RoundPoint violated W. Va. Code §46A-2-127(d) by making false representations regarding fees and costs that she owed in connection with the Loan. *Id*. at ¶¶44-45. Finally, in Count III, Plaintiff asserted an individual claim that alleged that RoundPoint violated multiple sections of the WVCCPA through its purportedly abusive and/or harassing attempts to collect a debt from her. *Id*. at ¶¶46-50.

For the reasons set forth more fully below, RoundPoint respectfully submits that Counts I and II of the Amended Complaint are ripe for dismissal.[4] Count I is insufficient as a matter of law because both the Deed of Trust and West Virginia law provided RoundPoint with express authority to assess property inspection fees and title certificate fees to the Loan. In addition,

[4]RoundPoint is electing to wait until after it obtains additional discovery before it files a motion seeking summary judgment with respect to Count III due to the disputed issues of material fact that remain with respect to that claim only.

Plaintiff waived her right to file a lawsuit against RoundPoint arising out of its assessment of property inspection fees once she cashed the Check. Moreover, Count II must be dismissed because it is merely an extension of Count I insofar as Plaintiff attempts to impose liability on RoundPoint for notifying her that she was required to repay the inspection fees that RoundPoint properly assessed to the Loan. In addition, Count II is legally insufficient because Plaintiff has failed to provide any specific information to support her allegation that RoundPoint made a false representation to her.

Thus, for the reasons set forth more fully below, RoundPoint respectfully requests that this Court grant the instant motion and dismiss Counts I and II of the Amended Complaint with prejudice.

## III. LEGAL ARGUMENT

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed when it fails to state a claim upon which relief can be granted. In reviewing a motion under Rule 12(b)(6), a court must accept as true all of the factual allegations contained in the plaintiff's complaint. *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007). However, courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The plaintiff must provide factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A complaint's allegations and supporting facts must raise the plaintiff's right to relief to beyond mere speculation. *Id*. The facts pled must amount to more than "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court should dismiss a complaint if it does not contain enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570.

**B. Count I Must Be Dismissed Because the Property Inspection Fees and Title Certificate Fee that RoundPoint Assessed to the Loan Were Authorized by the Deed of Trust and West Virginia Law.**

**1. Both the Deed of Trust and W. Va. Code §46A-2-115(a) Provided RoundPoint With the Authority to Assess Property Inspection Fees to the Loan.**

As an initial matter, when Plaintiff signed the Deed of Trust, she agreed that her lender possessed the right to conduct inspections of the Property and assess property inspection fees to the Loan. *See* Hughes Affidavit, Ex. A at p. 6, 9, 10. As a result, Plaintiff's allegation in Paragraph 17 of the Amended Complaint that the inspection fees that RoundPoint assessed to the Loan were not permitted by the Deed of Trust is an oversight at best and an outright misrepresentation at worst. In addition, as set forth below, Plaintiff has not cited to – and cannot cite to – any statute, regulation, or case that supports her allegation that RoundPoint lacked the right to assess a property inspection fee to the Loan.

W. Va. Code §46A-2-115(a) is titled "Limitation on default charges" and states as follows: "Except for **reasonable expenses, including costs and fees authorized by statute incurred in realizing on a security interest,** the agreements that evidence a consumer credit sale or a consumer loan may not provide for charges as a result of default by the consumer other than those authorized by this chapter" (emphasis added). Because there is no ambiguity in the language of §46-2-115, the plain meaning rule of statutory interpretation states that this Court's analysis must end with the statute's plain language. *Bloom v. Library Corp.*, 112 F.Supp.3d 498,

504 (N.D. W. Va. 2015). On its face, §46A-2-115 clearly indicates that lenders are permitted to assess reasonable expenses that are incurred in realizing upon a security interest.

Indeed, this interpretation has borne out on numerous prior occasions where West Virginia state and federal courts have found that mortgage lenders may assess property inspection fees to loans in default because these fees were reasonable expenses incurred "in realizing on a security interest." For instance, in *McFarland v. Wells Fargo Bank, N.A.*, 19 F.Supp.3d 663, 676 (S.D. W. Va. May 7, 2014), *vacated in part on other grounds*, 810 F.3d 273 (4th Cir. 2016), the court held that a lender complied with §46A-2-115 when assessing property inspection fees to a loan that was in default. The court found that these fees were incurred "in realizing on a security interest" because the loan was in default and the lender had the right to foreclose upon the property. *Id*. In addition, the court held that the fees were reasonable because conducting property inspections when a loan is in default ensures that the property remains occupied and in good repair. *Id*. at 677.

Similarly, in *Kesling v. Countrywide Home Loans, Inc*., 2011 WL 227637, at *5 (S.D. W. Va. Jan. 24, 2011), the court found that a lender had the right to assess reasonable property inspection fees to ensure that the property remained occupied and in acceptable condition. Moreover, the court found that the inspection fees were expressly authorized by §46A-2-115(a) insofar as that section permits servicers to assess reasonable expenses incurred as a result of realizing on a security interest. *Id*.

Likewise, in 2018, the Circuit Court of Barbour County, West Virginia issued a decision in *Gillis v. Bayview Loan Servicing, LLC* whereby it granted a lender's motion for summary judgment and cited to *Kesling* and *McFarland* for the proposition that "property inspection fees are recoverable if incurred in realizing on a security interest." A copy of the *Gillis* decision is

attached to the Hughes Affidavit as **Exhibit J**. The court further held that conducting monthly property inspection fees for loans in default is standard practice in the loan servicing industry and that "Fannie Mae, a leading investor for mortgage loans, requires servicers to make monthly inspections." *See* Hughes Affidavit, Ex. J at ¶¶49-50. The court further noted that one property inspection per month was necessary for a mortgage servicer to ensure that the property was maintained, occupied, and not damaged by fire, flood, the elements or vandalism. *Id*. at ¶51.

Much like the servicers in the above-referenced cases, RoundPoint assessed inspection fees to the Loan in July 2017 and August 2017 because the Loan was in default and the Deed of Trust supplied RoundPoint with the right to inspect the Property to confirm whether it was occupied and/or in satisfactory condition. In addition, a review of the Inspection Reports shows that RoundPoint's vendor actually performed inspections of the Property. *See* Hughes Affidavit, Ex. F. Moreover, there can be no dispute that the $15.00 fees that RoundPoint assessed to the Loan were a reasonable amount. Accordingly, the inspection fees that RoundPoint charged to the Loan in July 2017 and August 2017 were lawfully assessed in accordance with the Deed of Trust and the WVCCPA.

In the Amended Complaint, Plaintiff attempts to argue that W. Va. Code §46A-2-115 does not permit a lender to assess property inspection fees to consumers because these fees are not specifically enumerated in the list of fees contained in §46A-2-115(b)(2). *See* Dkt. 53 at ¶¶10-15. However, the *McFarland* court soundly rejected a nearly identical argument and provided the following explanation for its reasoning:

> The plaintiff's argument that *all* fees are prohibited, save those expressly enumerated by statute, is without merit. Section 46A–2–115 indicates that "reasonable expenses" may be charged by a lender as a result of default, *including* those expressly authorized by statute. Thus, reasonable expenses are permitted, as well as those authorized by statute.

19 F.Supp.3d at 676 (emphasis within); *see also Kesling*, 2011 WL 227637, at *5 (finding that §46A-2-115(a) expressly permits lenders to recover reasonable expenses incurred as a result of realizing on a security interest and that this subsection provided "statutory authorization for Countrywide's imposition of reasonable inspection fees").

Thus, any argument that lenders are barred from charging any fee that is not specifically enumerated in §46A-2-115(b)(2) is inconsistent with the plain language of this statute. Critically, §46A-2-115(a) states that "[e]xcept for reasonable expenses, **including costs and fees authorized by statute…**" (emphasis added). The term "include" is defined as "[t]o contain part of something" while the participle "including" "typically includes a partial list." *See* Black's Law Dictionary 15c (11th ed. 2019). The West Virginia legislature's use of the term "including" was intentional in that it clearly conveyed that "costs and fees authorized by statute" were among the type of reasonable expenses that lenders were permitted to assess to consumers.

If the West Virginia legislature wished to prohibit lenders from assessing any expense that was not specifically enumerated in §46A-2-115(b)(2), it would have drafted subsection (a) to clearly state as such. For example, the legislature could have drafted subsection (a) to state that "Except for the reasonable expenses set forth in subsection (b)(2), no other costs and fees incurred in realizing on a security interest are permitted to be charged to consumers." However, the legislature did not draft §46A-2-115 in this manner, and the *McFarland* and *Kesling* courts correctly interpreted it by ruling that subsection (a) permitted lenders to assess reasonable property inspection fees to consumers.

Thus, for the reasons set forth above, it is unequivocal that both the Deed of Trust and West Virginia law authorized RoundPoint to assess property inspection fees to the Loan.

**2. The Deed of Trust and W. Va. Code §46A-2-115(b)(2) Provided RoundPoint With the Authority to Assess the Title Certificate Fee to the Loan.**

Pursuant to both Uniform Covenants 14 and 22 of the Deed of Trust, RoundPoint possessed the right to assess certain fees to the Loan, including costs of title evidence, in order to protect its security interest once Plaintiff entered into default. *See* Hughes Affidavit, Ex. A. at p. 9, 11. In addition, W. Va. Code §46A-2-115(b)(2) states that consumer loan agreements may permit the recovery of a number of different charges, including "all costs incidental to a title examination including professional fees, expenses incident to travel and copies of real estate and tax records."

As a result, it is indisputable that both the Deed of Trust and West Virginia law provided RoundPoint with the authority to assess the title certificate fee of $225 that it charged to the Loan on July 28, 2017. Thus, to the extent that Plaintiff attempts to allege that this fee was improperly assessed to the Loan, such claim must be rejected.

**3. Plaintiff is Attempting to Place a Round Peg in a Square Hole by Alleging that W. Va. Code §46A-2-127 and §46A-2-128 Govern her Illegal Fees Claim.**

Notably, in Count I, Plaintiff is <u>not</u> alleging that RoundPoint violated W. Va. Code §46A-2-115 by assessing the fees in question to the Loan. Instead, she alleges that RoundPoint violated W. Va. Code §46A-2-127 and §46A-2-128 by threatening to collect additional fees and costs not permitted by law or contract. *See* Hughes Affidavit, Ex. I at ¶¶42-43.

As an initial matter and as discussed more fully below, Plaintiff cannot articulate a claim under these sections because she has failed to provide any information whatsoever regarding the nature of these communications and why they were purportedly unlawful. In addition, as the

*McFarland* court stated, §46-A-127 and §46-A-128 "merely address the *means* of collecting fees, not the legality of the underlying fees." 19 F.Supp.3d 663, 676 n. 3 (emphasis within). As a result, if Plaintiff wishes to show that the property inspection fees were improper, she will be required to establish that RoundPoint was not realizing upon its security interest in accordance with W. Va. Code §46A-2-115(a) at the time that this fee was assessed. Because Plaintiff cannot make this showing, Count I is insufficient as a matter of law and must be dismissed with prejudice.

**C. Once Plaintiff Cashed the Check, She Waived the Right to Assert a Claim Arising out of RoundPoint's Assessment of the Property Inspection Fees.**

As set forth in Uniform Covenant 14 of the Deed of Trust, "Borrower's acceptance of any such refund made by direct payment to Borrower **will constitute a waiver of any right of action Borrower might have arising out of such overcharge**." *See* Hughes Affidavit, Ex. A at p. 9. In other words, once RoundPoint chose to issue a refund to Plaintiff for the property inspection fees that it assessed to the Loan and Plaintiff voluntarily decided to accept it, she waived any right of action that she may have possessed arising out of such fees. If Plaintiff wished to retain the ability to assert a claim against RoundPoint arising out of its assessment of property inspection fees to the Loan, she was required to void the check or refrain from cashing it. However, Plaintiff cannot seek a windfall by both cashing the Check and filing a lawsuit against RoundPoint seeking to recover damages and attorneys' fees.

Setting aside the fact that Plaintiff could not possibly have suffered any actual harm as a result of RoundPoint's lawful assessment of property inspection fees that she never paid, permitting Plaintiff to receive the double recovery that she is seeking would be both inequitable and unjust. As such, application of both law and equity weigh in RoundPoint's favor and Count I of the Amended Complaint must be dismissed.

**D. Count II of the Amended Complaint is Ripe for Dismissal Because it is Entirely Derivative of Count I and is Insufficiently Pled.**

In Count II of the Complaint, Plaintiff alleges that RoundPoint violated W. Va. Code §46A-2-127(d) "[b]y making false representations regarding additional fees and costs" and misrepresenting "the amount of a claim." *See* Hughes Affidavit, Ex. I at ¶45. W. Va Code §46A-2-127 contains a preamble stating that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims." The legislature then lists a number of examples of conduct that violate §46A-2-127, with (d) indicating that a debt collector violates this section when it makes "[a]ny false representation or implication of the character, extent or amount of a claim against a consumer."

As an initial matter, Count II must be dismissed because this claim is premised entirely on the notion that RoundPoint lacked the authority to assess property inspection fees to the Loan. Because both the Deed of Trust and the WVCCPA provided RoundPoint with the express authority to assess inspection fees, Plaintiff cannot possibly set forth a viable claim that RoundPoint violated the WVCCPA by "making false representations" regarding the amount of the property inspection fees that she owed.

While the Complaint provides no information whatsoever regarding the specific details of the communication(s) giving rise to Count II, RoundPoint believes that Plaintiff may be alleging that it violated §46A-2-127(d) when it sent periodic statements to Plaintiff indicating that the July 2017 and August 2017 property inspection fees remained unpaid. To the extent that Count II is premised on allegations that RoundPoint's purported misrepresentations were made in a periodic monthly statement, this Court has made it abundantly clear on several occasions that a servicer cannot violate §46A-2-127 by sending a periodic statement to a borrower. *See e.g. Perrine v. Branch Banking and Trust Company*, 2018 WL 11372226, at *5 (N.D. W. Va. Sept.

25, 2018) (Bailey, J.). In *Perrine*, the plaintiffs alleged that each periodic statement that the defendant sent constituted a separate violation of §46A-2-127(d) because they misrepresented the character, extent or amount of the debt. *Id*. However, this Court found that the defendant sent these statements in an effort to comply with state and federal law, that its conduct did not rise to the level of "unscrupulous collection practices," and arguably did not constitute collection practices at all. *Id*.

This Court found that even if the statements contained incorrect information, the defendant's conduct in sending them was not fraudulent, deceptive or misleading as required for the court to find that a WVCCPA violation existed. *Id*. This Court concluded by finding that even if the defendant's monthly billing statements could be construed as misleading or containing a false representation of the amount of a claim owed, "it would stretch too far the language and the purpose of the WVCCPA to hold that the defendant misled the plaintiffs while engaging in debt collection." *Id*. (*citing Rice v. Green Tree Servicing, LLC*, 2015 WL 5443708, at *12 (N.D. W. Va. Sept. 12, 2015) (Groh, J.) (granting a lender's motion for summary judgment with respect to §46A-2-127(d) claim and finding that the monthly statements that defendant sent to plaintiff were sent to comply with state and federal law and did not amount to a "false representation").

In *Birchfield v. Rushmore Loan Management Services, LLC*, 2019 WL 9832188, at *13 (N.D. W. Va. Jan. 29, 2019) (Bailey, J.), the plaintiffs alleged that their servicer committed 32 violations of §46A-2-127(d) by falsely representing the amount owed in connection with the subject mortgage loan on each monthly billing statement that the servicer sent. However, this Court dismissed the plaintiffs' §46A-2-127(d) claim, found that the monthly statements contained an accurate representation of the amount owed, and held that they "simply could not

be found in any way to be false or misleading." *Id*. at *14. This Court also cited to *Rice* for the proposition that monthly statements sent for the purpose of complying with state and federal law cannot constitute the type of fraudulent, deceptive, or misleading conduct needed to establish a violation of West Virginia law. *Id*.

Thus, in addition to being ripe for dismissal on the grounds that RoundPoint possessed legal authority to assess property inspection fees to the Loan, Count II is equally meritless if it is premised upon the periodic statements that RoundPoint sent to Plaintiff. In sending periodic statements to Plaintiff, RoundPoint was merely complying with state and federal laws by providing Plaintiff with a breakdown of the amounts that she owed in connection with the Loan. Thus, even assuming purely for the sake of argument that one of the statements that RoundPoint sent contained an inaccurate total amount owed, these statements cannot constitute the type of fraudulent, deceptive, or misleading conduct needed to establish a violation of W. Va. Code §46A-2-127(d).

Based upon the foregoing, Count II of the Complaint is legally insufficient and must be dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, RoundPoint respectfully requests that this Court grant the instant Motion and dismiss Counts I and II of the Amended Complaint with prejudice.

Respectfully submitted,

**GOODWIN & GOODWIN, LLP**

/s/ Carrie Goodwin Fenwick
Carrie Goodwin Fenwick
WV Bar No. – 7164
300 Summers Street, Suite 1500
Charleston, WV 25301
(304) 346-7000
cgf@goodwingoodwin.com

**BLANK ROME LLP**

*/s/ Kevin Eddy*
Kevin Eddy (admitted *pro hac vice*)
501 Grant Street, Suite 850
Pittsburgh, PA 15219
(412) 932-2757
KEddy@BlankRome.com

*Counsel for Defendant, RoundPoint Mortgage Servicing Corporation*

Dated: September 19, 2022

**CERTIFICATE OF SERVICE**

I, Carrie Goodwin Fenwick, hereby certify that on this 19th day of September, 2022, a true copy of the foregoing document was served on the following parties via electronic mail and ECF:

Jason E. Causey, Esquire
Bordas & Bordas, PLLC
1358 National Road
Wheeling, WV 26003

Patricia M. Kipnis, Esquire
Bailey & Glasser LLP
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
*Attorneys for Plaintiff*

/s/ Carrie Goodwin Fenwick
Carrie Goodwin Fenwick (WV Bar No. 7164)