# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| PATRICIA EDGE, in her own right and as representative of a class of persons similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>ROUNDPOINT MORTGAGE SERVICING CORPORATION,<br><br>　　　　　　Defendant. | Case No.: 1:21-cv-00122-TSK |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR CLASS CERTIFICATION</u>**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  LIABILITY AND PROCEDURAL BACKGROUND ...................................................... 2

III. ARGUMENT .................................................................................................................. 4

   A.  The proposed class is ascertainable. ...................................................................... 5

   B.  The proposed class meets the Rule 23(a) requirements. ........................................ 6

1.  Class size ................................................................................................................. 6

2.  Plaintiff and class members share common factual and legal issues. .............................. 6

3.  Plaintiff's claims are typical because they arise from Defendant's uniform debt collection practices and are based on the same legal theory as the class claims. ........................... 8

4.  Plaintiff has established that she has no conflicts with class members, possesses a genuine personal interest in the case, and will adequately represent class members. .................... 9

   C.  The Proposed Class Meets Rule 23(b)(3)'s requirements that common issues predominate, and a class action is the superior method of adjudicating this matter. ..................... 10

1.  The Common Questions Here Predominate Over Individual Questions, Presenting the Classic Case for Class Action Treatment. ...................................................................... 10

2.  A Class Action is the Most Manageable, Efficient, and Superior Mechanism for Resolving Class Members' Claims. ................................................................................ 13

   D.  The Court should appoint Class Counsel to represent the class. ......................... 14

IV.  CONCLUSION ............................................................................................................. 15

**TABLE OF AUTHORITIES**

**Cases**

*Adkins v. Midland Credit Mgmt.,* C-5:17-041017, 2019 WL 1549712 (S.D. W.Va. Apr. 9, 2019) .................................................................................................................................................. 11
*Alig v. Quicken Loans Inc.*, 2017 WL 5054287, at *14 (N.D. W.Va. July 11, 2017) .................. 11
*Alig v. Quicken Loans Inc.,* Civ. A. No. 5:12-cv-114 (N.D. W.Va.) ............................................ 13
*Alig v. Quicken Loans Inc.,* No. 5:12-cv-114, 2016 WL 10489897, at *14 (N.D. W.Va. June 2, 2016) .......................................................................................................................................... 4
*Allen v. Holiday Universal,* 249 F.R.D. 166, 191 (E.D. Pa. 2008) .............................................. 12
*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594 (1997) ..................................................... 9
*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466, 133 S.Ct. 1184, 1195 (2013) .......................................................................................................................................... 4
*Baxley v. Jividen,* 338 F.R.D. 80, 88 (S.D. W.Va. Dec. 21, 2020) (Chambers, J.) (*quoting Brown v. Nucor Corp.,* 576 F.3d 149, 153 (4th Cir. 2009).................................................................... 8
*Brown v. Consumer Law Associates, LLC*, 283 F.R.D. 602, 615 (E.D. Wash. 2012).................. 12
*Brown v. Nucor Corp.,* 785 F.3d 895 (4th Cir. 2015)................................................................... 12
*Central Wesleyan v. W.R. Grace & Co.*, 6 F.3d 177, 188 (4th Cir. 1993).................................... 13
*Cypress v. Newport News General & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967)........................................................................................................................................... 6
*Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006) ................................................. 8
*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338 (1980). ........................... 14
*Dijkstra v. Carenbauer,* No. 5:11-cv-152 (N.D.W. Va.) ............................................................. 13
*EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014)................................................................. 4
*Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003) .............................. 9
*Gray v. Hearst Communs., Inc.,* 444 Fed. Appx. 698, 702 (4th Cir. 2011).................................. 12
*Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 218 (D. Md. 1997).................................. 9
*Holsey v. Armour & Co.,* 743 F.2d 199, 217 (4th Cir. 1984) ....................................................... 6
*Kay Company, LLC v. EQT Prod. Co.*, 2017 WL 10436074, at *10 (Sept. 6, 2017)..................... 9
*Kelley v. Norfolk & Western Ry. Co.,* 584 F.2d 34 (4th Cir. 1978) .............................................. 6
*Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 146 (4th Cir. 2001) .................................................. 4
*Mey v. Matrix Warranty Solutions, Inc.*, No. 5:21-cv-62, 2023 WL 3695593, at *6 (N.D. W. Va. Mar. 23, 2023).............................................................................................................................. 6
*Mey v. Venture Data, LLC*, 2017 WL 10398569, at *3 (N.D. W.Va. June 6, 2017) .................... 4
*Newton v. Am. Debt Servs., Inc.,* No. C-11-3228 EMC, 2015 WL 3614197, at *8 (N.D. Cal. June 9, 2015)..................................................................................................................................... 12
*Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 536 (E.D.N.C. 1995) ...................................... 6
*S. Country Farms, Inc. v. THQ Appalachia I, LLC*, No. 5:21-cv-84, 2023 WL 2824907, *5 (N.D. W. Va. Mar. 13, 2023) ................................................................................................................. 5
*Smith v. Res-Care, Inc.,* No. 3:13-5211, 2015 WL 461529, at *4 (S.D. W.Va. Feb. 3, 2015)....... 7
*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 449 (2016) ....................................................... 4
*Vance v. DirecTV, LLC,* 2022 WL 3044653, at *6 (N.D. W.Va. Aug. 1, 2022) ........................... 6
*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2545 (2011) ...................................................... 7

*Yates v. NewRez LLC*, No. TDC-21-3044, 2023 WL 5108803 (D. Md. Aug. 8, 2023) ................. 1

**Statutes**

Fed. R. Civ. P. 23(g) ............................................................................................................... 14
Fed. R. Civ. P. 23(a) ................................................................................................................. 4
Fed. R. Civ. P. 23(a)(1) ............................................................................................................. 6
Fed. R. Civ. P. 23(a)(2) ............................................................................................................. 6
Fed. R. Civ. P. 23(a)(3) ............................................................................................................. 8
Fed. R. Civ. P. 23(a)(4) ............................................................................................................. 9
West Virginia Code §46A-2-115 .............................................................................................. 7
West Virginia Code § 46A-2-128 ............................................................................................. 1
West Virginia Code § 46A-2-127 ............................................................................................. 1
West Virginia Code § 46A-2-127(d) ........................................................................................ 3
West Virginia Code § 46A-2-124 ............................................................................................. 1
West Virginia Code § 46A-2-127(g) ........................................................................................ 2
West Virginia Code § 46A-2128(d) ......................................................................................... 2
West Virginia Code §46A-2-124(f) ......................................................................................... 3
West Virginia Code §46A-2-127(c) ......................................................................................... 2

## I. INTRODUCTION

Defendant Roundpoint Mortgage Servicing Corporation ("Roundpoint" or "Defendant") engaged in illegal debt collection activity directed towards West Virginia consumers in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), West Virginia Code § 46A-2-128, -2-127, -2-124. Plaintiff Patricia Edge seeks to represent a class of persons from whom Roundpoint assessed illegal property inspection fees. Discovery has revealed the exact number of West Virginians whose loans Defendant serviced and who paid such fees. Statutory penalties are available under the WVCCPA for Defendant's uniform conduct.

This case is based entirely upon Defendant's standardized practices and a standardized fee that Plaintiff alleges was a per se violation of several sections of the WVCCPA. Cases based upon violations of consumer protection laws, and particularly form collection fees, are ideally suited for class certification. Indeed, earlier this month another court in this Circuit certified a class action under another state consumer statute alleging that property inspection fees were illegal. *Yates v. NewRez LLC*, No. TDC-21-3044, 2023 WL 5108803 (D. Md. Aug. 8, 2023) (granting motion for class certification of claims alleging defendant illegally charged inspection fees to Maryland homeowners in violation of Maryland consumer protection law.)

Importantly most, if not all issues raised in this litigation will likely be resolved through summary judgment. The parties' cross-motions for summary judgment are due to be filed in one week, on August 29, 2023. Accordingly, this case is perfectly suited for class certification, and Plaintiff requests that the Court certify the following class:

> **All consumers with West Virginia addresses who, within the applicable statute of limitations preceding the filing of this action through the date of class certification, had or have loans serviced by Defendant and were assessed at least one property inspection fee on or before February 29, 2020.**

For these reasons and all those set forth below, Plaintiff asks the Court to certify the proposed class and appoint the following firms and attorneys as class counsel:

**Bailey & Glasser LLP**
*Jonathan Marshall, Esq.*
*Patricia Kipnis, Esq.*

**Bordas & Bordas, PLLC**
*Jason Causey, Esq.*

## II.   LIABILITY AND PROCEDURAL BACKGROUND

Plaintiff brought this action in the Circuit Court of Harrison County, West Virginia, on June 15, 2021. In the operative Amended Complaint, Plaintiff alleges that, *inter alia*, Roundpoint impermissibly profits from the homeowners whose mortgages it services by charging and collecting illegal property inspection fees which are not permitted by statute or the homeowners' federally regulated loans. Am. Compl. ¶¶ 5-17. This practice is illegal under West Virginia law, which does not allow debt collectors to charge fees not expressly authorized by statute. *Id.* at ¶ 9. Nevertheless, and despite its uniform contractual obligations to charge only fees explicitly allowed under both the mortgage and applicable law, and with no statute authorizing property inspection fees, Defendant leverages its position of power over homeowners to assess these fees.

Plaintiff's loan history and mortgage billing statements confirm that Defendant assessed these property inspection fees on four occasions to her within the applicable statute of limitations. **Exhibit A**, RP 01978, 1979 (Plaintiff's loan history); **Exhibit B**, RP 159-168 (Plaintiff's mortgage billing statements).

The operative complaint pleads two class claims. Count I is for illegal assessment of fees under Section 46A-2-127(c), -127(g), -128(c), and -128(d) of the WVCCPA, all for collecting or threatening to collect additional fees and costs not permitted by law or contract, as well as for

2

violating Section 46A-2-124(f) of the Act, which makes it illegal to threaten to take any action prohibited by Chapter 46 or other law regulating debt collector's conduct. Compl. ¶¶ 41-43. Count II is for illegal debt collection – false representation of amount of claim, for making false representations regarding additional fees and costs in violation of W. Va. Code § 46A-2-127(d).

Roundpoint has produced a spreadsheet in response to class discovery providing the loan identifier, transaction date, fee amount, and confirmation that the fee amount was paid to a vendor, for all proposed class members. **Exhibit C,** Exemplar page of Proposed Class Spreadsheet**.** Specifically, Roundpoint assessed 920 property inspection fees for class members meeting the class definition. *See* **Exhibit D, Todd Dep. at** 62:9-17. Roundpoint's corporate designee further confirmed at deposition that there are 198 total loan accounts in the class. **Exhibit D, Todd Dep.** at 61:14-24. Further, Roundpoint's corporate designee confirmed at deposition that Roundpoint could readily calculate the number of debt collection communications sent to class members that referred to or included the property inspection fees among the fees included in the balance. **Exhibit D, Todd Dep**. at 59:2 – 61:9. Defendant produced exemplars of these debt collection communications in discovery. *See* **Exhibit E**, Notice of Returned Payment, produced at bates number RP 02568-69 (referencing "other fees"); **Exhibit F**, Repayment Plan Communication, produced at bates number RP02570-76  (noting expenses "may include… property preservation expenses…" and that a "fee equal to the cost of the property valuation may be charged to you"); **Exhibit G**, Repayment Plan Communication, produced at RP02577-2583 (noting expenses may include "property preservation expenses"); **Exhibit H**, Reinstatement Communication, produced at RP02586-89 (referencing "Charges and Fees" which "may include corporate advances and fees" which in turn "may include. . . property preservation expenses"); and **Exhibit I,** Repayment Plan communication, produced at RP02590-92 (referencing "property preservation expenses").

3

Defendant has also produced uniform policies and procedures with respect to Roundpoint's debt collection procedures, including with respect to its collection of property inspection fees in particular. **Exhibit J,** Property Inspections Procedures, produced at RP 02525-02566.

## III.   ARGUMENT

A class action must satisfy each of Rule 23(a)'s four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 449 (2016). Additionally, the class action must fall into one of three categories under Rule 23(b). Plaintiff seeks certification under Rule 23(b)(3), which requires common questions to predominate and a class action to be the superior method to adjudicate claims.

The district court has "broad discretion in deciding whether to certify a class." *Mey v. Venture Data, LLC*, 2017 WL 10398569, at *3 (N.D. W.Va. June 6, 2017) (*quoting Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 146 (4th Cir. 2001)); *see also EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) (district court's ruling on class certification reviewed for abuse of discretion); *see also Alig v. Quicken Loans Inc.,* No. 5:12-cv-114, 2016 WL 10489897, at *14 (N.D. W.Va. June 2, 2016) (certifying class under WVCCPA)[1]. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466, 133 S.Ct. 1184, 1195 (2013). Additionally, "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id.* at 1191 (emphasis in original).

---

[1] *Alig* is on appeal before the Fourth Circuit on the narrow issue of whether plaintiffs and the class have standing after *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).

4

Under the lens of Rule 23, this case is ideal for class certification because all class claims "relate to the controversy at the heart of the litigation," whether Defendant's property inspection Fees violate the WVCCPA. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 366 (4th Cir. 2014).

### A. The proposed class is ascertainable.

"Although not specifically required by Rule 23, the Fourth Circuit has 'repeatedly recognized that Rule 23 contains an implicit threshold requirement that members of a proposed class be 'readily identifiable.'" *S. Country Farms, Inc. v. THQ Appalachia I, LLC*, No. 5:21-cv-84, 2023 WL 2824907, *5 (N.D. W. Va. Mar. 13, 2023), citing *EQT Prod. Co. v. Adair,* 764 F.3d 347, 358 (4th Cir. 2014) (citations omitted). "This implied rule has regularly been described 'as an 'ascertainablity' requirement.'" *Id.* (citations omitted). "However phrased, the requirement is the same. A class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id.* (citations omitted). "The plaintiffs need not be able to identify every class member at the time of certification." *Id.* "But if class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." *Id.*

The proposed class here is readily ascertainable in that the court can easily identify the 198 class members in reference to objective criteria, which Defendant does not contest and has in fact produced in discovery. Indeed, the parties do not dispute that there are 198 West Virginia consumers who had or have loans serviced by Defendant and were assessed property inspection fees through February 29, 2020. This factor is therefore met.

5

**B. The proposed class meets the Rule 23(a) requirements.**

1. <u>Class size.</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.*, 584 F.2d 34 (4th Cir. 1978)). Nor is there a "bright line test for determining numerosity," as the "determination rests on [the] Court's practical judgment in light of the particular facts of the case." *Mey v. Matrix Warranty Solutions, Inc.*, No. 5:21-cv-62, 2023 WL 3695593, at *6 (N.D. W. Va. Mar. 23, 2023), citing *Vance v. DirecTV, LLC*, 2022 WL 3044653, at *6 (N.D. W.Va. Aug. 1, 2022).

Based on Defendant's own records, there were 920 fees collected that meet the class definition, on 198 consumer loans. In addition, Defendant sent debt communications to Plaintiff and putative class members referencing and/or threatening to assess the fees that also constitute violations of the WVCCPA. There are therefore 198 class members and this number easily satisfies the numerosity requirement. *See Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (eighteen class members satisfied numerosity); *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (between 46 and 60 class members enough); *Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 536 (E.D.N.C. 1995) (between 57 and 76 class members enough).

2. <u>Plaintiff and class members share common factual and legal issues.</u>

Rule 23(a)(2) requires "questions of law or fact common to the class." "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Adair*, 764 F.3d at 366 ("[T]he plaintiffs need only demonstrate one common question of sufficient importance to

satisfy Rule 23(a)(2).") In other words, the claims asserted must depend on a "common contention," the determination of which must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2545 (2011). This standard "is a liberal one that cannot be defeated by the mere existence of some factual variances among class members." *Smith v. Res-Care, Inc.,* No. 3:13-5211, 2015 WL 461529, at *4 (S.D. W.Va. Feb. 3, 2015) (citing cases).

Here, class members share the same questions of law and fact. The common questions of law and fact include:

- Whether West Virginia Code §46A-2-115 (or any statute) expressly authorizes the property inspection fees Roundpoint collected from Plaintiff and the class;
- Whether Defendant misrepresented the amount of any claim;
- Whether Defendant is entitled to any class-wide defense; and
- Whether and in what amount consumers should receive a statutory penalty under the WVCCPA.

These questions are dispositive, apply equally to all class members, and, importantly, can be *answered* at the liability phase using common proof and uniform legal analysis. These common issues predominate over any individualized issues because their resolution will determine whether Defendant is liable to the entire class.

If the Court ultimately finds that Defendant violated West Virginia law, that ruling will determine its liability for *all* class members' claims. On these issues alone, a class exists. *See Adair,* 764 F.3d at 359 ("A single common question will suffice, but it must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke'"), *quoting Wal-Mart,* 131 S.Ct. at 2551. *See also Yates,* 2023 WL 5108803, at *6

(commonality satisfied where plaintiff "has identified multiple common questions of law or fact which when answered will resolve an issue that is centered to the validity of each one of the claims in one stroke. . . particularly whether Shellpoint's property inspection fees charged to and collected from members of the putative class violated various Maryland laws.")

      3. <u>Plaintiff's claims are typical because they arise from Defendant's uniform debt collection practices and are based on the same legal theory as the class claims.</u>

Rule 23(a)(3) requires that the class representative have claims or defenses that are "typical of the claims or defenses of the class." As with commonality, "the threshold requirement for typicality is 'not high.'" *Baxley v. Jividen,* 338 F.R.D. 80, 88 (S.D. W.Va. Dec. 21, 2020) (Chambers, J.) (*quoting Brown v. Nucor Corp.,* 576 F.3d 149, 153 (4th Cir. 2009) (citation omitted). To satisfy typicality, a "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim. That is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006).

Commonality and typicality tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes,* 131 S.Ct. at 2551 n.5.

There is no dispute that Plaintiff was assessed four property inspection fees within the CCPA's four-year statute of limitations or that Roundpoint attempted to collect property inspection fees from the Plaintiff through standardized written communications. Plaintiff's claims are typical, in fact virtually identical, to those of the proposed Class.

      4.  <u>Plaintiff has established that she has no conflicts with class members, possesses a genuine personal interest in the case, and will adequately represent class members.</u>

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." "'This determination requires a two-pronged inquiry: the named plaintiffs must not have interests antagonistic to those of the class; and (2) the plaintiffs' attorneys must be qualified, experienced and generally able to conduct the litigation. *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 218 (D. Md. 1997).'" *Kay Company, LLC v. EQT Prod. Co.*, 2017 WL 10436074, at *10 (Sept. 6, 2017) (Bailey, J.) (*quoting In re Serzone Products Liab. Litig.*, 231 F.R.D. 221, 238 (S.D. W.Va. 2005)). The adequate representation requirement "serves to uncover conflicts of interest between parties and the class they seek to represent." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. at 238 (*quoting Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594 (1997). Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 594-95. But they need not have "identical factual and legal claims in all respects." *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003) (citing *Broussard*, 155 F.3d at 344).

Plaintiff Patricia Edge has diligently represented the class's interests from the inception of the case. She participated in a full day mediation and sat for deposition. At deposition, she testified that she had reviewed the original and amended complaint and understood her role to be to "represent the others" and to "be fair" for the class of people she's representing. **Exhibit K, Edge Dep.** at 21:22 - 22:8, 34:10-13. She also repeatedly testified as to her understanding that this case has to do with "fees" relating to her mortgage servicing and that all of the members of the class she purports to represent were also charged these "fees" (which she occasionally referred to as "late fees" – an understandable view for a consumer to take given that property inspection fees are

9

only assessed to consumers when their loans are in arrears.) **Exhibit K, Edge Dep.** at 23:1-25; 24:14-19; 35:1-4; 22:11-13 (answering counsel's demand to "describe. . . what a class action is," as "it's other people getting fees charged to them as it was to me.")

There is no conflict or antagonism between the interests of the representative and those of the class. Also, the injuries suffered by Plaintiff are similar to those of the class, whose members were also assessed illegal property inspection fees. Additionally, class members are entitled to the same statutory damages recoverable for their CCPA claims. Both counsel and class representative are more than adequate to represent the putative class.

> C. **The Proposed Class Meets Rule 23(b)(3)'s requirements that common issues predominate, and a class action is the superior method of adjudicating this matter.**

Rule 23(b)(3) requires that: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

> 1. <u>The Common Questions Here Predominate Over Individual Questions, Presenting the Classic Case for Class Action Treatment.</u>

This is an ideal case for class treatment. As the Fourth Circuit has explained, Rule 23(b)(3)'s predominance standard is distinguished from Rule 23(a)(2)'s more lenient commonality standard because the "predominance inquiry focuses not only on the existence of common questions, but also on how those questions relate to the controversy at the heart of the litigation." *Adair*, 764 F.3d at 366 (*citing Amchem*, 521 U.S. at 623). That is to say, the "common conduct" must have a "bearing on the central issue in the litigation." *Id.*

The crux of this litigation is Defendant's illegal debt collection activity. This is the very basis for alleging violations under West Virginia's CCPA, which applies to all class members. These allegations apply equally to all class members, and courts routinely certify cases and find

10

that predominance is met in cases involving allegedly illegal debt collection activity. *See Yates*, 2023 WL 5108803, at *9 (finding predominance when plaintiff requested "certification of class claims primarily on a single theory: that Shellpoint imposed property inspection fees on mortgage borrowers in violation of Maryland law.")

Courts also routinely certify classes alleging improper fees or violations of consumer protection statutes that involve statutory penalty provisions. This Court recognized as much in *Alig v. Quicken Loans Inc.*, 2017 WL 5054287, at *14 (N.D. W.Va. July 11, 2017):

> Statutory damages may be awarded on a class-wide basis here because [defendant's] conduct was uniform as to the class. *Soutter v. Equifax Info. Servs., LLC*, 498 Fed.Appx. 260 (4th Cir. 2012), a Fair Credit Reporting Act case, is readily distinguishable because that court recognized that the methods the defendant credit reporting agency used to collect credit information from the courts had a significant bearing on individual claims. For example, Equifax used "at least three different means of collecting general district court records during the class period," and Soutter's claims therefore "varie[d] from any potential class plaintiff with a circuit court judgment, and from many potential plaintiffs with general district court judgments," which made proof of whether Equifax's behavior was unreasonable vary case-by-case. In contrast, there is absolutely no difference in defendants' conduct here as to the members of the proposed classes, let alone a meaningful one. In such circumstances, where defendant's conduct is uniform as to the class, class certification is appropriate. *See Stillmock v. Weis Mkts., Inc.*, 385 Fed.Appx. 267, 273 (4th Cir. 2010) (reversing denial of certification and finding questions of liability predominating because "the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner"); *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 Fed.Appx. 299, 305 (4th Cir. 2013) (same); *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 420 (N.D. Cal. 2014) (finding typicality met and finding defendant's reliance on *Soutter* "misplaced" because the *Soutter* court found there were "meaningful differences between her claim and class claims" but that in present case the record showed that defendant's conduct was uniform as to the class). *See also Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006) (typicality does not require "that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned.").

*Id. See also, Adkins v. Midland Credit Mgmt.,* C-5:17-041017, 2019 WL 1549712 (S.D. W.Va. Apr. 9, 2019) (certifying WVCCPA class); *Newton v. Am. Debt Servs., Inc.,* No. C-11-3228 EMC,

11

2015 WL 3614197, at *8 (N.D. Cal. June 9, 2015) (predominance met in case alleging violations of state unfair competition law because "[w]hether these parties violated the law is a question that can be established with common proof, and the answer will necessarily be the same for all class members. Either [defendants] charged illegal fees or they did not."); *Brown v. Consumer Law Associates, LLC*, 283 F.R.D. 602, 615 (E.D. Wash. 2012) (predominance met when common question of law was whether defendants violated the state consumer protection statute by charging excessive fees, and the common question of fact was "whether class members were charged (1) an initial fee in excess of $25.00; and/or (2) service fees exceeding 15% of any one individual payment"); *Allen v. Holiday Universal,* 249 F.R.D. 166, 191 (E.D. Pa. 2008) (predominance met when "the central issue of the liability phase is whether the Health Clubs charged members excessive initiation fees in violation of the" state health club act).

There are virtually no individual issues for determination, rendering this case far more straightforward than other certified classes the Fourth Circuit has addressed. *See, e.g., Brown v. Nucor Corp.,* 785 F.3d 895 (4th Cir. 2015) (vacating district court's decertification of Title VII class of black steelworkers and remanding with instructions to certify the class in light of the "inherent cohesiveness of the class"); *Gray v. Hearst Communs., Inc.,* 444 Fed. Appx. 698, 702 (4th Cir. 2011) (affirming certification of advertisers' class claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive trade practices against directory distributors upon finding that "the common question regarding [defendant's] distribution obligation predominates over any individual issues because the putative class members all assert injury from the same action (*i.e.* failure by [defendant] to follow its standard distribution practice), and determination of whether [defendant] breached its standard distribution obligation will resolve in one stroke an issue that is central to the validity of the class members' breach of

contract claims"); *Central Wesleyan v. W.R. Grace & Co.*, 6 F.3d 177, 188 (4th Cir. 1993) (affirming conditional certification of a nationwide class of colleges and universities with asbestos in their buildings despite the "daunting number of individual issues," including the ability of each college to prove liability, differing statutes of limitation, differing asbestos products and exposures, present in the case).

This case is straightforward and uniform across the class, and no individual questions exist that will predominate.

### 2. A Class Action is the Most Manageable, Efficient, and Superior Mechanism for Resolving Class Members' Claims.

Additionally, a class action is the superior method for fairly and efficiently adjudicating this controversy. Defendant's liability is a common question that would be inefficient to litigate hundreds of times. Plaintiff's counsel have spent and will continue to spend significant time litigating the liability questions. To have done this work for an individual case alone would have been cost-prohibitive and inefficient, considering all the same documents and fact witnesses bear on the liability issues, which impact all class members the same way.

Plaintiff proposes a three phased adjudication of this dispute, with the first phase being class certification. Next, at the liability phase, the Court will determine the culpability of Roundpoint, if any, with respect to the WVCCPA claims. In the successive and final damages phase, the Court would determine the amount of statutory and actual damages appropriate for each class member. This was the simple course successfully employed in *Dijkstra v. Carenbauer,* No. 5:11-cv-152 (N.D.W. Va.) and *Alig v. Quicken Loans Inc.,* Civ. A. No. 5:12-cv-114 (N.D. W.Va.).

As the above courts recognized, without the class action mechanism, the alternative here is likely the lack of any relief for affected West Virginia consumers, a disfavored result. The vast majority of those who were the subject of Defendant's illegal collection efforts would not seek

relief on an individual basis because, first, they would have no way of knowing that claim existed, and second, even were they to somehow discover that they had a claim, the cost of proceeding on an individual basis would not be practical or economical given the potential size of individual awards. Through the class action procedure, these common claims can be brought in one proceeding, preserving limited judicial resources and eliminating unnecessary duplication and potentially divergent judicial decisions. It would also "vindicate the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *See Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338 (1980).

### D. The Court should appoint Class Counsel to represent the class.

Pursuant to Federal Rule of Civil Procedure 23(g), a court that certifies a class must appoint class counsel. In appointing class counsel, the court must consider "the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of applicable law; and the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g). Proposed class counsel attests in her Declaration that the firms and attorneys Plaintiff proposes be appointed as class counsel are all experienced in consumer litigation and consumer class action litigation in particular, and have the resources to investigate and litigate class claims and to effectuate a class notice plan. Accordingly, Plaintiff asks that the Court appoint the following firms and attorneys as class counsel:

**Bailey & Glasser LLP**
*Jonathan Marshall, Esq.*
*Patricia Kipnis, Esq.*

**Bordas & Bordas, PLLC**
*Jason Causey, Esquire*

## IV. CONCLUSION

This case meets all the requirements for class certification. The proposed class is defined by specific, objective, and verifiable criteria, includes 198 West Virginia consumers, and the claim is based on uniform conduct that is illegal. All of the primary issues of law and fact in the action are common to the class and predominate over any individual issues. In short, this is a model case for the application of the class action mechanism.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Class Certification and appoint her as class representative and her attorneys as class counsel.

Respectfully submitted,

*/s/ Jonathan R. Marshall*
Jonathan R. Marshall (WVSB #10580)
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
(304)280-9940


Patricia M. Kipnis (WVSB #12896)
Bailey & Glasser LLP
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
(856) 324-8219

and

Jason E. Causey (WVSB #9482)
Bordas & Bordas, PLLC
1358 National Road
Wheeling, WV 26003
jcausey@bordaslaw.com

15

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| PATRICIA EDGE, in her own right and as representative of a class of persons similarly situated, | Case No.: 1:21-cv-00122-TSK |
| Plaintiff, | |
| vs. | |
| ROUNDPOINT MORTGAGE SERVICING CORPORATION, | |
| Defendant. | |

## **CERTIFICATE OF SERVICE**

I hereby certify on this 22nd day of August 2023, the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**, and the **Certificate of Service** were filed with the Clerk of the Court using the CM/ECF System. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Patricia M. Kipnis*_____
Patricia M. Kipnis (WVSB #12896)