# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

|  |  |  |
|---|---|---|
| PATRICIA EDGE, in her own right and as representative of a class of persons similarly situated, | : | Case No.: 1:21-cv-00122-TSK |
|  | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : |  |
|  | : |  |
| ROUNDPOINT MORTGAGE SERVICING LLC, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION...................................................................................................... 1

II.     FACTUAL BACKGROUND .................................................................................. 3

    A.      The Loan and the Deed of Trust........................................................................ 3

    B.      RoundPoint Exercises its Rights to Assess Property Inspection Fees.................. 4

    C.      RoundPoint Adopts a Conservative and Borrower-Friendly Approach and Decides to Refrain From Assessing Property Inspection Fees to Consumers..................... 4

    D.      RoundPoint Tenders a Check to Plaintiff, and She Deposits It ........................... 5

    E.      Plaintiff Receives an Attorney Solicitation Letter and Files the Instant Action..... 6

    F.      Plaintiff is Deposed and Demonstrates a Wholesale Lack of Knowledge Regarding the Basis For Her Claims and the Relief That She is Seeking on Behalf of Herself and the Putative Class ........................................................................ 7

III.    LEGAL STANDARD ............................................................................................ 10

IV.     ARGUMENT......................................................................................................... 11

    A.      Plaintiff Has Not Established the Requirements of Rule 23(a)........................... 11

        1.      Resolving Each Borrower's Claim Would Require Mini-Trials ............ 11

        2.      No Commonality Exists in Cases Arising out of Property Inspection Fees............................................................................................... 15

        3.      Plaintiff is an Inadequate Class Representative....................................... 16

            A.      Plaintiff Waived Her Claims and is Subject to a Unique Defense. .................................................................................... 16

            B.      Plaintiff Possesses Little-to-No Knowledge of Her Claims......... 17

        4.      Plaintiff is Atypical of the Class She Seeks to Represent...................... 18

        5.      The Proposed Class is Not Ascertainable ............................................. 20

    B.      Plaintiff Has Failed to Meet Rule 23(b)(3)'s Predominance Requirement.......... 21

        1.      Legal Standard.................................................................................... 21

        2.      Individual Issues Predominate in Property Inspection Fee Cases........... 23

    C.      The Cases Plaintiff Relies Upon are Readily Distinguishable........................... 24

V.      CONCLUSION...................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Midland Credit Management, Inc.*,
  2019 WL 1549712 (S.D. W. Va. Apr. 9, 2019) ............................................................24, 25

*Alhassid v. Bank of America, N.A.*,
  307 F.R.D. 684 (S.D. Fla. 2015) .................................................................... 15, 20, 21, 23

*Alig v. Quicken Loans Inc.*,
  2016 WL 10489897 (N.D. W. Va. June 2, 2016) .............................................................. 24

*Alig v. Quicken Loans, Inc.*,
  2017 WL 5054287 (N.D. W. Va. July 11, 2017) .............................................................. 24

*Bodner v. Oreck Direct, LLC*,
  2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) .................................................................. 17

*Brady v. Thurston Motor Lines*,
  726 F.3d 136 (4th Cir. 1984) ........................................................................................... 21

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ........................................................................................... 16

*Christman v. American Cyanamid Co.*,
  92 F.R.D. 441 (N.D. W. Va. 1981) .................................................................................. 21

*Comcast Corp. v. Behren*,
  569 U.S. 27 (2017) ......................................................................................................10, 21

*Deiter v. Microsoft Corp.*,
  436 F.3d 461 (4th Cir. 2006) .........................................................................................18, 19

*Ellis v. JPMorgan Chase & Co.*,
  2015 WL 9178076 (N.D. Cal. Dec. 17, 2015) ................................................................ 15

*EQT Production Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014) ......................................................................... 10, 20, 21, 22

*Eversole v. EMC Mortg. Corp.*,
  2007 WL 1558512 (E.D. Ky. May 29, 2007) .................................................................. 20

*Fitzwater v. CONSOL Energy, Inc.*,
  2019 WL 5191245 (S.D. W. Va. Oct. 15, 2019) .............................................................. 11

*Gunnells v. Healthplan Services, Inc.*,
    348 F.3d 417 (4th Cir. 2003) ..................................................................... 10, 11

*In re Facebook, Inc., PPC Advertising Litigation*,
    282 F.R.D. 446 (N.D. Cal. 2012) ................................................................. 17

*In re Wilborn*,
    609 F.3d 748 (5th Cir. 2010) ....................................................................... 23

*Long v. Nationstar Mortgage, LLC*,
    2018 WL 1247479 (S.D. W. Va. Mar. 9, 2018) .............................. 11, 12, 16, 19

*Martin v. Mountain State University, Inc.*,
    2014 WL 1333251 (S.D. W. Va. Mar. 31, 2014) ......................................... 22

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995) ......................................................................... 17

*McFarland v. Wells Fargo Bank, N.A.*,
    19 F.Supp.3d 663 (S.D. W. Va. May 7, 2014), *vacated in part on other*
    *grounds*, 810 F.3d 273 (4th Cir. 2016) ........................................................ 12

*O'Gara ex. rel. Estate of Portnick v. Countrywide Home Loans, Inc.*,
    282 F.R.D. 81 (D. Del. 2012) ....................................................................... 23

*Parsons v. Columbia Gas Transmission, LLC*,
    2022 WL 4809492 (S.D. W. Va. Sept. 30, 2022) ................................ *passim*

*Perrine v. Branch Banking and Trust Co.*,
    2018 WL 11372226 (N.D. W. Va. Sept. 25, 2018) ...................................... 14

*Pfendler v. PNC Bank, National Association*,
    2018 WL 2688502 (W.D. Pa. June 5, 2018) ................................................ 23

*Post v. Amerisource Bergen Corporation*,
    2023 WL 5602084 (N.D. W. Va. Aug. 29, 2023) .............................. 16, 19, 22

*Rice v. Green Tree Servicing, LLC*,
    2015 WL 5443708 (N.D. W. Va. Sept. 12, 2015) ........................................ 14

*Sanchez v. Wal Mart Stores, Inc.*,
    2009 WL 1514435 (E.D. Cal. May 28, 2009) ............................................. 17

*Soutter v. Equifax Information Services, LLC*,
    498 Fed.Appx. 260 (4th Cir. 2012) .............................................................. 19

*Stitt v. Citibank*,
    2015 WL 9177662 (N.D. Cal. Dec. 17, 2015) ............................................. 15

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006) ........................................................................ 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................. 10, 11

*Waters v. Electrolux Home Products, Inc.*,
  2016 WL 3926431 (N.D. W. Va. July 18, 2016) ....................................... 19, 22

*Wymer v. Huntington Bank Charleston, N.A.*,
  2011 WL 5526314 (S.D. W. Va. Nov. 14, 2011) ....................................... 16, 19

*Yates v. NewRez LLC*,
  2023 WL 5108803 (D. Md. Aug. 9, 2023) ...................................................... 24

**Statutes**

West Virginia Consumer Credit and Protection Act ......................................... *passim*

**Other Authorities**

Fed.R.Civ.P. 23 *et. seq* ................................................................................. *passim*

## I.     __INTRODUCTION__

Plaintiff Patricia Edge's ("Plaintiff") Motion for Class Certification (the "Motion") must be denied for several independent reasons.  While the Motion is long on rhetoric and inflammatory arguments, Plaintiff cannot meet the burden she is required to carry in order to certify a class.  Notably, despite Plaintiff's attempt to characterize her claims arising out of Defendant RoundPoint Mortgage Servicing LLC's ("RoundPoint") assessment of inspection fees as a *per se* violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), she cannot overcome the fact that RoundPoint possessed the contractual and legal authority to charge them.

A cursory review of the arguments that Plaintiff has asserted show that her claims against RoundPoint are anything but a *per se* challenge to its assessment of inspection fees.  Because the WVCCPA and the cases applying it authorize servicers to assess property inspection fees when "realizing upon a security interest," Plaintiff has resorted to a series of nuanced and fact-intensive arguments that are atypical of the class she purports to represent.  As a result, class claims can only be adjudicated through a series of mini-trials that would require this Court to review hundreds of loan files and make highly individualized determinations regarding the language in each deed of trust, the status of each loan at the time each fee was assessed, the type of remediation that each borrower may have received, the status of each loan at the time of remediation, and whether a contractual waiver provision bars each borrower from asserting a claim against RoundPoint.

Much to the chagrin of Plaintiff, she is one of the borrowers who waived her claims against RoundPoint by depositing a check in the amount of $240 that RoundPoint sent to her in March 2020 to reimburse her for the property inspection fees that it lawfully assessed to her loan.  Although the plain language of the deed of trust barred her from asserting these claims the moment that she deposited RoundPoint's check, she nonetheless filed this action in an improper attempt to recover a windfall after she received a letter from an attorney soliciting her to sue RoundPoint.

In addition to serving as a bar to Plaintiff's recovery on her own individual claims, the presence of this waiver provision makes Plaintiff an inadequate and atypical representative of the consumers she purports to represent. Each consumer who was not subject to this wavier provision and/or did not receive the same form of reimbursement will not be confronted with the same fatal defenses that Plaintiff faces. By seeking to oppose this unique defense, Plaintiff will be acting in her own individual interest and will not be protecting the interests of the absent class members. In addition, Plaintiff is an inadequate class representative because her deposition testimony reveals that she filed this action at the insistence of her counsel after receiving a solicitation letter and that she has little to no knowledge regarding the claims at issue or the relief she is seeking for the class.

In fact, during the first 90 minutes of her deposition, Plaintiff repeatedly testified that this case arose solely out of **late fees** and that she was not even sure if RoundPoint assessed property inspection fees to her loan. Although Plaintiff sought to change her testimony after speaking with her counsel during a recess, she repeatedly demonstrated a lack of knowledge regarding the timing, amount, and reason for RoundPoint's assessment of inspection fees and even conceded that the deed of trust authorized RoundPoint to charge them. Because Plaintiff has virtually no knowledge regarding the facts of this case and even less interest in acting on behalf of the absent putative class members she is supposed to be representing, no class may be certified in this matter.

Moreover, Plaintiff's request for certification must be denied on the grounds that her proposed class is not ascertainable and that any attempt to litigate this case on a classwide basis would require a focus upon a series of individual issues and virtually no common ones. The types of mini-trials that RoundPoint would be required to engage in simply to ascertain the composition of a class, much less to defend against the merits of each borrower's substantive claims, vividly demonstrate that this case cannot be adjudicated on a classwide basis.

Each of the preceding defects in Plaintiff's misguided case are individually sufficient to preclude class certification, and when combined, after rigorous analysis, represent a complete failure by Plaintiff to satisfy her class certification burden. Thus, the Motion should be denied.

## II.   FACTUAL BACKGROUND

### A.   The Loan and the Deed of Trust

Plaintiff received a loan on April 26, 2002 in the amount of $128,000 (the "Loan") that was secured by a Deed of Trust (the "DOT") and Note (the "Note"). *See* Affidavit of Amber Todd (the "Todd Aff.") at Ex. A, B.[1]  In the Note, Plaintiff agreed that she would make timely payments. *Id.*, Ex. B at p. 1.[2]  In the DOT, Plaintiff agreed that her lender "may make reasonable entries upon and inspections of the Property." *Id.*, Ex. A at p. 6.  The DOT states as follows:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, **property inspection and valuation fees**.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.

*Id.* at p. 9 (emphasis added).  The DOT also states that the lender possesses the right to issue refunds of loan charges by reducing the loan balance or issuing a payment.  This covenant also contains the following waiver provision that applies in the event that a refund is issued to Plaintiff:

> Borrower's acceptance of any such refund made by direct payment to Borrower **will constitute a waiver of any right of action Borrower might have arising out of such overcharge**.

*Id.* (emphasis added).[3]

---

[1] The DOT was secured against the property located at 216 Wiseman Street, Bridgeport, WV 26330 (the "Property").  *Id.*, Ex. A at p. 2.

[2] In addition, Plaintiff agreed that she would be in default if she did not "pay the full amount of each monthly payment on the date it is due." *Id.* at p. 2.

[3] Uniform Covenant 19 further affirms RoundPoint's contractual right to assess property inspection fees in that it states that if Plaintiff defaulted on the Loan and wished to reinstate it, she was required to, among other things, pay "all expenses incurred in enforcing the Security Instrument, including, but not limited to, reasonable attorneys' fees, **property inspection and valuation fees**, and other fees incurred for the purpose

**B.**     **RoundPoint Exercises its Rights to Assess Property Inspection Fees.**

RoundPoint began servicing the Loan on September 1, 2014, and Plaintiff defaulted on the Loan by failing to remit timely payments.  *See* Todd Aff. at ¶8, Ex. C.  RoundPoint's vendor performed inspections of the Property on April 28, 2017, June 2, 2017, July 3, 2017, and August 6, 2017 in accordance with RoundPoint's rights under the DOT.  *Id*. at ¶9.  The vendor assessed a fee of $15 to RoundPoint for each inspection, and RoundPoint assessed a fee of $15 to the Loan on May 1, 2017, June 5, 2017, July 5, 2017, and August 8, 2017.  *Id*. at ¶10, Ex. C.

Plaintiff applied for a loan modification on June 30, 2017, and RoundPoint sent her a letter dated August 10, 2017 approving her for a trial period plan.  *Id*. at ¶11.[4] After Plaintiff accepted the trial offer, RoundPoint stopped assessing property inspection fees to the Loan.  *Id*. at ¶13.

**C.**     **RoundPoint Adopts a Conservative and Borrower-Friendly Approach and Decides to Refrain From Assessing Property Inspection Fees to Consumers.**[5]



---

of protecting Lender's interest in the Property and rights under this Security Instrument." *Id*. at p. 10 (emphasis added)

[4] Plaintiff verbally notified RoundPoint that she wished to accept this offer on August 17, 2017, and she made her first trial payment on August 31, 2017.  *Id*. at ¶12.

[5] Contemporaneously herewith, RoundPoint is filing a motion seeking leave to file unredacted versions of this opposition, the Todd Affidavit, and an exhibit to the Chang Declaration under seal (the "Motion to Seal").  As set forth in the Motion to Seal, RoundPoint respectfully requests leave to file these documents under seal in accordance with the Protective Order that this Court entered on June 10, 2022.  *See* Dkt. 31.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████

            █████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

    **D.**      **<u>RoundPoint Tenders a Check to Plaintiff, and She Deposits It</u>.**

Because the Loan was current when the servicing was transferred to BSI Financial Services, RoundPoint sent Plaintiff a check in the amount of $240 (the "Check"). *Id*. at ¶24. RoundPoint sent Plaintiff a letter dated March 23, 2020 (the "March 2020 Letter") that notified her that it had performed a recent review of her account and "discovered an over-collection of charges." *See* Declaration of Cheryl Chang ("Chang Decl.") at Ex. B. RoundPoint further stated that it had enclosed "a refund check…to reimburse you for the over-collection." *Id*. The Check represented all 16 of the property inspection fees in the amount of $15 that RoundPoint assessed to the Loan (the "Check"). Todd Aff. at ¶25.

At Plaintiff's deposition, she confirmed that she received the Check and that she deposited it into her account. Chang Decl., Ex. A, 77:22-78:18.[7] Although the March 2020 Letter explained

---

[7] RoundPoint's records confirm that Plaintiff deposited the Check in June 2020. Todd Aff. at ¶26.

that RoundPoint was enclosing a check in connection with certain charges that had been assessed to the Loan, Plaintiff allegedly debated whether to deposit the Check because she was unsure as to why she received it. *Id*. at 80:22-81:3.  Despite her alleged confusion and the March 2020 Letter's inclusion of RoundPoint's contact information, Plaintiff never contacted RoundPoint or anyone else in order to obtain additional information regarding the Check. *Id*. at 81:4-6; 82:21-83:6.[8]

### E.   Plaintiff Receives an Attorney Solicitation Letter and Files the Instant Action.

On October 24, 2019, Plaintiff's counsel – Jason Causey of Bordas and Bordas ("Bordas") – wrote a letter to her stating that "[a]ccording to public records and information [he had] gathered from prior lawsuits," he believed that RoundPoint may have violated the WVCCPA in servicing her loan. Chang Decl., Ex. D.  He noted that he was "investigating a number of [RoundPoint's] loan practices, including illegal threats of assessing attorneys' fees against consumers who were behind in their loans, placing payments in what is called a 'suspense account' instead of applying those payments to the loans, mishandling escrow accounts established to pay taxes and insurance and charging property inspection fees in excess of the allowable amount." *Id*.  He advised Plaintiff that she may have the right to recover damages and invited her to contact him. *Id*.

Plaintiff had never heard of Bordas before receiving the solicitation letter and stated that the letter caused her to reach out to Mr. Causey. *Id*. at Ex. A, 25:3-18; 30:20-31:2.  Plaintiff testified that she spoke with Mr. Causey for nearly one hour, that she signed an engagement letter with Bordas within a matter of days after they spoke, and that the letter spurred her decision to file this action. *Id*. at 31:24-32:13; 37:23-25.  Plaintiff also testified that it "might be true" that she

---

[8] While RoundPoint anticipates that Plaintiff will argue that she is not sure whether she received the March 2020 Letter in the same envelope as the Check, Plaintiff produced these two documents in discovery and bates labeled them consecutively at Edge041-42.  *See* Chang Decl. at ¶¶4-5, Ex. B, C.  The documents that Plaintiff produced were pictures of both the Check and the March 2020 Letter, and the background of each picture appears to be identical.  *Id*.  In addition, even assuming for the sake of argument that the documents were not received in the same envelope, Plaintiff waited more than two months before she deposited the Check.  These facts undercut any argument that Plaintiff attempts to make that she had not received the March 2020 Letter when she deposited the Check.

would not have filed this action if she did not receive a solicitation letter from Bordas. *Id*. at 157:21-158:2.

On June 15, 2021 – just shy of four (4) years following the date that RoundPoint assessed its final property inspection fee to the Loan – Plaintiff commenced this action by filing a Class Complaint (the "Complaint") in state court. *See* Chang Decl., Ex. E.[9]  Although Plaintiff was in possession of a Payment History that showed that RoundPoint never assessed a late fee that exceeded $15.00, she nonetheless asserted a baseless claim that RoundPoint assessed late fees in excess of $30.00 in violation of the WVCCPA.  Todd Aff., Ex. C and Complaint at ¶¶37-38.

After Plaintiff finally recognized that her late fee claim was deficient, she amended her Complaint (the "Amended Complaint") on September 8, 2022 to remove it. *See* Dkt. No. 53.  The Amended Complaint contains two putative class claims and one individual claim.  *Id*.  In Count I, Plaintiff set forth a class claim that alleged that RoundPoint violated W. Va. Code §§46A-2-127(c), 127(g), 128(c), and 128(d) by threatening to collect property inspection fees and other default related fees not permitted by law or contract and violated W. Va. Code §46A-2-124(f) by threatening to take action prohibited by law. *Id*. at ¶¶41-43.  In Count II, Plaintiff set forth a class claim that alleged that RoundPoint violated W. Va. Code §46A-2-127(d) by making false representations regarding fees and costs that she owed with respect to the Loan. *Id*. at ¶¶44-45.[10]

F.      **Plaintiff is Deposed and Demonstrates a Wholesale Lack of Knowledge Regarding the Basis For Her Claims and the Relief That She is Seeking on Behalf of Herself and the Putative Class.**

During her deposition, Plaintiff repeatedly demonstrated a lack of knowledge regarding the facts giving rise to her specious claims.  For the first 90 minutes of her deposition, Plaintiff

---

[9] RoundPoint filed a Notice of Removal with this Court on September 2, 2021, and it filed an Answer to the Complaint on September 9, 2021.  *See* Dkt. Nos. 1, 4.
[10] In Count III, Plaintiff asserted an individual claim under the WVCCPA.  *Id*. at ¶¶46-50.

repeatedly responded to a series of basic questions regarding the reasons why she filed this action

by stating she did so because of the **late fees** that RoundPoint assessed:

> By Cheryl Chang: Why did you decide to become a class representative?
> By Patricia Edge: Because of fees, and other people were charged the fees.
> Q: What fees are you referring to?
> A: They kept tacking on more fees for late payments.
> ……..
> Q: And you testified that the fees that you are referring to are late fees, correct?
> A: Yes.
> Q: And can you describe the type of late fees that were charged to you?
> A: **Payments that weren't made on time were tacked on fees**.
> Q: So you are complaining in this case about late fees that RoundPoint assessed to you because you were late on your mortgage payments?
> A: **Yes**.
> Q: Do you recall the amounts of each of these late fees?
> A: No.
> Q: Can you give me a ballpark number of how much these fees were?
> A: No.
> Q: Are there any other fees that you're complaining of in this class action?
> A: **No**.

Chang Decl., Ex. A, 22:16-24:13 (emphasis added).  When asked about property inspection fees,

Plaintiff revealed that she was not even sure whether RoundPoint assessed these fees to her loan:

> By Ms. Chang: Do you know what a property inspection fee is?
> By Ms. Edge: Yes.
> Q: And what is it?
> A: When they come to inspect it to make sure everything is okay and that somebody is living in the dwelling
> Q: And do you know if you were charged property inspection fees by RoundPoint?
> A: **I'm not sure**.

*Id*. at 35:24-36:7 (emphasis added).  Shortly thereafter, Plaintiff affirmed that she filed this action

because of late fees and that there were no other types of fees at issue in this case.  *Id*. at 50:1-6.

In addition, she alleged that RoundPoint sent her a series of threatening letters that pertained to

"payments and late fees."  *Id*. at 50:7-25.  When asked to elaborate on why she believed that the

late fees were improper, Plaintiff testified that she was not sure if they were legal.  *Id*. at 61:17-

62:3.  After 90 minutes of testimony, the deposition was paused for a 17-minute recess.  *Id*. at

63:16-23.  When it resumed, Plaintiff confirmed that she spoke with her counsel.  *Id*. at 64:18-65:2. In the first substantive answer that she provided, Plaintiff reversed course, claimed that she "misspoke" and stated that she meant to say that she filed this case due to property inspection fees:

> By Ms. Chang: Thank you. Now you mentioned during the deposition that you are bringing this lawsuit because of late fees that you believe are illegal. And you said you couldn't recall how much the late fees were each.  But do you recall if they were over $30?
> By Ms. Edge: **Well, as I think about it**, I think they were inspection fees because my neighbors would tell me in the evening that they'd see people taking pictures and asking if somebody – if I lived in the dwelling.  **So I think maybe I misspoke**.
> Q: Uh-huh.
> A: I believe it was inspection fee of the property.
> Q: So having spoken with your attorneys, now the issue in this case is no longer late fees but property inspection fees?
> ……..
> A: **It is, yes**.

*Id*. at 65:3-66:8 (emphasis added).   Throughout the remainder of the deposition, Plaintiff repeatedly demonstrated a lack of awareness regarding the facts of this action and the reason it was filed.  Plaintiff could not provide any details as to why the Amended Complaint was filed, was unaware that it was filed to remove the same late fees claim that she testified to prior to the recess, and could only muster a statement that it was filed "[t]o make sure that everything was right."  *Id*. at 41:4-23.  Plaintiff also conceded that she did not know what statute she was suing under or the type of relief she may be entitled to receive.  *Id*. at 62:25-63:15.

Moreover, Plaintiff repeatedly responded to questions asking about the relief she was seeking in this case by stating that it was simply "up to the judge" or "[w]hatever the judge and jury would think is fair." *Id*.  at 44:12-45:19; 91:15-18.[11]  While Plaintiff's counsel has made numerous settlement offers and RoundPoint submitted an Offer of Judgment to her counsel,

---

[11] In addition, when asked why she sent a right to cure letter to RoundPoint in February 2021 – five months before this action was filed – Plaintiff reiterated that her mindset at the time was to obtain whatever result "the judge would deem for the whole class."  *Id*. at 165:9-21.  When reminded that no action had been filed at the time, Plaintiff stated that she "figured there was a class action and that whatever they wanted me to do, I would do, whatever the class needed."  *Id*. at 165:22-166:5

Plaintiff stated that she never made either an individual or a classwide settlement demand and that she never received an offer or an Offer of Judgment from RoundPoint. *Id*. at 46:20-25; 48:2-49:3.

Plaintiff also admitted that she did not know the amount of the property inspection fees at issue, why they may have been assessed, and when they were first assessed. *Id*. at 109:22-110:12. In addition, Plaintiff conceded that the DOT provided RoundPoint with the authority to assess inspection fees to the Loan and that she had an obligation to repay them. *Id*. at 77:5-12; 89:4-16. Plaintiff reaffirmed that the DOT authorized RoundPoint to assess property inspection fees. *Id*. at 101:7-101:20.  In addition, Plaintiff admitted that she did not know whether a borrower who was assessed one inspection fee per year would be entitled to relief. *Id*. at 101:21-102:3.  Plaintiff further acknowledged that inspection fees were "a requirement...of a loan." *Id*. at 109:15-21.

## III.   LEGAL STANDARD

Class actions are "exception[s] to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behren*, 569 U.S. 27, 33 (2017). Fed.R.Civ.P. 23(a) requires that a class comply with four prerequisites: 1) numerosity; 2) commonality; 3) typicality; and 4) adequacy. *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 423 (4th Cir. 2003).  The class must also fall within one of the three categories in Rule 23(b). *Id*.

The burden of proof to establish the propriety of class certification rests with the Plaintiff, who must demonstrate all of these requirements. *EQT Production Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014).  In addition, "the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites" for class certification have been satisfied." *Id*. at 358.  This analysis frequently "entail[s] some overlap with the merits of the plaintiff's underlying claim," as "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).

## IV.    <u>ARGUMENT</u>

### A.    <u>Plaintiff Has Not Established the Requirements of Rule 23(a).</u>

#### 1.    <u>Resolving Each Borrower's Claim Would Require Mini-Trials.</u>

Commonality requires a showing that common questions of law or fact exist.  *Dukes*, 564 U.S. at 349.  The plaintiff must show that class members "have suffered the same injury" and not "that they have all suffered a violation of the same provision of law." *Id*. at 349-50.  "A common question is one that can be resolved for each class member in a single hearing." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006).  "A question is not common…if its resolution 'turns on a consideration of the individual circumstances of each class member.'" *Id*.[12]

Commonality is not satisfied in a case arising out of a servicer's alleged assessment of fees in violation of the WVCCPA because each potential class member's loan was serviced differently in accordance with the individualized circumstances of their loans.  *Long v. Nationstar Mortgage, LLC*, 2018 WL 1247479, at *11 (S.D. W. Va. Mar. 9, 2018).  The court held that no commonality existed because determining whether each borrower had a WVCCPA claim would depend on the unique circumstances of each loan. *Id*. at *11.  It noted that "a determination of whether Nationstar charged or requested attorneys' fees from any class member will require submissions of individual loan servicing records and individual communications with those class members." *Id*.[13]

The facts of this matter are strikingly similar to *Long* in that no commonality exists because a determination of each putative class member's claims would require a comprehensive review of each borrower's unique individual circumstances.  While Plaintiff largely ignores the futility of her underlying claims and RoundPoint's defenses in the Motion, the parties' forthcoming summary

---

[12] When a disparity exist in the underpinnings of the members' claims and a resolution would require complex, individual factfinding, no commonality exists.  *Parsons v. Columbia Gas Transmission, LLC*, 2022 WL 4809492, at *9-10 (S.D. W. Va. Sept. 30, 2022).

[13] S*ee also Gunnells*, 348 F.3d at 434 (no commonality exists when resolution of the plaintiffs' claims require considerable individual inquiry); *Fitzwater v. CONSOL Energy, Inc.*, 2019 WL 5191245, at *13-15 (S.D. W. Va. Oct. 15, 2019) (no commonality existed because establishing the elements of the plaintiffs' claims would require individualized inquiries).

judgment briefing will reveal that several courts interpreting W. Va. Code §46A-2-115 and related sections of the WVCCPA have found that a servicer possesses the right to assess property inspection fees when it is "realizing on a security interest" in accordance with §§46A-2-115(a).[14]

These briefs will show that there is no bright-line rule precluding servicers from assessing inspection fees. Quite the opposite, courts have repeatedly found that servicers are permitted to do so when a borrower's loan is in default. Accordingly, in order for this Court to analyze the propriety of each property inspection fee, each borrower would be required to submit their individual loan file for a series of case-by-case determinations. This Court would be required to review, among other things, each deed of trust (which may or may not contain provisions similar to the one in the DOT expressly authorizing the lender to assess inspection fees and/or the wavier provision), each payment history, the occupancy status of the property at the time each fee was assessed, any applicable investor guidelines, each inspection report, each set of servicing notes, the default and/or loss mitigation status of the loan, any remediation that each borrower received from RoundPoint.

Plaintiff's theory of the case is that "one or more of the property inspection fees were not incurred in realizing on a security interest" and that one or more of the fees were incurred at a time when the foreclosure process had not begun. *See* Dkt 61 at p. 10-11. She asserts that one or more of the fees were not assessed in accordance with Fannie Mae's Servicing Guidelines, were assessed within 30 days of receipt of a full payment, were assessed at a time when quality right party contact ("QRPC") had been established, and/or were assessed while a workout option had been offered to Plaintiff. *Id.* at 12.

---

[14] *See e.g. McFarland v. Wells Fargo Bank, N.A.*, 19 F.Supp.3d 663, 676 (S.D. W. Va. May 7, 2014), *vacated in part on other grounds*, 810 F.3d 273 (4th Cir. 2016).

Plaintiff's positioning of her claims demonstrates the fact-intensive inquiries she intends to rely upon to the detriment of all other class members.[15]  It undercuts the notion that Plaintiff can use common, classwide proof to support her claims.  Rather, each absent class member must now be subjected to individual mini-trials to determine the specific and unique circumstances of the particular investor, the loan and the borrower.  Pursuant to Plaintiff's theory of her specific case, an adjudication of each class claim would require an extensive review of each individual loan file to determine whether the deed of trust authorized the assessment of fees, when the last payment was received, whether the loan was in default, whether a modification review was pending, whether the fee complied with investor guidelines, whether the borrower received a refund (and in what manner), whether it was accepted, and whether that acceptance results in a waiver of claims.

While Plaintiff alleges in the Motion that RoundPoint assessed a "standardized fee that…was a *per se* violation of several sections of the WVCCPA" (*see* Motion at p. 1), she has not disclosed these alleged *per se* rules.  Similarly, her attempt to analogize this matter to other cases where courts in other states certified classes premised upon fees assessed in violation of *per se* rules contained in ***those states'*** consumer protection statutes is unavailing as Plaintiff's claims do not arise out of another state's *per se* rule and instead stem from her fact-intensive claim that RoundPoint may not have been realizing upon a security interest.

 The differing remediations along with the presence of waiver provisions in certain deeds of trust for borrowers who received a check

---

[15] If Plaintiff believed that there is a bright-line rule that prevents servicers from assessing property inspection fees to West Virginia consumers, she would have cited to this authority in response to RoundPoint's motion to dismiss and would not have requested that the motion be converted and deferred so that she could obtain discovery to obtain factual support for her nuanced and fact-intensive claims.

or credit make it impossible for each borrower to show that they suffered the same purported injury.

Moreover, the fact that Plaintiff's claims arise out of W. Va. Code §46A-2-124, §46A-2-127 and §46A-2-128 means that she will be required to show that RoundPoint was attempting to collect a debt from each putative class member and that it acted coercively, deceptively, fraudulently, and/or unfairly.  Importantly, only certain communications can give rise to a claim under these sections.  For instance, this Court has repeatedly held that a servicer cannot violate §46A-2-127 by sending a periodic statement to a borrower since they are sent for informational purposes. *See e.g. Rice v. Green Tree Servicing, LLC*, 2015 WL 5443708, at *12 (N.D. W. Va. Sept. 12, 2015).[16]  Even assuming *arguendo* that RoundPoint was not permitted to assess property inspection fees to a borrower's loan, the inclusion of these fees on a monthly statement or routine correspondence cannot give rise to a §46A-2-127 or §46A-2-128 violation.  *See e.g. Rice*; *Perrine v. Branch Banking and Trust Co.*, 2018 WL 11372226, at *5 (N.D. W. Va. Sept. 25, 2018).

Plaintiff cannot use common, classwide proof in support of these claims because each borrower's claim will depend on a plethora of individualized factors. These factors include, but are not limited to, the nature of each communication, whether RoundPoint had an obligation to send the communication, the information contained therein, how the information was presented, and the status of the loan.  Thus, despite Plaintiff's misguided attempt to simplify her claims, it is indisputable that she cannot present a common contention that is capable of classwide resolution.[17]

---

[16] In support of her arguments that a class can be certified based upon RoundPoint's purported attempts to collect a debt, Plaintiff attaches a series of RoundPoint's template communications pertaining to repayment plans as well as a template reinstatement calculation.  *See* Motion at Ex. E-I.  As RoundPoint will demonstrate in its summary judgment briefing, these types of communications do not rise to the level of "unscrupulous collection practices," and do not constitute collection practices at all. *See e.g. Rice, Perrine.*
[17] While Plaintiff alleges in the Amended Complaint that RoundPoint assessed 'miscellaneous or other default fees' (*see e.g.* Dkt. 53 at ¶¶5, 17), the Motion focuses entirely upon property inspection fees and asks this Court to certify a class of consumers who had a property inspection fee assessed to their loans. *See* Dkt. 85 at p. 1.  As a result, RoundPoint has opted not to address these fees in this opposition.

### 2.   No Commonality Exists in Cases Arising out of Property Inspection Fees.

Because the validity of an inspection fee is an individualized inquiry, no commonality exists among the claims of a putative class of borrowers who allege that their servicer improperly assessed these fees to their loans. *Stitt v. Citibank*, 2015 WL 9177662, at *5-6 (N.D. Cal. Dec. 17, 2015) (refusing to certify and finding that individual circumstances would need to be considered to determine whether a fee was authorized by the language contained in each borrower's security instrument).  Likewise, a class of borrowers alleging that a servicer improperly assessed inspection fees cannot be certified when their theory of the case would require a series of heavily individualized inquiries. *Alhassid v. Bank of America, N.A.*, 307 F.R.D. 684, 697 (S.D. Fla. 2015) (holding that proofs as to whether a member was mistakenly placed in default would require individual evidence showing that the servicer's policies were not followed in each instance and would require individualized evidence that the servicer's records for certain loans were incorrect); *see also Ellis v. JPMorgan Chase & Co.*, 2015 WL 9178076, at *4 (N.D. Cal. Dec. 17, 2015) (denying motion to certify because "the proposed classes would include borrowers who were not subject to the [servicer's] general policy, or who were at least subject to sub-policies, such that the class members were not subject to the same allegedly unlawful practice").

No commonality exists amongst this putative class because each borrower would be required to supply different security instruments containing distinct terms and present their loan file to permit this Court to conduct an examination regarding each borrower's default and the applicability (if any) of each set of investor guidelines.  In addition, this Court would be tasked with reviewing each communication to determine whether RoundPoint, *inter alia*, was attempting to collect a debt and/or made a misrepresentation sufficient to give rise to a WVVCPA claim.

---

Nonetheless, any attempt to certify a class of consumers who had the types of fees permitted by W. Va. Code §46A-2-115(b)(2) assessed to their loans would fail for similar reasons.

### 3.  **Plaintiff is an Inadequate Class Representative**.

#### A.  **Plaintiff Waived Her Claims and is Subject to a Unique Defense.**

To be an adequate representative, a plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998).  A class representative is inadequate when his interests conflict with those of the absent class members' interests. *Parsons*, 2022 WL 4809492, at \*12; *see also Post v. Amerisource Bergen Corporation*, 2023 WL 5602084, at \*3 (N.D. W. Va. Aug. 29, 2023) (Kleeh, J.) (finding that the plaintiff was inadequate because her claims were subject to a unique defense and she was situated differently than the remainder of the class).

*Long* is instructive on this point as well insofar as the plaintiff previously released claims that he possessed against a servicer for its alleged assessment of fees in violation of the WVCCPA. 2018 WL 1247479, at \*13.  Because of this release, the court held that the plaintiff was an inadequate class representative. *Id*.  "[I]f there exists a unique defense to the class representative's claim and that defense could become the focus of litigation to the detriment of the class, the Court may find the named plaintiff incapable of adequately representing the putative class." *Wymer*, 2011 WL 5526314, at \*3 (deeming the plaintiff inadequate because a unique defense that the servicer possessed against him "strikes at the very heart of his claim and makes it distinguishable from those putative class members" who were not subject to the defense).  In *Wymer*, the court found that the plaintiff was an inadequate representative with respect to numerous claims (including a WVCCPA claim) that arose from a servicer's assessment of fees and issuance of notices.  *Id*.

Plaintiff is an inadequate representative because she is subject to unique defenses that will distract her from litigating the case in the best interests of absent class members.  Plaintiff was fully reimbursed and waived any claim that she possessed against RoundPoint arising out of inspection fees.  Any borrower who did not receive this remediation, was not subject to a waiver

provision, and/or who did not deposit a check is in a vastly different position than Plaintiff and cannot be confronted with the same defenses.  Because these defenses will be the focus of the parties' merits briefing and will remain present throughout the course of this action, Plaintiff's obligation to litigate these defenses – and the fatal impact that the defenses will ultimately have upon the viability of her claims – will be detrimental to the putative class.

### B.  Plaintiff Possesses Little-to-No Knowledge of Her Claims.

"Solicitation of clients for the commencement or continuation of a class action is improper, sufficient to warrant denial of class action certification." *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777, at *2-3 (N.D. Cal. Apr. 25, 2007) (internal citations omitted) (finding that class actions where the plaintiff's counsel is the driving force behind the filing is an improper "cart before the horse" approach to litigation); *see also Sanchez v. Wal Mart Stores, Inc.*, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009) (refusing to certify and finding that a plaintiff who was solicited by counsel lacked basic knowledge and would serve as a detriment to absent class members).[18]

Plaintiff is an inadequate class representative because she lacks a basic level of understanding regarding the claims that she is tasked with asserting.  Plaintiff provided 90 minutes of testimony that this case arose solely out of RoundPoint's assessment of late fees and that she was not sure if it assessed inspection fees to the Loan.  In the Motion, Plaintiff attempts to rationalize her testimony by alleging that her "occasional" reference to late fees was understandable given that property inspection fees are only assessed to defaulted loans.  *See* Dkt. 85 at p. 9-10.  However, Plaintiff's attempt to create revisionist history is undercut by her explanations that the late fees she was suing about were "tacked on" as a direct result of untimely

---

[18] Similarly, in cases where the proposed representative has "so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys," they are an inadequate representative and the court should deny class certification. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077-78 (2d Cir. 1995); *see also In re Facebook, Inc., PPC Advertising Litigation*, 282 F.R.D. 446, 454 (N.D. Cal. 2012) (finding that a plaintiff was inadequate because his testimony revealed that he knew essentially nothing about the case).

monthly payments.  Chang Decl., Ex. A, at 22:16-24:13.  When asked about property inspection fees a short time later, Plaintiff explained that they were the result of RoundPoint coming to her property to "make sure everything is okay and that somebody is living in the dwelling" and she conceded that she did not know if these fees were assessed to her. *Id*. at 35:24-36:7.[19]

In addition, even after Plaintiff spoke with her counsel, she stated that the fees at issue were "[P]roperty fees and those late fees", thus affirming that these fees were <u>not</u> synonymous.  *Id* at 90:3-19.  Moreover, Plaintiff admitted that she did not know the amount or date of each inspection fee and conceded that the DOT authorized RoundPoint to assess these fees to her. *Id*. at 77:5-12; 89:4-16; 109:22-110:12.  In Plaintiff's view, her claim boiled down to whether  there was a limit on the number of inspection fees that RoundPoint was permitted to assess.  *Id*. at 101:7-101:20.[20]

Based upon Plaintiff's testimony, it is clear that she filed this action at the insistence of her counsel and only after she received a solicitation letter that alleged that RoundPoint committed a kitchen sink of servicing violations and invited her to file a lawsuit. Because it is the Plaintiff's counsel that is driving this litigation and that possesses all of the knowledge regarding the underlying claims, Plaintiff is an inadequate representative who has no interest in understanding or controlling the major decisions of this case to the detriment to the absent putative class members.

### 4.   <u>Plaintiff is Atypical of the Class She Seeks to Represent.</u>

Typicality requires a plaintiff to show "that his *claims or defenses* are 'typical of the *claims or defenses* of the class." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006) (emphasis within).  "The representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members" and his claim "cannot be so different from

---

[19] These divergent explanations demonstrate that despite Plaintiff's lack of knowledge regarding the claims that she was tasked with asserting on behalf of the putative class, she was fully aware of the differences between late fees and property inspection fees and the reason why each fee is charged.
[20] In addition, Plaintiff testified that she did not know why the Amended Complaint was filed and did not realize that the reason was to remove the late fees claim that she testified to at length prior to the recess. *Id.* at 41:4-23.

the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id*. at 466-67. No typicality exists where a variation "strikes at the heart of the respective causes of action." *Soutter v. Equifax Information Services, LLC*, 498 Fed.Appx. 260, 265 (4th Cir. 2012). "The fact that the named plaintiffs have the same general complaint against the defendant does not render their claims typical." *Post*, 2023 WL 5602084, at *2.

Typicality is not satisfied when a representative has provided his servicer with a partial release of certain claims arising out of the servicer's alleged assessment of fees in violation of the WVCCPA. *Long*, 2018 WL 1247479, at *12. In *Long*, the plaintiff accepted and cashed a payment that Nationstar sent to compensate him in connection with the fees at issue, and his acceptance of this payment required him to provide Nationstar with a release of all claims arising out of these fees. *Id*. at *2. The court denied the plaintiff's motion to certify and held that his claims were atypical because the class members had not released any claims against Nationstar. *Id*.

When a representative's WVCCPA claim arising out of allegedly unlawful fees is subject to a unique defense that will predominate the litigation, his claim is atypical. *Wymer*, 2011 WL 5526314, at *5 (denying motion for class certification); *see also Post*, 2023 WL 5602084, at *3 (deeming a representative atypical because her claims contained distinct facts and she was subject to a unique defense as a result of a prior settlement and compensation); *Soutter*, 498 Fed.Appx. at 265 (the plaintiff was atypical because his claims had meaningful differences from the class and failed to advance their claims); *Deiter*, 436 F.3d at 468 (no typicality because of a substantial gap between the plaintiff's proofs and the proofs that the class members would be required to submit).[21]

When representatives in a putative class action arising out of a servicer's allegedly improper assessment of property inspection fees possess claims – and will be subjected to defenses

---

[21] *See also Parsons*, 2022 WL 4809492, at *11 (the differences between the proof of the members' claims and the defendant's defenses overwhelmed the "common issues"); *see also Waters v. Electrolux Home Products, Inc.*, 2016 WL 3926431, at *5 (N.D. W. Va. July 18, 2016) (plaintiff's claims were atypical).

– that are atypical of the remainder of the class, no typicality exists. *Alhassid*, 307 F.R.D. at 698 (finding that the plaintiffs' claims were atypical because one of their claims contained abnormal facts and the other voluntarily paid the fees at issues and was subject to a unique defense).[22]

Plaintiff's claims are atypical for several reasons. Most notably, Plaintiff waived her claims against RoundPoint when she deposited the Check.[23] Thus, her claims bear little similarity to the borrowers who did not receive checks from RoundPoint and/or had security instruments that did not contain a waiver provision. By attempting to oppose RoundPoint's defense that Plaintiff waived her claims by accepting a check that fully reimbursed her for all of the fees that were assessed to the Loan, Plaintiff will not be advancing the claims of the putative class members. In addition, Plaintiff's claims are atypical given that they are highly fact-specific and unique to the circumstances of the Loan. While Plaintiff alleges that one or more of RoundPoint's inspection fees may have been improper because QRPC had been established, these provisions have no bearing whatsoever upon privately-owned loans. Similarly, if Plaintiff argues that a fee was assessed while a modification review was ongoing or following a recent payment, these averments will be atypical of other borrowers who were in severe default or did not apply for a modification.

### 5. __The Proposed Class is Not Ascertainable.__

Rule 23's ascertainability threshold requires that proposed class members be readily identifiable with reference to objective criteria. *Adair*, 764 F.3d at 358. A class action is inappropriate when "class members are impossible to identify without extensive and

---

[22] Moreover, when the plaintiff in a putative class action arising out of a servicer's assessment of property inspection fees is situated differently and would be advancing different types of arguments than the class members, she cannot satisfy the typicality requirement and class certification must be denied. *Eversole v. EMC Mortg. Corp.*, 2007 WL 1558512, at *10 (E.D. Ky. May 29, 2007) (refusing to certify class of borrowers who alleged that loan servicer improperly assessed property inspection fees to their loans)

[23] In fact, Plaintiff's claims are even more atypical than the consumer in *Long*'s were insofar as the latter only provided a partial release of claims while Plaintiff waived each and every claim that she possessed against RoundPoint arising out of the property inspection fees she was reimbursed for.

individualized fact-finding or mini-trials." *Id*.[24]  A putative class alleging that a servicer improperly assessed inspection fees to their loans is not ascertainable when determining class membership would require an individual assessment of each loan. *Alhassid*, 307 F.R.D. at 696.

While Plaintiff alleges that the putative class is ascertainable because RoundPoint produced a list of borrowers who had property inspection fees assessed to their loans, she misses the mark. The fact that a borrower appears on this list does not mean that he or she is a potential class member.[25]  Assuming purely *arguendo* that a borrower possesses a viable claim against RoundPoint, RoundPoint would be required to conduct a review of each loan file to determine whether the borrower waived his claims against RoundPoint by accepting a credit or check or by settling a prior case.  In addition, because Plaintiff's claims arise out of RoundPoint's alleged collections, RoundPoint would need to review each file and every communication it sent to each borrower.[26]

B.    **Plaintiff Has Failed to Meet Rule 23(b)(3)'s Predominance Requirement.**

1.    **Legal Standard.**

Predominance requires a showing that the "questions of law or fact common to all class members predominate over any questions affecting only individual members." *Comcast Corp.*, 569 U.S. at 33.  While predominance is related to commonality, "it is even more demanding." *Id.* "[T]he mere fact that the defendants engaged in uniform conduct is not, by itself, sufficient to

---

[24] When a court lacks even a rough outline of the class's size and composition, the class is not sufficiently ascertainable.  *Id*. at 359-60; *see also Parsons*, 2022 WL 4809492, at *14-15 (holding that the plaintiffs' proposed class was not ascertainable because they did not propose a reliable process for accurately ascertaining the putative class members).

[25] While Plaintiff alleges that she can establish numerosity because RoundPoint provided a spreadsheet that referenced 198 different borrowers, her flawed argument ignores the fact that none of these borrowers possess viable claims against RoundPoint.  RoundPoint lawfully assessed property inspection fees to each of these accounts, and no borrower can plausibly assert a claim under the WVCCPA arising out of these fees. *Brady v. Thurston Motor Lines*, 726 F.3d 136, 145 (4th Cir. 1984); *Christman v. American Cyanamid Co.*, 92 F.R.D. 441, 451 (N.D. W. Va. 1981).

[26] For instance, if a property inspection fee was assessed and the borrower immediately reinstated the loan before receiving his or her next monthly statement, he could not plausibly argue that RoundPoint attempted to collect the fee from him.

satisfy Rule 23(b)(3)'s more demanding predominance requirement." *Adair*, 764 F.3d at 366. "The predominance inquiry focuses on whether liability issues are subject to class-wide proof or require individualized and fact-intensive determinations." *Post*, 2023 WL 5602084, at *4. When the merits of each putative class member's claim is an inherently individualized inquiry, no predominance exists. *See Post*, 2023 WL 5602084, at *4-6 (refusing to certify); *see also Martin v. Mountain State University, Inc.*, 2014 WL 1333251, at *4-6 (S.D. W. Va. Mar. 31, 2014) (denying motion and finding that the varied and diverse circumstances of each member "would require an individual inquiry and entirely overtake the common questions in this case").[27]

Plaintiff has fallen well short of the burden needed to establish predominance because the legal and factual questions inherent in each claim are nuanced and individualized; there is no generalized, classwide proof applicable to the putative class. While Plaintiff may allege that each borrower referenced in Exhibit C was assessed a property inspection fee, she cannot identify a single law containing a bright-line rule that these fees were impermissible. In addition, Plaintiff ignores the fact that the propriety of each property inspection fee depends on the circumstances of each individual loan and, among other things, the terms of each individual security instrument.

The security instruments do not contain uniform language governing a lender's right to assess inspection fees and some of the instruments (including Plaintiff's) contain a waiver provision that may bar a borrower from seeking relief after receiving a credit or a payment. In addition, the circumstances in which property inspection fees may be assessed to a loan in accordance with W. Va. Code §46A-2-115 depend on, among other things, the status of each loan, each borrower's history of payments, the occupancy status of each property.[28] This Court would

---

[27] *See also Parsons*, 2022 WL 4809492, at *13 (no predominance existed because the fact-finder would be required to required to make a series of individualized inquiries into the merits of each member's claims); *Waters*, 2016 WL 3926431, at *5-6 (holding that individual issues would predominate litigation regarding each class member's claim because each member would be required to submit individualized proofs).

[28] The amount of nuances and individualized issues at stake are exacerbated as a result of Plaintiff's theories arising out of the propriety of fees assessed when QRPC has been established, a modification review is

also be required to review the remediation provided to each borrower in determining whether they can plausibly allege harm as a result of fees that they never paid or paid and were reimbursed for.

In addition, because Plaintiff's claims arise out of sections of the WVCCPA governing debt collection, this Court would be required to review each communication at issue to determine whether it can give rise to a viable claim. Certifying a class to adjudicate these claims would thus result in hundreds of individual mini-trials and require countless individual legal determinations.

### 2. Individual Issues Predominate in Property Inspection Fee Cases.

No predominance exists in a case arising out of property inspection fees when only individualized evidence as to each borrower could prove that the servicer committed wrongdoing. *Alhassid*, 307 F.R.D. at 701 (finding that each borrower's allegations turned on whether the servicer accurately concluded that each borrower was in default); *see also Pfendler v. PNC Bank, National Association*, 2018 WL 2688502, at *4, n. 2 (W.D. Pa. June 5, 2018) (finding that a determination of the plaintiff's class claim that a servicer improperly assessed property inspection fees "would require a case-by-case analysis" regarding the reasonableness of any particular fee).[29]

An application of each of the above-referenced cases to the facts of this matter further reinforces that individual issues predominate Plaintiff's putative class claims because each individual borrower's claim would require a case-by-case mini-trial regarding each fee at issue, the status of each loan at the time the fee was assessed and the individualized proof needed to establish particularized defenses applicable to each claim.

---

pending, and/or a recent payment was made. These theories would require this Court to conduct a thorough review of, *inter alia*, each set of investor guidelines, servicing notes, inspection reports, payment histories.
[29] In addition, class certification must be denied when individual questions predominate over questions common to a group of borrowers who allege that a servicer assessed unlawful fees. *O'Gara ex. rel. Estate of Portnick v. Countrywide Home Loans, Inc.*, 282 F.R.D. 81, 89 (D. Del. 2012) (a determination as to the reasonableness of fees and disposition of certain defenses would require individualized proof); *see also In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010) (refusing to certify class arising out of servicer's assessment of fees and finding no predominance existed because the circumstances of the fees charged by the servicer varied from borrower to borrower and the propriety of each fee was a fact-specific inquiry).

C.    **The Cases Plaintiff Relies Upon are Readily Distinguishable.**

While Plaintiff relies heavily upon *Yates v. NewRez LLC*, 2023 WL 5108803 (D. Md. Aug. 9, 2023), this case is distinguishable in several respects.  The Maryland statute at issue contained a bright-line rule that "a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property." *Id*. at *1.  In contrast, the statutes that give rise to Plaintiff's claims contain no such language and one authorizes lenders to assess inspection fees.  Accordingly, Plaintiff is comparing apples to oranges by analogizing the facts of this case to one involving a statute that unambiguously bars servicers from assessing inspection fees.  The *Yates* typicality analysis is of no import because the plaintiff's claim was similar to the remaining members (a servicer's violation of an unambiguous statute) and was not subject to a unique defense.  *Id*. at *7.[30] Most notably, the *Yates* court's findings with respect to predominance and commonality bear no relevance to this matter because the Maryland statues at issue therein contained strict liability standards that did not require fact-intensive reviews of each borrower's loan file.  *Id*. at *9-10.

Plaintiff's citation to *Alig v. Quicken Loans Inc*., 2016 WL 10489897, at *14 (N.D. W. Va. June 2, 2016) is inapposite in that the defendant engaged in a common course of conduct during the appraisal process that led to a simple resolution of the plaintiff's claim on a classwide basis. Unlike *Alig*, this Court will be required to make a far more nuanced analysis involving hundreds of individualized inquiries.  In addition, nothing in *Alig* suggests that the representative had the same adequacy and typicality concerns that the Plaintiff possesses.[31] *Adkins v. Midland Credit*

---

[30] Similarly, the adequacy analysis in *Yates* is inapposite insofar as the plaintiff in that case offered consistent testimony regarding the inspection fees that her servicer assessed as well as the relief that she was seeking and did not spend a large portion of her deposition testifying that the case stemmed from an entirely different type of fee and a claim that was previously dismissed due to lack of merit. *Id*. at *8.

[31] Plaintiff also cites to *Alig v. Quicken Loans, Inc.*, 2017 WL 5054287, at *14 (N.D. W. Va. July 11, 2017), which is the decision where this Court awarded damages to a certified class.  The passage that Plaintiff quotes from is of no utility herein because this Court noted that there was "absolutely no difference in defendants' conduct here as to the members of the proposed classes, let alone a meaningful one."  As set forth throughout the entirety of this opposition, RoundPoint services each loan and assesses inspection fees on an individualized basis and in accordance with the unique circumstances of each borrower's default.

*Management, Inc.*, 2019 WL 1549712 (S.D. W. Va. Apr. 9, 2019) bears no similarity to this case because the defendant there omitted a disclosure mandated by the WVCCPA in each collection letter. *Id.* at *1. The court found that the defendant's violations of this requirement was a core issue that predominated over individual ones and that the potential members' claims were essentially identical.[32] *Id.* at *5.

As much as she may believe otherwise, Plaintiff cannot assert a claim that RoundPoint violated the WVCCPA on a *per se* basis and cannot show that her claim is "essentially identical" to any other borrower's. Because each borrower's claims will require an individual loan file review as well as a mini-trial regarding RoundPoint's potential liability rather than a simplistic application of a bright-line rule, these cases offer no support for the relief that Plaintiff seeks.

## V.    CONCLUSION

For the foregoing reasons, RoundPoint respectfully requests that this Court enter an Order denying Plaintiff's Motion for Class Certification.

Respectfully submitted,

**BLANK ROME LLP**

*/s/Carrie Goodwin Fenwick*
Carrie Goodwin Fenwick
WV Bar No. – 7164
GOODWIN & GOODWIN, LLP
300 Summers Street, Suite 1500
Charleston, WV 25301
(304) 346-7000
cgf@goodwingoodwin.com

*/s/ Kevin Eddy*
Kevin Eddy
WV Bar No. – 12390
501 Grant Street, Suite 850
Pittsburgh, PA 15219
(412) 932-2757

---

[32] The *Newtown*, *Brown*, and *Allen* decisions that Plaintiff cites to on pages 11-12 of the Motion are also easily distinguishable because they involve scenarios where the putative class members' claims were uniform and arose out of a *per se* claim that the defendant assessed a fee in violation a statute.

Email: KEddy@BlankRome.com

/s/ Cheryl S. Chang
Cheryl S. Chang
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
(424) 239-3400
Email: Cheryl.Chang@BlankRome.com
(Admitted *Pro Hac Vice*)
*Counsel for Defendant*

Dated: September 12, 2023

26

## <u>CERTIFICATE OF SERVICE</u>

I, Carrie Goodwin Fenwick, hereby certify that on this 12th day of September, 2023, a true

copy of the foregoing document was served on the following parties via electronic mail and ECF:

Jason E. Causey, Esquire
Bordas & Bordas, PLLC
1358 National Road
Wheeling, WV 26003

Patricia M. Kipnis, Esquire
Bailey & Glasser LLP
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
*Attorneys for Plaintiff*


*/s/ Carrie Goodwin Fenwick*
Carrie Goodwin Fenwick