**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| | : | |
| PATRICIA EDGE, in her own right and as representative of a class of persons similarly situated, | : : : | Case No.: 1:21-cv-00122-TSK |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| ROUNDPOINT MORTGAGE SERVICING LLC, | : : | |
| | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION................................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................................. 2

    A.    The Loan and the Deed of Trust........................................................................ 2

    B.    Plaintiff Defaults on the Loan, and RoundPoint Exercises its Contractual Rights to Perform Inspections of the Property and Assess Property Inspection Fees and a Title Certificate Fee as Recoverable Advances................. 3

    C.    Plaintiff is Approved for a Trial Plan and a Modification Agreement is Reached.............................................................................................................. 4

    D.    RoundPoint Adopts a Conservative and Borrower-Friendly Approach and Decides to Refrain From Assessing Property Inspection Fees to Loans Secured by West Virginia Properties, and To Reimburse Certain Borrowers.......................................................................................................... 5

    E.    RoundPoint Tenders a Reimbursement Check to Plaintiff, and She Deposits It........................................................................................................ 5

    F.    Plaintiff Receives an Attorney Solicitation Letter and Files the Instant Action ................................................................................................................ 6

III.  LEGAL ARGUMENT ............................................................................................ 8

    A.    Legal Standard................................................................................................... 8

    B.    RoundPoint is Entitled to Summary Judgment on Count I Because the Property Inspection Fees and Title Certificate Fee that RoundPoint Assessed to the Loan Were Authorized by the DOT and West Virginia Law..................................................................................................................... 8

        1.    The DOT, W. Va. Code §46A-2-115(a), and a Series of Analogous Cases Supply RoundPoint With the Authority to Assess Inspection Fees............................................................................ 8

        2.    Plaintiff's Flawed Interpretation of W. Va. Code §46A-2-115 is Inconsistent with its Unambiguous Language, and a Similar Misinterpretation was Soundly Rejected in McFarland......................... 11

        3.    The DOT and W. Va. Code §46A-2-115(b)(2) Provided RoundPoint With the Authority to Assess the Title Certificate Fee.................................................................................................... 12

        4.    W. Va. Code §46A-2-127 and §46A-2-128 Govern The Means of Collecting Fees, Not the Legality of Such Fees.................................. 12

    C.    Once Plaintiff Deposited the Check, She Waived the Right to Assert a Claim Arising out of RoundPoint's Assessment of the Property Inspection Fees................................................................................................................... 13

D.     Plaintiff Lacks Standing to Maintain this Action Because She Was Fully Reimbursed for the Property Inspection Fees That RoundPoint Legally Assessed to the Loan and Has Not Suffered an Injury in Fact ............................ 14

E.     RoundPoint is Entitled to Summary Judgment on Counts I and II of the Amended Complaint Because They are Derivative of Plaintiff's Flawed Argument that RoundPoint Lacked the Authority to Assess Inspection Fees and Because RoundPoint did not Engage in the Conduct Proscribed By the Statutes .................................................................................................. 15

     1.     RoundPoint is Entitled to Summary Judgment on Plaintiff's Claims Arising out of W. Va. Code §46A-2-127 ................................... 16

     2.     RoundPoint is Entitled to Summary Judgment on Plaintiff's Claims Arising out of W. Va. Code §46A-2-128 ................................... 20

     3.     Plaintiff's §46A-2-124(f) Claim is Meritless Because She Cannot Show That RoundPoint Acted Coercively by Exercising its Right to Assess Inspection Fees and Complying With its Servicing Obligations .......................................................................... 22

F.     RoundPoint is Entitled to Summary Judgment on Count III Because Plaintiff Has Not Provided Any Factual Support for Her Attenuated Claims ......................................................................................................... 23

IV.     CONCLUSION .......................................................................................................... 25

141581.00711/132629099v.5

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Chrysler Financial Co., LLC*,
  2013 WL 1385407 (S.D. W. Va. Apr. 3, 2013) ................................................................ 24

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .............................................................................................................. 8

*Barnette v. Equifax, Inc.*,
  2019 WL 3491941 (S.D. W. Va. July 12, 2019) .............................................................. 22

*Benner v. Bank of America, N.A.*,
  917 F. Supp. 2d 338 (E.D. Pa. 2013) ................................................................................ 15

*Birchfield v. Rushmore Loan Management Services, LLC*,
  2019 WL 9832188 (N.D. W. Va. Jan. 29, 2019) ............................................... 17, 18, 19

*Bloom v. Library Corp.*,
  112 F. Supp. 3d 498 (N.D. W. Va. 2015) ........................................................................... 9

*Bourne v. Mapother & Mapother, P.S.C.*,
  998 F. Supp. 2d 495 (S.D. W. Va. 2014) .......................................................................... 24

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .............................................................................................................. 8

*Chandler v. Greenlight Financial Services*,
  2021 WL 1202078 (S.D. W. Va. Mar. 30, 2021) ............................................................ 21

*Chirchir v. Citizens Bank, N.A.*,
  2022 WL 407091 (S.D. W. Va. Feb. 9, 2022) ..................................................... 17, 19, 21

*Conway v. U.S. Bank, National Association*,
  2019 WL 2320872 (E.D. Pa. May 29, 2019) .................................................................... 15

*Davis v. DISH Network, LLC*,
  2019 WL 5406241 (S.D. W. Va. Oct. 22, 2019) ....................................................... 19, 22

*Delebreau v. Bayview Loan Servicing, LLC*,
  770 F. Supp. 2d 813 (S.D. W. Va. 2011) .......................................................................... 17

*Elkins v. Diversified Collection Serv., Inc.*,
  2013 WL 3754830 (S.D. W. Va. July 15, 2013) .............................................................. 17

141581.00711/132629099v.5

*Garretson v. Sentry Credit, Inc.*,
    2018 WL 1659477 (S.D. W. Va. Apr. 3, 2018) ................................................................ 22

*Gillis v. Bayview Loan Servicing, LLC*,
    Civil Action No. 17-C-20 (Barbour County Cir. Ct. Dec. 7, 2018) ................................ 10, 20

*Hill v. SCA Credit Services, Inc.*,
    2015 WL 1808930 (S.D. W. Va. Apr. 21, 2015) .............................................................. 22

*Kesling v. Countrywide Home Loans, Inc.*,
    2011 WL 227637 (S.D. W. Va. Jan. 24, 2011) .........................................................*passim*

*McFarland v. Wells Fargo Bank, N.A.*,
    19 F.Supp.3d 663 (S.D. W. Va. May 7, 2014), *vacated in part on other*
    *grounds*, 810 F.3d 273 (4th Cir. 2016) ...................................................................*passim*

*Minix v. Central Source, LLC*,
    2019 WL 6121413 (N.D. W. Va. Sept. 25, 2019) ............................................................ 15

*Perrine v. Branch Banking and Trust Company*,
    2018 WL 11372226 (N.D. W. Va. Sept. 25, 2018) ........................................ 17, 18, 19, 21

*Rice v. Green Tree Servicing, LLC*,
    2015 WL 5443708 (N.D. W. Va. Sept. 12, 2015) ........................................... 17, 18, 19, 20

*Sanders v. CBCINNOVIS, Inc.*,
    2016 WL 6811095 (N.D. W. Va. July 13, 2016) ............................................................. 22

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ......................................................................................................... 14

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ......................................................................................................... 14

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (U.S. 2021) ........................................................................................ 14, 15

*Tucker v. Navy Federal Credit Union*,
    2011 WL 6219852 (N.D. W. Va. Dec. 14, 2011) ............................................................ 21

*Valentine & Kebartas, Inc. v. Lenahan*,
    239 W.Va. 416 (2017) ...................................................................................................... 23

*White v. Ally Financial Inc.*,
    2013 WL 1857266 (S.D. W. Va. May 2, 2013) ............................................................... 24

*Wittenberg v. First Independent Mortg. Co.*,
    599 Fed. Appx. 463 (4th Cir. 2013) ................................................................................ 19

iv

**Statutes**

W. Va. Code § 46A-2-115, *et seq.*................................................................8, 9, 11, 12

W. Va. Code § 46A-2-124 ..................................................................................12, 16

W. Va. Code § 46A-2-124(f)..................................................................7, 16, 22, 23

W. Va. Code § 46A-2-125 ......................................................................................23, 24

W. Va. Code § 46A-2-127, *et seq.*......................................................................*passim*

W. Va. Code § 46A-2-128, *et seq.*......................................................................*passim*

W. Va. Code § 46A-5-101(1)..................................................................................... 1

W. Va. Code § 46A-2127..................................................................................... 20

W. Va. Code § 128 ................................................................................................. 7

**Other Authorities**

Fed. R. Civ. P. 56(c)............................................................................................... 8

U.S. Const., Art. III, § 2........................................................................................ 14

141581.00711/132629099v.5

Defendant, RoundPoint Mortgage Servicing LLC ("RoundPoint"), by and through its undersigned counsel, hereby files the following Memorandum of Law in Support of its Motion for Summary Judgment.

## I.   **INTRODUCTION**

This action is Plaintiff, Patricia Edge's ("Plaintiff"), improper attempt to file a putative class action against RoundPoint that arises out of certain fees that RoundPoint lawfully assessed to her mortgage loan in accordance with both the unambiguous language of the parties' contract and well-settled West Virginia law.   As discussed in detail below, Plaintiff's claims are insufficient as a matter of law because she cannot establish that any of the fees at issue were improperly assessed.   To the contrary, RoundPoint was permitted to assess these fees because they were incurred solely as a result of Plaintiff's default on her loan and while RoundPoint was in the process of realizing upon its security interest in the subject property.

Moreover, although RoundPoint was authorized to assess these fees, it subsequently adopted a conservative and consumer-friendly approach and decided to tender a check to Plaintiff in the amount of $240 to reimburse her for the property inspection fees that it assessed to the loan.   Despite the fact that Plaintiff never actually paid the four property inspection fees that are at issue in this case[1], while RoundPoint actually incurred out-of-pocket costs to pay for its inspections of Plaintiff's property, and that the plain language of the deed of trust barred her from filing this lawsuit the moment that she deposited RoundPoint's reimbursement check, she nonetheless filed this action in an improper attempt to recover a windfall after she received a letter from one of her attorneys soliciting her to file a lawsuit against RoundPoint.

---

[1] Although RoundPoint assessed additional property inspection fees to Plaintiff's loan, only the $15.00 fees assessed in May 2017, June 2017, July 2017, and August 2017 are actionable in this litigation.   The remaining $210 in property inspection fees require no further analysis because they were assessed more than four years before Plaintiff commenced this action and cannot give rise to a timely claim under the West Virginia Consumer Credit and Protection Act ("WVCCPA").   *See* W. Va. Code §46A-5-101(1).

1

For the reasons set forth more fully below, RoundPoint respectfully requests that this Court reject Plaintiff's misguided attempt to impose liability upon RoundPoint for lawfully assessing fees that she agreed to repay in writing and that are expressly permitted by law.

II.    **FACTUAL BACKGROUND**

A.    **The Loan and the Deed of Trust**

Plaintiff received a loan on April 26, 2002 in the amount of $128,000 (the "Loan") that was secured by a Deed of Trust (the "DOT") and Note (the "Note"). *See* Affidavit of Amber Todd (the "Todd Aff.") at Ex. A, B.[2]  In the Note, Plaintiff agreed that she would make timely payments.  *Id.*, Ex. B at p. 1.[3]  In Uniform Covenant 7 of the DOT, Plaintiff agreed that her lender or its agent "may make reasonable entries upon and inspections of the Property." Todd Aff., Ex. A at p. 6.  In addition, Uniform Covenant 14 of the DOT states as follows:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, **property inspection and valuation fees**.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.

*Id*. at p. 9 (emphasis added).  The DOT further states that the lender possesses the right to issue refunds of any loan charges by issing a credit or direct payment to the borrower, and that:

> Borrower's acceptance of any such refund made by direct payment to Borrower **will constitute a waiver of any right of action Borrower might have arising out of such overcharge**.

*Id*. (emphasis added).

In addition, Uniform Covenant 19 states that if Plaintiff defaults on the Loan and wishes

---

[2] The DOT was secured against the property located at 216 Wiseman Street, Bridgeport, WV 26330 (the "Property").  *Id.*, Ex. A at p. 2.
[3] In addition, Plaintiff agreed that she would be in default if she did not "pay the full amount of each monthly payment on the date it is due." *Id*. at p. 2.

141581.00711/132629099v.5

to reinstate it, she is required to, among other things pay "all expenses incurred in enforcing the Security Instrument, including, but not limited to, reasonable attorneys' fees, **property inspection and valuation fees**, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument." *Id*. at p. 10 (emphasis added). Pursuant to Uniform Covenant 22 of the DOT, if Plaintiff defaulted on the Loan, the lender possessed the right to, *inter alia*, assess reasonable fees and costs of title evidence. *Id*. at p. 11.

        **B.**   **Plaintiff Defaults on the Loan, and RoundPoint Exercises its Contractual Rights to Perform Inspections of the Property and Assess Property Inspection Fees and a Title Certificate Fee as Recoverable Advances.**

When RoundPoint began servicing the Loan on September 1, 2014, the Loan was due for the August 2014 installment and was in default. Todd Aff. at ¶8, Ex. C. After Plaintiff briefly brought the Loan current in December 2016, she subsequently failed to remit a payment to RoundPoint in January 2017 or February 2017. *Id*. at ¶9, Ex. C. After Plaintiff made payments on March 28, 2017 and March 31, 2017 to satisfy the January 2017 and February 2017 installments, she failed to make another payment until August 31, 2017. *Id*. at Ex. C. On April 25, 2017, RoundPoint sent a Notice of Right to Cure to Plaintiff that notified her that she was in default, that the balance owed may be accelerated if she failed to cure the default, and that provided a breakdown of the amount she was required to pay to reinstate the Loan. *Id*. at Ex. D.

RoundPoint's vendor performed an inspection of the Property on April 28, 2017 in accordance with RoundPoint's rights under the DOT, and the vendor assessed a charge of $15 to RoundPoint for its services. *Id*. at ¶10, Ex. E. After RoundPoint paid $15 to its vendor, it assessed a property inspection fee of $15 to the Loan on May 1, 2017 in accordance with its rights under Uniform Covenant 14 of the DOT. *Id*. at ¶11, Ex. C. Because Plaintiff remained in default, RoundPoint's vendor performed similar inspections of the Property on June 2, 2017, July 3, 2017, and August 6, 2017 and assessed a charge of $15 to RoundPoint for each inspection. *Id*.

141581.00711/132629099v.5

at ¶12, Ex. F.  RoundPoint paid these charges to its vendor, and it assessed a $15 property inspection fee to the Loan on June 5, 2017, July 5, 2017, and August 8, 2017.  *Id*. at ¶13, Ex. C.

RoundPoint referred the Loan to Reisenfeld & Associates ("Reisenfeld"), on June 30, 2017.  *Id*. at ¶14.  Reisenfeld obtained a Title Certificate on July 2, 2017 to determine what encumbrances were attached to the Property in preparation for a potential foreclosure sale.  *Id*. at ¶15, Ex. G.  Reisenfeld charged RoundPoint $225 for the costs associated with obtaining this certificate, and RoundPoint paid this amount on July 28, 2017.  *Id*. at ¶16, Ex. H.  On July 28, 2017, RoundPoint assessed a recoverable advance of $225 titled "TITLE COSTS" to the Loan in accordance with its rights pursuant to Uniform Covenant 22 of the DOT.  *Id*. at Ex. C.

**C.  <u>Plaintiff is Approved for a Trial Plan and a Modification Agreement is Reached.</u>**

Plaintiff submitted a request for loan modification assistance to RoundPoint on June 30, 2017, and RoundPoint sent Plaintiff a letter dated August 10, 2017 to notify her that she had been approved for a trial period plan.  *Id*. at ¶18, Ex. I.  If Plaintiff made her first trial payment in timely fashion, RoundPoint would suspend all foreclosure-related activities but foreclosure activities may continue if she failed to do so.  *Id*.[4]  After Plaintiff completed the trial plan, she entered into a Loan Modification Agreement (the "Modification Agreement") with RoundPoint in December 2017 in which Plaintiff and RoundPoint agreed that RoundPoint would capitalize $4,978.96 in past due principal, interest, escrow, and recoverable loan charges (including the outstanding property inspection fees) into the unpaid principal balance of the Loan in order to bring the Loan current and agreed that the new balance would be $98,830.93.  *Id* at Ex. J at p. 1.  On April 1, 2019, RoundPoint transferred the servicing of the Loan to BSI Financial Services, Inc. ("BSI").  *Id*. at ¶22.

---

[4] Plaintiff made her first trial payment on August 31, 2017.  *Id*. at Ex. C.

4

**D. RoundPoint Adopts a Conservative and Borrower-Friendly Approach and Decides to Refrain From Assessing Property Inspection Fees to Loans Secured by West Virginia Properties, and To Reimburse Certain Borrowers.**[5]

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████     ███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

**E. RoundPoint Tenders a Reimbursement Check to Plaintiff, and She Deposits It.**

Because the Loan was current when the servicing was transferred to BSI, RoundPoint sent Plaintiff a check in the amount of $240 (the "Check"). *Id.* at ¶23. The Check represented all 16 of the inspection fees in the amount of $15 that RoundPoint assessed to the Loan. *Id.* at ¶24. RoundPoint sent Plaintiff a letter dated March 23, 2020 (the "March 2020 Letter") that notified her that it had performed a recent review of her account and "discovered an over-

---

[5] Contemporaneously herewith, RoundPoint is filing a motion seeking leave to file unredacted versions of this motion, the Todd Affidavit, and exhibits to the Chang Declaration under seal (the "Motion to Seal"). As set forth in the Motion to Seal, RoundPoint respectfully requests leave to file these documents under seal in accordance with the Protective Order that this Court entered on June 10, 2022. *See* Dkt. 31.

█████████████████████████████████████████████████████

████████████████████████████████████████████

collection of charges." Chang Decl. at Ex. B.  RoundPoint further stated that it had enclosed "a refund check…to reimburse you for the over-collection." *Id.*

Plaintiff testified that she received the Check and that she deposited it into her account. *Id.*, Ex. D, 77:22-78:18.[7]  Although the March 2020 Letter explained that RoundPoint was enclosing a check in connection with certain charges that had been assessed to the Loan, Plaintiff allegedly debated whether to deposit the Check because she was unsure as to why she received it.  *Id.* at 80:22-81:3.  Despite her alleged confusion and the March 2020 Letter's inclusion of RoundPoint's contact information, Plaintiff never contacted RoundPoint or anyone else in order to obtain additional information regarding the Check.  *Id.* at 81:4-6; 82:21-83:6.

### F.  <u>Plaintiff Receives an Attorney Solicitation Letter and Files the Instant Action.</u>

On October 24, 2019, Plaintiff's counsel – Jason Causey of Bordas and Bordas ("Bordas") – wrote a letter to Plaintiff stating that, "[a]ccording to public records and information we have gathered from prior lawsuits," he believed that RoundPoint may have violated the WVCCPA in servicing her loan.  Chang Decl., Ex. E.  Mr. Causey stated that he believed that Plaintiff may have grounds for a lawsuit against RoundPoint and invited her to contact him as soon as possible for a consultation. *Id.*[8]

On June 15, 2021 – just shy of four (4) years after the date RoundPoint assessed its final property inspection fee to the Loan – Plaintiff filed a Class Complaint (the "Complaint") with the

---

[7] RoundPoint's records confirm that Plaintiff deposited the Check in June 2020.  Todd Aff. at ¶25.
[8] Plaintiff testified that she had never heard of Bordas before receiving the letter, that the letter prompted her to file this action and that she may not have done so without the letter. *Id.*, Ex. D at 37:23-25; 157:21-158:2.

141581.00711/132629099v.5

Circuit Court of Harrison County, West Virginia. *Id.*, Ex. F.[9]  Plaintiff asserted three putative class claims against RoundPoint and one individual claim. Chang Decl., Ex. F *generally*.[10]

On September 8, 2022, Plaintiff filed an Amended Complaint in order to remove her deficient claim arising out of the late fees that RoundPoint assessed to the Loan. *See* Dkt. No. 53. The Amended Complaint contains two putative class claims and one individual claim. *Id.*  In Count I, Plaintiff set forth a class claim that alleged that RoundPoint violated W. Va. Code §46A-2-127 and § 128 by threatening to collect property inspection fees and other default related fees and violated W. Va. Code §46A-2-124(f) by threatening to take action prohibited by law. *Id.* at ¶¶41-43.  In Count II, Plaintiff set forth a class claim that alleged that RoundPoint violated W. Va. Code §46A-2-127(d) by making false representations regarding fees and costs that she owed with respect to the Loan.  *Id.* at ¶¶44-45.  Finally, in Count III, Plaintiff asserted an individual claim that alleged that RoundPoint violated the WVCCPA through its purportedly abusive and/or harassing attempts to collect a debt. *Id.* at ¶¶46-50.

As set forth more fully below, Plaintiff's putative class claims are legally insufficient because both the DOT and West Virginia law provided RoundPoint with express authority to assess the property inspection fees at issue to the Loan, Plaintiff waived her right to file this action, and she has failed to show that RoundPoint is a debt collector or that it engaged in the unscrupulous collection practices that are needed to establish a WVCCPA claim.  Moreover, Count III is legally insufficient because Plaintiff has not provided information in support of her conclusory allegations arising out of the calls that RoundPoint made to her.  Thus, RoundPoint respectfully requests that this Court enter summary judgment in its favor.

---

[9] RoundPoint filed a Notice of Removal with this Court on September 2, 2021, and it filed an Answer to the Complaint on September 9, 2021.  *See* Dkt. Nos. 1, 4.

[10] Although a cursory review of the Payment History shows that RoundPoint never assessed a late fee to the Loan exceeding $15.00, Plaintiff asserted a putative class claim alleging that RoundPoint assessed late fees in excess of $30.00 in violation of the WVCCPA.  Todd Aff., Ex. C; Chang Decl., Ex. F at ¶¶37-38.

III.    **LEGAL ARGUMENT**

A.  **Legal Standard**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In order to defeat a motion for summary judgment, disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23.

B.  **RoundPoint is Entitled to Summary Judgment on Count I Because the Property Inspection Fees and Title Certificate Fee that RoundPoint Assessed to the Loan Were Authorized by the DOT and West Virginia Law.**

1.  **The DOT, W. Va. Code §46A-2-115(a), and a Series of Analogous Cases Supply RoundPoint With the Authority to Assess Inspection Fees.**

As an initial matter, when Plaintiff signed the DOT, she agreed that her lender possessed the right to conduct inspections of the Property and assess property inspection fees to the Loan. Todd Aff., Ex. A.  In addition, as set forth below, both West Virginia statutory law and several cases have found that a servicer may assess property inspection fees to a loan in default.

W. Va. Code §46A-2-115(a) is titled "Limitation on default charges" and states as follows: "Except for **reasonable expenses, including costs and fees authorized by statute incurred in realizing on a security interest,** the agreements that evidence a consumer credit

sale or a consumer loan may not provide for charges as a result of default by the consumer other than those authorized by this chapter" (emphasis added). Because there is no ambiguity in the language of §46-2-115, the plain meaning rule of statutory interpretation states that this Court's analysis must end with the statute's plain language. *Bloom v. Library Corp.*, 112 F.Supp.3d 498, 504 (N.D. W. Va. 2015). On its face, §46A-2-115 clearly indicates that lenders are permitted to assess reasonable expenses that are incurred in realizing upon a security interest.

Indeed, this interpretation has borne out on numerous prior cases where West Virginia state and federal courts have found that servicers may assess property inspection fees to loans in default because these fees were reasonable expenses incurred "in realizing on a security interest." For instance, in *McFarland v. Wells Fargo Bank, N.A.*, 19 F.Supp.3d 663, 676 (S.D. W. Va. May 7, 2014), *vacated in part on other grounds*, 810 F.3d 273 (4th Cir. 2016), the court held that a lender complied with §46A-2-115 when assessing property inspection fees to a loan that was in default. The court found that these fees were incurred "in realizing on a security interest" because the loan was in default and the lender had the right to foreclose. *Id.* In addition, the court held that the fees were reasonable because conducting property inspections when a loan is in default ensures that the property remains occupied and in good repair. *Id.* at 677.

In *Kesling v. Countrywide Home Loans, Inc.*, 2011 WL 227637, at *5 (S.D. W. Va. Jan. 24, 2011), the court noted that the deed of trust authorized a lender to assess inspection fees to the plaintiff's loan and found that the lender had the right to assess these fees in order to confirm whether the property remained occupied and in acceptable condition. Moreover, the court found that the inspection fees were expressly authorized by §46A-2-115(a) because it permits servicers to assess reasonable expenses incurred as a result of realizing on a security interest. *Id.*

9

Likewise, in 2018, the Circuit Court of Barbour County, West Virginia issued an order and opinion in *Gillis v. Bayview Loan Servicing, LLC*, Civil Action No. 17-C-20 (Barbour County Cir. Ct. Dec. 7, 2018) granting a lender's motion for summary judgment and cited to *Kesling* and *McFarland* for the proposition that "property inspection fees are recoverable if incurred in realizing on a security interest." Chang Decl., Ex. G. The court held that one property inspection per month is necessary for a servicer to ensure that the property was maintained, occupied, and not damaged by fire, flood, the elements or vandalism, and it is standard practice in the loan servicing industry, including for "Fannie Mae, a leading investor for mortgage loans, [that] requires servicers to make monthly inspections." *Id*. at ¶51.

Much like the servicers in the above-cited cases, RoundPoint assessed inspection fees to the Loan from May 2017 through August 2017 because the Loan was in default and the DOT supplied RoundPoint with the right to inspect the Property to confirm whether it was occupied, if it was being maintained in satisfactory condition, and/or whether it had been damaged. Critically, RoundPoint stopped performing these inspections once Plaintiff received and accepted a trial period plan offer in August 2017. In addition, once the Loan was modified and remained current, RoundPoint did not perform any additional inspections. Todd Aff., Ex. C.

Moreover, RoundPoint's vendor actually performed inspections and there can be no dispute that the $15.00 fees that RoundPoint assessed to the Loan were reasonable in amount. Chang Decl., Ex. A, 141:4-10. Accordingly, the inspection fees that RoundPoint charged to the Loan from May 2017 through August 2017 were lawfully assessed in accordance with the DOT and the WVCCPA. RoundPoint is entitled to summary judgment on Count I of the Complaint.

141581.00711/132629099v.5

**2. Plaintiff's Flawed Interpretation of W. Va. Code §46A-2-115 is Inconsistent with its Unambiguous Language, and a Similar Misinterpretation was Soundly Rejected in *McFarland*.**

Plaintiff alleges that W. Va. Code §46A-2-115 does not permit a lender to assess inspection fees to consumers because these fees are not specifically enumerated in the list of fees contained in §46A-2-115(b)(2).  *See* Dkt. 53 at ¶¶10-15.  However, the *McFarland* court soundly rejected a nearly identical argument and provided the following explanation for its reasoning:

> The plaintiff's argument that *all* fees are prohibited, save those expressly enumerated by statute, is without merit. Section 46A–2–115 indicates that "reasonable expenses" may be charged by a lender as a result of default, *including* those expressly authorized by statute. Thus, reasonable expenses are permitted, as well as those authorized by statute.

19 F.Supp.3d at 676 (emphasis within); *see also Kesling*, 2011 WL 227637, at *5 (finding that §46A-2-115(a) expressly permits lenders to recover reasonable expenses incurred as a result of realizing on a security interest including "reasonable inspection fees").

Thus, any argument that lenders are barred from charging any fee that is not specifically enumerated in §46A-2-115(b)(2) is inconsistent with the plain language[11] of this statute.

Thus, for the reasons set forth above, it is unequivocal that both the DOT and West Virginia law[12] authorized RoundPoint to assess property inspection fees to the Loan.

---

[11] Additionally, §46A-2-115(a) states that "[e]xcept for reasonable expenses, **including costs and fees authorized by statute…**" (emphasis added).  The term "include" is defined as "[t]o contain part of something" while the participle "including" "typically includes a partial list." *See* Black's Law Dictionary 15c (11th ed. 2019).  The West Virginia legislature's use of the term "including" was intentional in that it clearly conveyed that "costs and fees authorized by statute" were among the type of reasonable expenses that lenders were permitted to assess to consumers.

[12] If the West Virginia legislature wished to prohibit lenders from assessing any expense that was not specifically enumerated in §46A-2-115(b)(2), it would have drafted subsection (a) to clearly state as such. For example, the legislature could have drafted subsection (a) to state that "Except for the reasonable expenses set forth in subsection (b)(2), no other costs and fees incurred in realizing on a security interest are permitted to be charged to consumers."  However, the legislature did not draft §46A-2-115 in this manner, and the *McFarland* and *Kesling* courts correctly interpreted it by ruling that subsection (a) permitted lenders to assess reasonable property inspection fees to consumers.

11

**3.  The DOT and W. Va. Code §46A-2-115(b)(2) Provided RoundPoint With the Authority to Assess the Title Certificate Fee.**

Pursuant to both Uniform Covenants 14 and 22 of the DOT, RoundPoint had the right to assess certain fees to the Loan, including costs of title evidence, in order to protect its security interest once Plaintiff defaulted.  Todd Aff., Ex. A.  In addition, W. Va. Code §46A-2-115(b)(2) states that consumer loan agreements may permit the recovery of a number of different charges, including "all costs incidental to a title examination including professional fees, expenses incident to travel and copies of real estate and tax records."  As the title fee was: 1) reasonable in amount; 2) actually incurred by RoundPoint; 3) incurred when the Loan was in default; and 4) incurred after the cure period, it was assessed pursuant to W. Va. Code §46A-2-115(b)(3).

As a result, both the DOT and West Virginia law provided RoundPoint with the authority to assess a title certificate fee of $225 to the Loan on July 28, 2017.  Thus, to the extent that Plaintiff alleges that this fee was improperly assessed to the Loan, such claim must be rejected.

**4.  W. Va. Code §46A-2-127 and §46A-2-128 Govern The Means of Collecting Fees, Not the Legality of Such Fees.**

Notably, in Count I, Plaintiff is <u>not</u> alleging that RoundPoint violated W. Va. Code §46A-2-115 by assessing the fees in question to the Loan.  Instead, she alleges that RoundPoint violated W. Va. Code §46A-2-124, §46A-2-127 and §46A-2-128 by ***threatening to collect*** additional fees and costs not permitted by law or contract.  *See* Dkt. 53 at ¶¶42-43.

As discussed more fully below, Plaintiff cannot articulate a claim under these sections because she has failed to provide any information whatsoever regarding the nature of these communications and why they were purportedly unlawful.  In addition, as the *McFarland* court stated, §46-A-127 and §46A-2-128 "merely address the *means* of collecting fees, not the legality of the underlying fees." 19 F.Supp.3d 663, 676 n. 3 (emphasis within); *see also Kesling*, 2011 WL 227637, at *5 (finding that §46A-2-115 and the loan agreement expressly authorized a

12

servicer to assess inspection fees to the plaintiff's loan and entering summary judgment in favor of the servicer on the plaintiff's §46A-2-127(g) and §46A-2-128(c) claims).

As such, Count I is deficient because Plaintiff has skipped a step by alleging that RoundPoint sought to collect fees and costs that are not permitted by law or contract without explaining how the fees were illegal. For this reason alone, RoundPoint is entitled to summary judgment with respect to Count I. In addition, because both the DOT and West Virginia law expressly authorized RoundPoint to assess the property inspection fees at issue to the Loan, Count I is insufficient as a matter of law and the entry of summary judgment is appropriate.

### C. <u>Once Plaintiff Deposited the Check, She Waived the Right to Assert a Claim Arising out of RoundPoint's Assessment of the Property Inspection Fees.</u>

In addition to being legally insufficient, Plaintiff's claims cannot survive summary judgment because she waived them once she deposited the Check. As set forth in Uniform Covenant 14 of the DOT, "Borrower's acceptance of any such refund made by direct payment to Borrower **<u>will constitute a waiver of any right of action Borrower might have arising out of such overcharge</u>**." Todd Aff., Ex. A at p. 9. While RoundPoint has demonstrated above that it was legally and contractually authorized to assess these fees to the Loan, if the Court were to find that RoundPoint was not permitted to assess one or more of these fees, Plaintiff has waived any cause of action that she previously possessed by depositing the Check.

In other words, once RoundPoint chose to issue the Check and Plaintiff voluntarily decided to accept it, she waived any right of action that she may have possessed arising out of the inspection fees that RoundPoint assessed. If Plaintiff wished to retain the ability to assert a claim against RoundPoint arising out of its assessment of property inspection fees, she should not have cashed the Check. However, Plaintiff cannot seek a windfall by both cashing the Check and filing a lawsuit against RoundPoint seeking to recover damages and attorneys' fees.

141581.00711/132629099v.5

Setting aside the fact that Plaintiff could not possibly have suffered any actual harm as a result of RoundPoint's lawful assessment of property inspection fees that she never paid, permitting Plaintiff to receive the double recovery that she is seeking would be both inequitable and unjust.  As such, application of both law and equity weigh in RoundPoint's favor and it is entitled to summary judgment on Counts I and II of the Amended Complaint.

> **D.  Plaintiff Lacks Standing to Maintain this Action Because She Was Fully Reimbursed for the Property Inspection Fees That RoundPoint Legally Assessed to the Loan and Has Not Suffered an Injury in Fact.**

Article III of the Constitution limits federal courts' jurisdiction to "cases" and "controversies." U.S. Const., Art. III, § 2. "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014).  The "irreducible constitutional minimum" of standing consists of three elements—a plaintiff must show (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "In sum, under Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (U.S. 2021).

"Particularized" injuries "affect the plaintiff in a personal and individual way." *Spokeo, Inc.*, 578 U.S. at 339.  Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *Ramirez*, 141 S. Ct. at 2206.  The harm needed to find standing must be something greater than a bare procedural violation, divorced from any concrete harm. *Spokeo, Inc.*, 578 U.S. at 341. "Under Article III, an injury in law is not an injury in fact." *Ramirez*, 141 S. Ct. at 2205. Thus, standing

14

is only conferred upon those plaintiffs "who have been *concretely* harmed by a defendant's statutory violation." *Id.* (emphasis within).[13]

After two years of litigation and full opportunity for discovery, Plaintiff has not shown that she suffered any particularized or concrete injury as a result of RoundPoint's lawful assessment of inspection fees. Rather, when RoundPoint made the business decision to issue the Check, Plaintiff received a payment for fees that were rightfully assessed and never repaid. It is well settled that a plaintiff who has not paid any allegedly unlawful property inspection fees cannot show that she incurred an ascertainable loss of money or property. *Benner v. Bank of America, N.A.*, 917 F.Supp.2d 338, 360 (E.D. Pa. 2013) (dismissing plaintiff's claim under a consumer protection statute arising out of his servicer's assessment of inspection fees and finding that the unpaid fees were an outstanding liability, not a loss of money or property); *see also Conway v. U.S. Bank, National Association*, 2019 WL 2320872, at *7-8 (E.D. Pa. May 29, 2019) (dismissing claim that servicer violated a consumer protection statute by assessing unlawful fees and finding that plaintiff failed to state a claim because he did not pay the fees).

Plaintiff has not suffered an injury-in-fact, and the entry of summary judgment on Counts I and II of the Amended Complaint is warranted.

**E.   RoundPoint is Entitled to Summary Judgment on Counts I and II of the Amended Complaint Because They are Derivative of Plaintiff's Flawed Argument that RoundPoint Lacked the Authority to Assess Inspection Fees and Because RoundPoint did not Engage in the Conduct Proscribed By the Statutes**

In Count I of the Complaint, Plaintiff alleges that RoundPoint violated numerous subsections of W. Va. Code §46A-2-127 and §46A-2-128 by "collecting or threatening to collect additional fees and costs not permitted by law or contract." *See* Dkt. 53 at ¶42. In addition,

---

[13] *See also Minix v. Central Source, LLC*, 2019 WL 6121413, at *7-8 (N.D. W. Va. Sept. 25, 2019) (finding that the plaintiff could not establish an injury in fact for purposes of standing under Article III because his allegations suggested mere procedural violations divorced from any concrete harm and he pled no information to suggest that she had been harmed in a particularized or concrete manner)

Plaintiff alleges that RoundPoint violated W. Va. Code §46A-2-124(f) by threatening to take action prohibited by law. *Id*. at ¶43. Similarly, in Count II, Plaintiff alleges that RoundPoint violated W. Va. Code §46A-2-127(d) "[b]y making false representations regarding additional fees and costs" and misrepresenting "the amount of a claim." *See* Dkt. 53 at ¶45.

RoundPoint is entitled to summary judgment with respect to the claims set forth in Counts I and II because they are premised entirely on the misguided notion that RoundPoint lacked the authority to assess property inspection fees to the Loan. Moreover, summary judgment is appropriate because RoundPoint is a loan servicer and does not fall within the WVCCPA's definition of a debt collector. In addition, Plaintiff's claims are legally insufficient because she cannot show that RoundPoint engaged in the types of unscrupulous, misleading or deceptive practices that are barred by §46A-2-124, §46A-2-127, and 46A-2-128.

### 1. RoundPoint is Entitled to Summary Judgment on Plaintiff's Claims Arising out of W. Va. Code §46A-2-127.

In Count I, Plaintiff alleges that RoundPoint violated §46A-2-127(g), which states that a debt collector violates §46A-2-127 when it makes "[a]ny representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation." In addition, in Count II, Plaintiff alleges that RoundPoint violated §46A-2-127(d), which proscribes a debt from making "[a]ny false representation or implication of the character, extent or amount of a claim against a consumer."

Plaintiff cannot assert a §46A-2-127 claim against RoundPoint because she cannot show that RoundPoint falls within the scope of the WVCCPA's definition of a "debt collector." As Plaintiff concedes throughout the Amended Complaint, RoundPoint is a mortgage servicer. *See* Dkt. 53 at ¶¶1, 3, 4. Critically, the Southern District of West Virginia has repeatedly expressed

141581.00711/132629099v.5

skepticism as to whether a mortgage servicer is a debt collector within the meaning of the WVCCPA.[14]  Because RoundPoint is a loan servicer and not a debt collector, RoundPoint is entitled to summary judgment on Plaintiff's §46A-2-127(d) and (g) claims.

In addition, Plaintiff cannot show that RoundPoint engaged in the types of misleading and deceptive debt collection practices that are barred by §46A-2-127.  While Plaintiff provides no information whatsoever regarding the communication(s) that give rise to her §46A-2-127 claims, RoundPoint believes that she may be alleging that it violated §46A-2-127(d) when it sent periodic statements indicating that the four property inspection fees at issue remained unpaid.

To the extent that Plaintiff's §46A-2-127 claims are premised on allegations that RoundPoint's purported misrepresentations were made in a monthly statement, this Court has made it abundantly clear on several occasions that a servicer cannot violate §46A-2-127 by sending a statement to a borrower. *See Rice v. Green Tree Servicing, LLC*, 2015 WL 5443708, at *12 (N.D. W. Va. Sept. 12, 2015) (Groh, J.) (finding that a servicer cannot be held liable under §46A-2-127 even when it sends monthly statements to a borrower that seeks to recover improperly-assessed amounts); *Perrine v. Branch Banking and Trust Company*, 2018 WL 11372226, at *5 (N.D. W. Va. Sept. 25, 2018) (Bailey, J.) (holding that a servicer cannot violate §46A-2-127(d) even if it issues monthly statements that contain an incorrect itemization of the total amount owed because the servicer was simply attempting to comply with its legal obligations and did not make any "false representations."); *Birchfield v. Rushmore Loan Management Services, LLC*, 2019 WL 9832188, at *13 (N.D. W. Va. Jan. 29, 2019) (Bailey, J.)

---

[14] *See e.g. Chirchir v. Citizens Bank, N.A.*, 2022 WL 407091, at *8 (S.D. W. Va. Feb. 9, 2022) (noting that "there is scant caselaw on whether a loan servicer qualifies as a debt collector under the WVCCPA" and dismissing the plaintiff's §46A-2-127 claim); *Delebreau v. Bayview Loan Servicing, LLC*, 770 F.Supp.2d 813, 819 n. 4 (S.D. W. Va. 2011) (noting that the language of the WVCCPA raises questions as to whether it applies to loan servicers); *Elkins v. Diversified Collection Serv., Inc.*, 2013 WL 3754830, at *4 (S.D. W. Va. July 15, 2013) (holding that the plaintiff did not allege any facts to show that his servicer was a debt collector as that term is defined in the WVCCPA and dismissing his claim)

(dismissing a nearly identical §46A-2-127(d) claim and finding that a servicer's issuance of monthly statements "simply could not be found in any way to be false or misleading.").

In *Rice*, this Court rejected the plaintiff's claim that a mortgage servicer violated §46A-2-127(d), held that the servicer's issuance of monthly statements did not rise to the level of the "unscrupulous collection practices" that are needed to establish a WVCCPA claim, and found that the servicer's conduct arguably did not constitute collection practices at all. 2015 WL 5443708, at *12. Despite the fact that the servicer sought to recover private mortgage insurance ("PMI") that it had no right to assess, this Court held that the servicer's inclusion of PMI on the statements was not a "false representation' because the servicer was simply attempting to comply with its obligations to send periodic statements to borrowers under state and federal law. *Id*.

This Court further held that the servicer's conduct "was not fraudulent, deceptive or misleading, as required for this Court to find a violation of West Virginia law" because its inclusion of PMI was the result of an incorrect interpretation of a federal statute. *Id*. It stated that "even if the Defendant's monthly billing statements could be construed as misleading or false representations of the amount of a claim owed, it would stretch too far the language and purpose of the WVCCPA to hold that the Defendant misled the Plaintiff while engaging in debt collection." *Id*; *see also Perrine*, 2018 WL 11372226, at *5 (holding that a servicer that sent monthly statements containing incorrect information did not violate §46A-2-127(d) because its conduct was not fraudulent, deceptive or misleading).

In *Birchfield*, this Court dismissed the plaintiffs' claim that their servicer committed 32 violations of §46A-2-127(d) by falsely representing the amount owed in connection with the loan on each monthly billing statement and reiterated that the statements were sent for the purpose of complying with state and federal law and could not constitute the type of fraudulent, deceptive,

or misleading conduct needed to establish a WVCCPA violation. *Id.*; *see also Chirchir*, 2022 WL 407091, at *8 (dismissing §46A-2-127 claim and holding that the plaintiff failed to show her servicer made any fraudulent statements in connection with an attempt to collect a debt).

When a servicer sends a communication to a borrower that accurately recites information regarding certain amounts that remain unpaid in connection with the loan, these communications cannot possibly be fraudulent, deceptive, or misleading as a matter of law. *Wittenberg v. First Independent Mortg. Co.*, 599 Fed.Appx. 463, 468-69 (4th Cir. 2013). In *Wittenberg*, the Fourth Circuit affirmed this Court's dismissal of the plaintiff's §46A-2-127 claim arising out of letters that her servicer claiming that the loan was delinquent. *Id*. Because the plaintiff conceded that the loan was delinquent, the court found that she could not articulate a §46A-2-127 claim based upon the servicer's allegedly fraudulent, deceptive, or misleading conduct. *Id.*[15]

Much like the servicers in *Rice, Perrine*, and *Birchfield*, RoundPoint was not engaging in any collection practices whatsoever – much less the "unscrupulous" types of practices that must be present to establish a violation of §46A-2-127 – when it sent monthly statements to Plaintiff insofar as it did so in order to comply with its legal obligations. Moreover, Plaintiff cannot show that RoundPoint made any misleading or false representations in these statements because it was providing Plaintiff with accurate itemizations of the amounts that it had assessed to the Loan and the amounts that remained unpaid. Stated differently, the routine servicing activities at issue in this case cannot possibly rise to the level of fraudulent, deceptive, or misleading behavior.

In addition, assuming purely for the sake of argument that this Court finds that RoundPoint lacked the entitlement to assess one of the property inspection fees to the Loan,

---

[15] *See also Davis v. DISH Network, LLC*, 2019 WL 5406241, at *7 (S.D. W. Va. Oct. 22, 2019) (entering summary judgment in favor of the defendant on a §46A-2-127(d) claim and finding that the defendant did not make any false representations when it issued bills to the plaintiff that referenced the disputed amounts at issue).

19

Plaintiff's §46A-2-127 claims would be nonetheless ripe for summary judgment because RoundPoint assessed these fees in accordance with its interpretation of the DOT, West Virginia law, and the holdings in *McFarland*, *Kesling*, and *Gillis*. As this Court held in *Rice*, a servicer does not violate §46A-2-127 when it relies upon its interpretation of a statute in assessing amounts to a loan and referencing them on monthly statements.

As a result, assuming for the sake of argument that this Court finds that RoundPoint was not permitted to seek reimbursement from Plaintiff for the property inspection fees that it paid to its vendor, RoundPoint's decision to assesses these fees and its subsequent inclusion of these amounts on the Loan's monthly statements was based upon its reasonable interpretations of the unambiguous language of the DOT, Fannie Mae and Freddie Mac's servicing guidelines, and the well-settled West Virginia case law that authorizes the assessment of these fees. Accordingly, in addition to being ripe for summary judgment on the grounds that RoundPoint possessed legal authority to assess property inspection fees to the Loan, Counts I and II are equally meritless if they are premised upon the periodic statements that RoundPoint sent to Plaintiff.[16]

### 2. RoundPoint is Entitled to Summary Judgment on Plaintiff's Claims Arising out of W. Va. Code §46A-2-128.

Much like her claims under W. Va. Code §46A-2127, Plaintiff's §46A-2-128 claims are insufficient because RoundPoint is a servicer, not a debt collector, and it did not engage in any of the conduct that is proscribed by this statute. W. Va. Code §46A-2-128 states that "[n]o debt

---

[16] Oddly, Plaintiff also asserts a claim under W. Va. Code §46A-2-127(c), which proscribes "[t]he failure to clearly disclose the name and full business address of the person to whom the claim has been assigned for collection, or to whom the claim is owed, at the time of making any demand for money." It is entirely unclear why Plaintiff believes that RoundPoint failed to clearly disclose its name and full business address on any communication that it sent to Plaintiff and/or how this subsection correlates with the assessment of property inspection fees. As a result, RoundPoint believes that Plaintiff's citation to this subsection was a typographical error. To the extent that Plaintiff contends that this was not an error and includes argument in her opposition in support of this attenuated claim, RoundPoint will provide a complete response in its reply.

collector may use unfair or unconscionable means to collect or attempt to collect any claim," and lists six examples of conduct that violates this section.  In Count I, Plaintiff alleges that RoundPoint violated §46A-2-128(c)'s prohibition on collecting or attempting to collect fees for services rendered.  In addition, Plaintiff alleges that RoundPoint violated §46A-2-128(d) by collecting or attempting to collect "any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating or modifying the obligation and by statute or regulation."

Plaintiff's claims under §46A-2-128 suffer from the same deficiencies as her §46A-2-127 claims insofar as she cannot demonstrate that RoundPoint is a debt collector or that it attempted to collect a debt from her and/or acted unfairly or unconscionably when it sent periodic monthly statements.  In addition, as set forth more fully *supra*, West Virginia courts have repeatedly rejected §46A-2-128 claims when they arise out of a servicer's assessment of inspection fees.[17]

Importantly, this Court and the Southern District of West Virginia have rejected §46A-2-128 claims when a borrower cannot provide any information to suggest that a servicer acted unfairly or unconscionably.  *See e.g. Perrine*, 2018 WL 11372226, at *5 (entering summary judgment on a §46A-2-128(d) claim, noting that the servicer's error did not occur in connection with the collection of a debt, and holding that the servicer's conduct "simply does not rise to the level of unscrupulous collection practices for which the WVCCPA was enacted").[18]

---

[17] *See e.g. McFarland*, 19 F.Supp.3d 663, 676 n. 3 (finding that the plaintiff failed to explain how §46A-2-128 – a statute governing the means of collecting fees – rendered the inspection fees at issue illegal); *Kesling*, 2011 WL 227637, at *5 (holding that there was no basis to conclude that the servicer assessed inspection fees in an "unfair or unconscionable" manner in violation of §46A-2-128(c)).

[18] *See also Chirchir*, 2022 WL 407091, at *8 (dismissing the plaintiff's §46A-2-128 claim and finding that any conduct by her servicer that allegedly included "any unfair or unconscionable means" did not occur while the servicer was attempting to collect a debt); *Chandler v. Greenlight Financial Services*, 2021 WL 1202078, at *20 (S.D. W. Va. Mar. 30, 2021) (dismissing the plaintiff's §46A-2-128 claim and finding that there was no indication that her loan servicer engaged in any form of debt collection); *Tucker v. Navy Federal Credit Union*, 2011 WL 6219852, at *8 (N.D. W. Va. Dec. 14, 2011) (finding that the

Because RoundPoint did not engage in collection practices by lawfully assessing inspection fees to the Loan and Plaintiff cannot show that RoundPoint acted unfairly or unconscionably, summary judgment should be granted on Plaintiff's §46A-2-128 claims.

### 3. Plaintiff's §46A-2-124(f) Claim is Meritless Because She Cannot Show That RoundPoint Acted Coercively by Exercising its Right to Assess Inspection Fees and Complying With its Servicing Obligations.

In Count I, Plaintiff alleges that RoundPoint violated W. Va. Code §46A-2-124(f), which bars debt collectors from coercively threatening to take any action prohibited by the WVCCPA or other law. However, Plaintiff offers no support whatsoever for her attenuated claim that RoundPoint acted coercively or made any threats whatsoever when it lawfully assessed property inspection fees to the Loan and issued monthly statements in accordance with its legal obligations to do so. *See e.g.* Chang Decl., Ex. D, 93:16-94:5. It is well-settled that when a plaintiff fails to offer any facts in support of his or her §46A-2-124, dismissal is warranted. *See e.g. Sanders v. CBCINNOVIS, Inc.*, 2016 WL 6811095, at *2 (N.D. W. Va. July 13, 2016) (holding that the plaintiff's §46A-2-124 claim was ripe for dismissal because there were no facts demonstrating that the defendant engaged in any threat, coercion or attempted coercion).

In *Davis*, the court held that the bills that the defendant sent "plainly employ no threats or coercion that would violate section 46A-2-124." 2019 WL 5406241, at *7. The court reasoned that while the WVCCPA bars certain abusive behaviors by debt collectors, it does not bar any attempt to collect a legitimate debt. *Id.*[19] Because Plaintiff has failed to produce any

---

loan agreements permitted a servicer to recover the costs at issue and dismissing the plaintiff's §46A-2-128(c) and (d) claims because they apply only when an agreement does not authorize the fees in dispute).

[19] *See also Hill v. SCA Credit Services, Inc.*, 2015 WL 1808930, at *4 (S.D. W. Va. Apr. 21, 2015) (dismissing §46A-2-124 claim and holding that there was no coercion present in the debt collection letters that the defendant sent); *Garretson v. Sentry Credit, Inc.*, 2018 WL 1659477, at *4 (S.D. W. Va. Apr. 3, 2018) (dismissing plaintiff's §46A-2-124 claim and deeming his argument that the defendant acted coercively to be unconvincing); *Barnette v. Equifax, Inc.*, 2019 WL 3491941, at *4 (S.D. W. Va. July 12,

information to suggest that RoundPoint engaged in threatening or coercive conduct, RoundPoint respectfully requests that this Court enter summary judgment in its favor on Plaintiff's §46A-2-124(f) claim.

**F. RoundPoint is Entitled to Summary Judgment on Count III Because Plaintiff Has Not Provided Any Factual Support for Her Attenuated Claims.**

In Count III, Plaintiff sets forth a kitchen sink of claims by alleging in unsupported fashion that RoundPoint violated five different sections of the WVCCPA. *See* Dkt. 53 at ¶¶46-50. The only facts that Plaintiff provides in support of these claims are the conclusory allegations that RoundPoint "called her more than thirty times per week or engaged her in telephone conversations more than ten times per week, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten her." *Id*. at ¶18. Plaintiff has not met her burden of proof with respect to these claims because she cannot show that RoundPoint is a debt collector, that it attempted to collect a debt, that it acted coercively, unfairly, or unconscionably, or that it made fraudulent, deceptive, or misleading representations.

Similarly, with respect to Plaintiff's §46A-2-125 and §46A-2-125(d) claims, she has failed to provide any documents or information to suggest that RoundPoint engaged in any oppressive, abusive, or unreasonable conduct during any of the telephone calls. Critically, a plaintiff asserting a claim under §46A-2-125(d) has the burden of proving that the defendant had the intent to annoy, abuse, oppress, or threaten. *See e.g. Valentine & Kebartas, Inc. v. Lenahan*, 239 W.Va. 416, 437 (2017) (finding that the mere fact that the defendant made 211 unanswered calls did not establish intent in violation of §46A-2-125(d) where the borrower never informed the defendant that he was disputing the debt or wished for all further calls to cease). When

2019) (deeming a §46A-2-124 claim to be ripe for dismissal because the plaintiff failed to allege any specific conduct by the defendant that would constitute threats or coercion).

141581.00711/132629099v.5

confronted with plaintiffs who asserted similarly bare claims and failed to sustain their burden of proof, West Virginia state and federal courts have found in favor of defendants.

For instance, in *Bourne v. Mapother & Mapother, P.S.C.*, 998 F.Supp.2d 495, 502 (S.D. W. Va. 2014), the court entered summary judgment in favor of the defendant on a pair of claims that are nearly identical to the ones Plaintiff is asserting herein. In entering summary judgment on the plaintiff's §46A-2-125 claim, the court held that there was no indication that defendants intended to or oppressed or abused the plaintiff by making 27 calls over eight months at normal times. *Id.* In addition, the court rejected the plaintiff's §46A-2-125(d) claim because the volume and nature of the calls made did not evince an intent to annoy, abuse, oppress, or threaten. *Id.*[20]

Much like the consumers in the above-referenced cases, Plaintiff has not shown that RoundPoint made any calls with the intent to annoy her or that these calls were abusive or oppressive in any way. Chang Decl., Ex. D at 142:9-22. Moreover, a cursory review of RoundPoint's servicing notes completely undercuts Plaintiff's assertions that RoundPoint called her more than 30 times or spoke to her on more than 10 occasions during a given week. Todd Aff., Ex. K. Instead, the notes show that, during the relevant timeframe (May 1, 2017 and after), RoundPoint made a reasonable number of calls to Plaintiff and that they mostly pertained to Plaintiff's modification application and subsequent trial and permanent modification offers.

Indeed, RoundPoint provided Plaintiff with recordings of 35 different calls that it made or received from Plaintiff between July 7, 2017 and March 21, 2019. Chang Decl. at ¶10.[21] At no point in any of these recordings did Plaintiff ever express frustration with the volume or nature of

---

[20] *See also White v. Ally Financial Inc.*, 2013 WL 1857266, at *5 (S.D. W. Va. May 2, 2013) (entering summary judgment on a §46-2-125(d) claim because the plaintiff could not show that the defendant oppressed or abused her when it made 21 calls over six months); *Adams v. Chrysler Financial Co., LLC*, 2013 WL 1385407, at *5 (S.D. W. Va. Apr. 3, 2013) (entering summary judgment and finding that the plaintiffs failed to supply any specific factual information to show that that the more than 35 calls that the defendant made rose to the level of violating §46A-2-125 or §46A-2-125(d)).

[21] 19 of these calls were made by RoundPoint, and 16 were made by Plaintiff. *Id.* at ¶11.

24

RoundPoint's calls, ask RoundPoint to stop calling her, or allege that RoundPoint was calling her at inconvenient times.  In addition, there is no indication that RoundPoint ever used abusive language or called Plaintiff for an illegitimate purpose.  Thus, RoundPoint could not possibly have had a duty to stop calling Plaintiff because she never expressed frustration with any of its communications or asked it to stop contacting her.

Although Plaintiff was asked several different questions regarding these allegedly unlawful calls during her deposition, she was unable to provide any factual support for her claims and repeatedly referenced calls that occurred before the statutory period began.  For instance, Plaintiff testified that the calls at issue probably took place in 2013 or 2014 and "maybe" occurred in 2017.  Chang Decl., Ex. D at 56:11-15.  She later testified that the allegedly harassing calls that she received from RoundPoint occurred shortly after RoundPoint began servicing the Loan in "2013 or 2014."  *Id*. at 60:5-18.  She further stated that the calls at issue did not occur after she applied for a loan modification in June 2017.  *Id*. at 142:9-22.

Because Plaintiff has not satisfied her burden with respect to any claim that she attempts to assert in Count III, the entry of summary judgment in RoundPoint's favor is warranted.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, RoundPoint respectfully requests that this Court grant the instant Motion and enter summary judgment in its favor and against Plaintiff.

Respectfully submitted,

**BLANK ROME LLP**

*/s/Carrie Goodwin Fenwick*
Carrie Goodwin Fenwick
WV Bar No. – 7164
GOODWIN & GOODWIN, LLP
300 Summers Street, Suite 1500
Charleston, WV 25301
(304) 346-7000

141581.00711/132629099v.5

cgf@goodwingoodwin.com

/s/ Kevin Eddy
Kevin Eddy
WV Bar No. – 12390
501 Grant Street, Suite 850
Pittsburgh, PA 15219
(412) 932-2757
Email: KEddy@BlankRome.com

/s/ Cheryl S. Chang
Cheryl S. Chang
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
(424) 239-3400
Email: Cheryl.Chang@BlankRome.com
(Admitted *Pro Hac Vice*)
*Counsel for Defendant*

Dated: September 19, 2023

26

## CERTIFICATE OF SERVICE

I, Carrie Goodwin Fenwick, hereby certify that on this 19th day of September, 2023, a

true copy of the foregoing document was served on the following parties via ECF:

Jason E. Causey, Esquire
Bordas & Bordas, PLLC
1358 National Road
Wheeling, WV 26003

Patricia M. Kipnis, Esquire
Bailey & Glasser LLP
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
*Attorneys for Plaintiff*

*/s/ Carrie Goodwin Fenwick*
Carrie Goodwin Fenwick

141581.00711/132629099v.5