**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| PATRICIA EDGE, in her own right and as representative of a class of persons similarly situated, | : : : : | Case No.: 1:21-cv-00122-TSK |
| Plaintiff, | : : | |
| vs. | : : | |
| ROUNDPOINT MORTGAGE SERVICING LLC, | : : : | |
| Defendant. | : : | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

**Page(s)**

I.     INTRODUCTION ........................................................................................... 1

II.    ARGUMENT .................................................................................................. 1

    A.    W. Va. Code §46A-2-115(a) Has Historically Authorized Lenders to Assess Reasonable Expenses, and the Legislature Amended this Section in 2016 to Reinforce a Lender's Right to Assess Inspection Fees to Defaulted Loans ................................................................................................. 1

    B.    Plaintiff's Flawed Interpretation of W. Va. Code §46A-2-115(a) and Failed Attempts to Distinguish *McFarland*, *Kesling*, and *Gillis* are Unpersuasive ..................................................................................... 3

        1.    Plaintiff's Deficient Interpretation of W. Va. Code §46A-2-115 is Inconsistent With This Section's Legislative History and Plain Language ......................................................................... 3

        2.    Plaintiff's Attempts to Discredit *McFarland*, *Kesling*, and *Gillis* are Unpersuasive and Belied by the Courts' Well-Reasoned Opinions ............................................................................ 5

    C.    The DOT's Waiver Provision Must Be Upheld Because Plaintiff Received Full Consideration and Knew that the Check Pertained to Fees that were Assessed ................................................................................... 7

    D.    Plaintiff Remains Unable to Show That She Possesses Article III Standing ......... 8

    E.    Plaintiff Cannot Show That RoundPoint's Issuance of Periodic Statements That Tracked Model Forms and Accurately Conveyed the Amount Owed on the Loan Can Give Rise to a Claim Under §46A-2-127 or §46A-2-128 .......... 9

    F.    This Court Should Disregard Arguments Concerning RoundPoint's Decision to Stop Assessing Inspection Fees and the Impact of its Witness's Testimony ............................................................................ 13

    G.    Plaintiff Remains Unable to Provide any Factual Support for Count III ............. 15

III.   CONCLUSION ........................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Carrington Mortgage Services, LLC,*
  23 F.4th 370 (4th Cir. 2022)................................................................2, 9

*Bailey v. Security Nat. Servicing Corp.,*
  154 F.3d 384 (7th Cir. 1998)................................................................ 12

*Benner v. Bank of America, N.A.,*
  917 F.Supp.2d 338 (E.D. Pa. 2013) ...................................................... 8

*Birchfield v. Rushmore Loan Management Services, LLC,*
  2019 WL 9832188 (N.D. W. Va. Jan. 29, 2019)................................... 11

*Blanton v. Huntington Mall Company,*
  2017 WL 4581798 (S.D. W. Va. Oct. 13, 2017).................................... 15

*Bloom v. Library Corp.,*
  112 F.Supp.3d 498 (N.D. W. Va. 2015)................................................. 2

*Boosahda v. Providence Dane LLC,*
  462 Fed.Appx. 331 (4th Cir. 2012)....................................................... 10

*Courtland Company, Inc. v. Union Carbide Corporation,*
  2022 WL 2545508 (S.D. W. Va. Apr. 14, 2022)................................... 15

*Davis v. DISH Network, LLC,*
  2019 WL 5406241 (S.D. W. Va. Oct. 22, 2019)..................................... 9

*Dawoudi v. Nationstar Mortgage LLC,*
  448 F.Supp.3d 918 (N.D. Ill. 2020) ....................................................... 7

*Dickerson v. CBET, Inc.,*
  2016 WL 7799578 (E.D. Tenn. Mar. 14, 2016)................................... 14

*Flagstar Bank, FSB v. Leintu,*
  Civil Action No. 15-C-320 (Berkeley Cty. Sept. 26, 2016)................... 12

*Gburek v. Litton Loan Servicing LP,*
  614 F.3d 380 (7th Cir. 2010)................................................................ 10

*Gillis v. Bayview Loan Servicing, LLC,*
  Civil Action No. 17-C-20 (Barbour Cty. Dec. 7, 2018)..................3, 5, 7

*Goodson v. Bank of America, N.A.,*
  600 Fed.Appx. 422 (6th Cir. 2015)....................................................... 10

*Green v. Spec. Loan Servicing, LLC*,
  766 Fed.Appx. 777 (11th Cir. 2019)............................................................ 12

*Grimmett v. Sunlight Financial LLC*,
  2023 WL 6449447 (S.D. W. Va. Oct. 3, 2023).......................................... 13

*Hanson v. Amerihome Mortgage Company, LLC*,
  2017 WL 6626328 (S.D. W. Va. Dec. 28, 2017)........................................ 13

*Kesling v. Countrywide Home Loans, Inc.*
  2011 WL 227637 (S.D. W. Va. Jan. 24, 2011)...................................*passim*

*Kline v. Mortgage Electronic Security Systems*,
  154 F.Supp.3d 567 (S.D. Ohio 2015)............................................................ 8

*Lilly v. Bank One Nat'l Ass'n*,
  No. 03-C-778K (Raleigh Cty. Jun. 6, 2005)................................................ 5

*Mabe v. Huntington Coca-Cola Bottling Co.*,
  145 W. Va. 712 (1960).................................................................................. 14

*Manning v. Wells Fargo Bank, N.A.*,
  2009 WL 10709758 (N.D. W. Va. Sept. 24, 2009)................................... 12

*Meadows v. Wal-Mart Stores, Inc.*,
  207 W.Va. 203 (1999).................................................................................... 4

*Parsons v. Columbia Gas Transmission, LLC*,
  2021 WL 5413675 (S.D. W. Va. Sept. 10, 2021)..................................... 15

*Parsons v. Halliburton Energy Services, Inc.*,
  237 W.Va. 138 (2016).................................................................................... 7

*Patrick v. PHH Mortg. Corp.*,
  937 F.Supp.2d 773 (N.D. W. Va. 2013)..............................................9, 12

*Perez v. Figi's Companies, Inc.*,
  2017 WL 1591894 (S.D. W. Va. Apr. 28, 2017)....................................... 9

*Perrine v. Branch Banking and Trust Company*,
  2018 WL 11372226 (N.D. W. Va. Sept. 25, 2018)..............................11, 12

*Puskarich v. BNSF Company*,
  2022 WL 611276 (D. Wyo. Feb. 22, 2022)................................................ 15

*Rice v. Green Tree Servicing, LLC*,
  2015 WL 5443708 (N.D. W. Va. Sept. 12, 2015)................................... 10

*Sanders v. CBCINNOVIS, Inc.*,
  2016 WL 6811095 (N.D. W. Va. July 13, 2016)..................................... 13

*Snapp v. United Transportation Union,*
    889 F.3d 1088 (9th Cir. 2018) ............................................................... 15

*Tribeca Lending Corp. v. McCormick,*
    231 W. Va. 455 (2013) ............................................................................. 3

*Tucker v. Navy Federal Credit Union,*
    2011 WL 6219852 (N.D. W. Va. Dec. 14, 2011) .................................... 13

*U.S. v. Henderson,*
    105 F.Supp.2d 523 (S.D. W. Va. 2000) ................................................... 4

*United States v. Hawley,*
    919 F.3d 252 (4th Cir. 2019) ................................................................... 2

*Vehicle Market Research, Inc. v. Mitchell International, Inc.,*
    839 F.3d 1251 (10th Cir. 2016) ............................................................. 15

*White v. Wyeth,*
    227 W. Va. 131 (2010) ............................................................................. 3

*Wince v. Easterbrooke Cellular Corp.,*
    681 F.Supp.2d 688 (N.D. W. Va. Feb. 2, 2010) ...................................... 8

**Statutes**

W. Va. Code §46A-1-107 ................................................................................. 7

W. Va. Code §46A-2-115 ........................................................................ *passim*

W. Va. Code §46A-2-124(f) ........................................................................... 13

W. Va. Code §46A-2-127 ........................................................................ *passim*

W. Va. Code §46A-2-128 ........................................................................ *passim*

**Other Authorities**

12 C.F.R. §1026.41 .................................................................................. *passim*

Defendant, RoundPoint Mortgage Servicing LLC ("RoundPoint"), files this reply in support of its Motion for Summary Judgment (the "Motion") to address several misleading arguments made in Plaintiff, Patricia Edge's ("Plaintiff") opposition (the "Opposition").

## I.   INTRODUCTION[1]

In her Opposition, Plaintiff restates arguments that she made in her dispositive motion that ask this Court to accept a flawed interpretation of W. Va. Code §46A-2-115 that has been rejected in all existing cases involving property inspection fees and is at odds with the plain language and legislative history of this section.  Despite West Virginia courts repeatedly holding that inspection fees may be assessed, Plaintiff demands that this Court ignore these well-reasoned decisions and the unambiguous language of §46A-2-115 permitting servicers to assess reasonable expenses.  Because Plaintiff cannot overcome RoundPoint's authority to assess these fees and her prior waiver of claims, the entry of summary judgment in RoundPoint's favor is warranted.

Additionally, because Plaintiff conceded that her debt collection claims arise out of periodic statements that RoundPoint sent in accordance with 12 C.F.R. §1026.41, she cannot show that RoundPoint engaged in the type of unscrupulous debt collection practices needed to establish a violation of W. Va. Code §46A-2-127 or §46A-2-128.  Thus, RoundPoint respectfully requests that this Court grant the Motion and reject Plaintiff's attempt to impose liability upon RoundPoint for lawfully assessing fees that she agreed to in writing and which are expressly permitted by law.

## II.   ARGUMENT

### A.   W. Va. Code §46A-2-115(a) Has Historically Authorized Lenders to Assess Reasonable Expenses, and the Legislature Amended this Section in 2016 to Reinforce a Lender's Right to Assess Inspection Fees to Defaulted Loans.

W. Va. Code §46A-2-115 is titled "Limitation on default charges."  In the version of this statute that existed from 2003 through June 2016, §46A-2-115(a) stated as follows: "Except for

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as those set forth in the Motion.

reasonable expenses including costs and fees authorized by statute incurred in realizing on a security interest, the agreement with respect to a consumer credit sale or a consumer loan may not provide for charges as a result of default by the consumer other than those authorized by this chapter." Declaration of Cheryl Chang ("Chang Decl."), Ex. A. In June 2016, the legislature made a series of amendments to §46A-2-115, including adding a comma after the phrase "Except for reasonable expenses" and before the term "including" so that §46A-2-115(a) stated as follows:

> "Except for reasonable expenses**, including** costs and fees authorized by statute incurred in realizing on a security interest, the agreements that evidence a consumer credit sale or a consumer loan may not provide for charges as a result of default by the consumer other than those authorized by this chapter"

*Id*. (emphasis added).

By inserting a comma after the phrase "Except for reasonable expenses," the legislature made it clear that loan agreements may deem default fees as recoverable provided that they are "reasonable expenses." In other words, if a default charge is reasonable and authorized by a loan agreement, it does not need to be expressly authorized by statute to be assessed. Similarly, the continued use of the term "including" reinforced that "costs and fees authorized by statute incurred in realizing on a security interest" are one example of the type of reasonable expenses that may be deemed recoverable. "[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." *United States v. Hawley*, 919 F.3d 252, 256 (4th Cir. 2019). The term "including" in a statute is "an introductory term for an *incomplete* list of examples." *Id*. (emphasis within). "When include is utilized in a statute, it is generally improper to conclude that entities not specifically enumerated are excluded." *Id*.[2]

Because there is no ambiguity in §46-2-115, this Court's analysis must end with the statute's plain language. *Bloom v. Library Corp.*, 112 F.Supp.3d 498, 504 (N.D. W. Va. 2015);

---

[2] *See also Alexander v. Carrington Mortgage Services, LLC*, 23 F.4th 370, 376 (4th Cir. 2022) ("[t]he participle *including* typically indicates a partial list") (emphasis within) (*quoting* Black's Law Dictionary (10th ed. 2014))

*see also Tribeca Lending Corp. v. McCormick*, 231 W. Va. 455, 460 (2013) ("[i]f the statutory language is plain and does not lend itself to multiple constructions, the statute's plain language must be applied as it is written").  In addition, because "reasonable expenses" is not defined in the WVCCPA, the term "reasonable" must be given its ordinary meaning of "[f]air, proper, or moderate under the circumstances; sensible." Black's Law Dictionary (11th ed. 2019).  Monthly property inspection fees of $15 that are only assessed post-default unequivocally meet this definition, as inspections are a longstanding common practice in the mortgage servicing industry.

Accordingly, W. Va. Code §46A-2-115(a) expressly authorizes assessing inspection fees when – as here – the loan agreement permits it, the loan is in default, and the fee is reasonable.

### B.  **Plaintiff's Flawed Interpretation of W. Va. Code §46A-2-115(a) and Failed Attempts to Distinguish *McFarland*, *Kesling*, and *Gillis* are Unpersuasive.**

#### 1.  **Plaintiff's Deficient Interpretation of W. Va. Code §46A-2-115 is Inconsistent With This Section's Legislative History and Plain Language.**

Plaintiff once again sets forth a series of tortured and illogical interpretations of §46A-2-115 that are unsupported by a single case and seek to impose unreasonable restrictions on a lender's ability to confirm the status of its collateral once a borrower defaults and is less likely to maintain her property. While Plaintiff argues that her interpretations are justified by the WVCCPA's remedial purpose, she disregards the fact that the WVCCPA has "dual legislative purposes of protecting consumers and **promoting sound and fair business practices**" and promoting "fair and honest competition." *White v. Wyeth*, 227 W. Va. 131, 139-40 (2010) (emphasis added).

It would stretch the purposes of the WVCCPA too far to adopt Plaintiff's narrow interpretation of §46A-2-115 and penalize lenders for engaging in the sound business practices of performing an inspection once a borrower defaults, paying a reasonable out-of-pocket cost for the inspection, and declaring that cost as recoverable in accordance with its contractual rights.  Plaintiff improperly seeks to limit §46A-2-115's scope to cover foreclosure fees only and to strip lenders of the ability to assess fees that arise from a borrower's default unless they are enumerated in the

3

WVCCPA.  In doing so, she improperly conflates collection and foreclosure costs with reasonable advances that lenders regularly make in order to protect their security interest and collateral.[3]

While Plaintiff goes to great lengths to explain the amendments made to §46A-2-115(b) in 2016, she seeks to minimize the importance of the amendments to (a) by labeling them "minor stylistic changes."  Opposition at p. 6-7.  The comma that the legislature carefully inserted following the term "except for reasonable expenses" was anything but minor in that it reinforced that "costs and fees authorized by statute incurred in realizing on a security interest" were simply one example of the types of reasonable expenses that may be deemed as recoverable in consumer loan agreements.  When parsing the language of a statute, "a cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute."  *Meadows v. Wal-Mart Stores, Inc.*, 207 W.Va. 203, 214 (1999).[4]

When read as a whole and providing meaning to every word and piece of punctuation contained therein, it is clear that §46A-2-115(a) was structured to permit loan agreements to provide for a default charge if it is a reasonable expense.  As such, if a default charge is a reasonable expense, it does not need to be expressly authorized by the WVCCPA to be deemed as recoverable.  No other reading of §46A-2-115(a) is tenable and reading it in Plaintiff's preferred manner would strip the opening phrase "Except for reasonable expenses" of meaning and render it superfluous.

---

[3] Plaintiff again relies upon a pair of inapposite opinion letters from the West Virginia Division of Financial Institutions that pertain to the recoverability of collection costs in the repossession context.  As set forth in RoundPoint's opposition to Plaintiff's dispositive motion, these letters contemplated the assessment of collection costs prior to a lender's repossession of its collateral.  The collection costs that lenders incur repossessing a vehicle or another form of collateral bear no similarity to contractually-authorized property inspection fees that are incurred for the purpose of ensuring that collateral is in satisfactory condition.  In addition, these letters predated several subsequent amendments to §46A-2-115 – most notably the 2016 one – and one of them appears to be interpreting a prior version that did not contain the term "including."  Moreover, and tellingly, these letters were not relied upon in any of the cases that either party cited to.

[4] *See also U.S. v. Henderson*, 105 F.Supp.2d 523, 530 (S.D. W. Va. 2000) (courts must perform a micro-analysis of statutes, analyze "the effect of every comma," and parse statutes into smaller phrases and words)

In addition, Plaintiff's narrow reading of §46A-2-115(a) would require this Court to declare that the WVCCPA bars lenders from exercising a myriad of longstanding powers to protect their collateral.  In the DOT, these powers include, but are not limited to, the following:

- Doing and paying "for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument" in the event that Plaintiff defaulted;
- Paying any sums secured by a lien which has priority over the DOT and declaring said amounts as a recoverable corporate advance; and
- Assessing charges "for services performed in connection with Borrower's default" and to protecting their interest in the Property and rights under the DOT.

Motion, Todd Aff., Ex. A at p. 6, 9-10.

Under Plaintiff's interpretation, her lender would be barred from recovering any of these amounts because they are not foreclosure fees and are not expressly enumerated in the WVCCPA. For instance, a borrower who permits her property to fall into a state of gross disrepair would be immune from having property preservation fees assessed simply because there is no language in §46A-2-115 expressly permitting lenders to recover these fees.  This untenable result illustrates the deficiencies and unintended consequences of Plaintiff's narrow interpretation of §46A-2-115.

### 2.   <u>Plaintiff's Attempts to Discredit *McFarland*, *Kesling*, and *Gillis* are Unpersuasive and Belied by the Courts' Well-Reasoned Opinions.</u>

In the Opposition, Plaintiff again insults the judiciary by arguing that *McFarland*, *Kesling*, and *Gillis* are "unpersuasive" and applied "a flawed analysis" or "no analysis at all" when rejecting identical claims involving inspection fees.  Opposition at p. 7-8.  Because Plaintiff is unable to cite to a single case[5] supporting her attenuated claims, she resorts to a series of hollow arguments that these cases – the relevant sections of which have never been criticized – were wrongly decided.

---

[5] Oddly, Plaintiff cites to four consent orders that were entered into nearly two decades ago and that reflected amicable resolutions to litigation involving a myriad of issues.  The fact that each defendant made the business decision to reach a resolution in lieu of incurring additional attorneys' fees does not equate to an admission that it committed wrongdoing and/or lacked the authority to assess the fees at issue.  In addition, these consent orders are not decisions on the merits and offer no precedential value whatsoever.  In fact, in *Lilly v. Bank One Nat'l Ass'n*, No. 03-C-778K (Raleigh Cty. Jun. 6, 2005), the court expressly stated that its order "reflects a voluntary agreement entered into by the parties, and adopted by the Court upon motion of the parties, for the purposes of settlement of this case only" and "<u>shall not be cited as precedent, or construed as an admission,</u> for purposes of…any other case." Opposition, Ex. 3 at p. 1 (emphasis added).

In attempting to distinguish *McFarland*, Plaintiff employs circular reasoning by alleging that the court erred in failing to adopt her misguided interpretation of §46A-2-115, despite the fact that this interpretation has never been adopted by a court.  Plaintiff also misstates *McFarland*'s holding and reasoning by alleging that the court "engaged in almost no analysis" of §46A-2-115(a)'s language and simply relied upon *Kesling*.  Opposition at p. 8.  In reality, *McFarland* closely examined §46A-2-115 and rejected the argument that "all default fees are prohibited except for those expressly enumerated by statute," deeming it to be "without merit." 19 F.Supp.3d at 676. Plaintiff also ignores the fact that the court placed significant emphasis on the legislature's use of "including" in §46A-2-115(a) and interpreted it to permit lenders to assess both reasonable expenses and expenses that are authorized by statute. *Id*. These findings were central to the court's holding that §46A-2-115 permits the assessment of inspection fees to a defaulted loan.[6]

Moreover, Plaintiff criticizes *McFarland*'s reliance on the plain meaning of "except for reasonable expenses" and "including" and alleges that its decision rendered the legislature's rule that a fee must be expressly authorized by statute in order to be recoverable as "mere surplusage." Opposition at p. 8.   However, it is **Plaintiff's** interpretation that seeks to create superfluous language in §46A-2-115(a) in that she asks this Court to strip the phrase "Except for reasonable expenses" of any meaning.  The legislature's use of this phrase and its insertion of it at the beginning of §46A-2-115(a) were intentional decisions meant to create an exception and convey that lenders are permitted to recover reasonable expenses incurred as a result of a borrower's default regardless of whether these expenses are expressly enumerated in the WVCCPA.

---

[6] While Plaintiff seeks to levy further criticism upon *McFarland* by noting that a portion of the decision was reversed by the Fourth Circuit (Opposition at p. 7), she fails to recognize that the holding regarding the legality of property inspection fees was not among the issues that were appealed.  If Mr. McFarland's experienced attorneys from Mountain State Justice shared Plaintiff's misguided beliefs that the court engaged in "almost no analysis" of §46A-2-115's language and erred by rejecting the plaintiff's property inspection fee claims, they certainly would have included that finding among the issues presented on appeal.

Plaintiff's criticism of *Kesling v. Countrywide Home Loans, Inc.* fares no better, as the court performed a thorough review of the terms in the deed of trust and the language of §46A-2-115, §46A-2-127, and §46A-2-128 in rejecting the plaintiff's claims and entering summary judgment.  2011 WL 227637, at *5 (S.D. W. Va. Jan. 24, 2011).  In holding that a lender is permitted to assess inspection fees to a loan in default, the court concluded that they fell within the scope of §46A-2-115(a)'s definition of "reasonable expenses." *Id.*[7] While Plaintiff attempts to minimize *Gillis v. Bayview Loan Servicing, LLC*, Civil Action No. 17-C-20 (Barbour Cty. Dec. 7, 2018), it was a well-reasoned and thorough decision that cited to *McFarland* and *Kesling* – the only reported West Virginia decisions that have opined on the recoverability of inspection fees.

Plaintiff's criticism of these decisions reflects her antagonism to the results that each court reached, not the reasoning that they employed in issuing their decisions.  As inconvenient as it may be for Plaintiff to be confronted with decisions that wholly undercut her claims, these cases were correctly decided and are entitled to substantial deference.

C. **The DOT's Waiver Provision Must Be Upheld Because Plaintiff Received Full Consideration and Knew that the Check Pertained to Fees that were Assessed.**

While Plaintiff alleges that the DOT's waiver provision is unenforceable pursuant to W. Va. Code §46A-1-107, she did not waive her right to assert a WVCCPA claim.  Rather, she waived the right to assert claims arising out of fees that the lender assessed in return for compensation. Plaintiff was presented with the choice between a full reimbursement for the inspection fees that were assessed and retaining her right to assert a claim related to these fees.  In choosing the former, she waived the right to bring this action, and it would be unjust to permit her to recover a windfall.[8]

---

[7] *Kesling* has been cited favorably by at least one federal court in support of the proposition that a servicer does not violate the FDCPA when it assesses property inspection fees that are expressly authorized by the subject mortgage. *See Dawoudi v. Nationstar Mortgage LLC*, 448 F.Supp.3d 918, 924 (N.D. Ill. 2020).

[8] *See e.g. Parsons v. Halliburton Energy Services, Inc.*, 237 W.Va. 138, 145 (2016) ("waiver requires proof of 'a voluntary act which implies a choice by the party to dispense with something of value, or to forego some advantage which he might at his option have demanded and insisted on'").

Plaintiff also speciously alleges that she did not waive her right to file this action because she did not know "what the check was for." Opposition at p. 13-14. However, in the March 2020 Letter, RoundPoint explained that it had reviewed her account, "discovered an over-collection of charges," and enclosed "a refund check…to reimburse you for the over-collection," and it provided Plaintiff with its contact information. *Id*. Thus, Plaintiff was made fully aware of the reason the Check was mailed and could have contacted RoundPoint if she had any questions.[9]

### D.  **Plaintiff Remains Unable to Show That She Possesses Article III Standing.**

In attempting to avoid the entry of summary judgment for lack of Article III standing, Plaintiff cites to distinguishable cases that bear no similarity to this matter. Critically, none of these cases involve fees that were not paid by the borrower and were nonetheless reimbursed. Courts routinely dismiss cases for lack of actual harm when borrowers assert claims arising out of fees that they never paid.[10] In addition, when a servicer issues a refund of an allegedly unlawful fee before an action is filed, the plaintiff cannot maintain a claim. *See e.g. Kline v. Mortgage Electronic Security Systems*, 154 F.Supp.3d 567 (S.D. Ohio 2015) (entering summary judgment in a servicer's favor on an FDCPA claim arising out of fees that the servicer refunded).[11]

Plaintiff lacks Article III standing because she cashed a $240 check that was written to compensate her for 16 inspection fees that **she never paid**. Knowing she never paid these fees, Plaintiff attempts to establish standing by alleging that she was not reimbursed for accrued interest. Opposition at p. 15. However, this $240 constituted 0.24% of the principal balance of $98,830.93. In addition, RoundPoint reimbursed Plaintiff for all 16 of the inspection fees that were assessed even though 8 of these fees totaling $120 were assessed more than four years prior and could not

---

[9] Despite Plaintiff's alleged confusion, she admitted under oath that she never contacted RoundPoint to obtain additional information regarding the Check. Motion at p. 6.

[10] *See e.g. Benner v. Bank of America, N.A.*, 917 F.Supp.2d 338, 360 (E.D. Pa. 2013).

[11] When a plaintiff fails to provide factual information to support a claim that he suffered a concrete injury, this Court has not hesitated to dismiss a WVCCPA claim. *See e.g. Wince v. Easterbrooke Cellular Corp.*, 681 F.Supp.2d 688, 693-94 (N.D. W. Va. Feb. 2, 2010) (dismissing WVCCPA claim).

give rise to a timely claim, and by the time that Plaintiff filed this action, only 4 of these fees could give rise to a timely WVCCPA claim. Accordingly, the payment of $240 that Plaintiff received greatly exceeds any compensatory damages that she could have hoped to obtain in this action.

### E. Plaintiff Cannot Show That RoundPoint's Issuance of Periodic Statements That Tracked Model Forms and Accurately Conveyed the Amount Owed on the Loan Can Give Rise to a Claim Under §46A-2-127 or §46A-2-128.

Moreover, Plaintiff is unable to show that RoundPoint was acting as a debt collector when it sent her periodic statements in accordance with 12 C.F.R. §1026.41. While Plaintiff cites to cases that merely denied a motion to dismiss and interpreted a different state's statute,[12] she cannot overcome the Southern District of West Virginia's holding in *Elkins* that a servicer was not a debt collector and its similar skepticism in *Chirchir*. Plaintiff's contentions are further undermined by the fact that the sole communications that give rise to her claims are periodic statements.

It is a false premise to suggest that "*any* communication after an initial imposition of an allegedly unlawful fee is an implicit attempt to collect that unlawful fee, and another violation of the [WVCCPA's] provisions barring such collection." *Perez v. Figi's Companies, Inc.*, 2017 WL 1591894, at *3 (S.D. W. Va. Apr. 28, 2017) (entering summary judgment in favor of defendant). "[W]hile the WVCCPA bars certain abusive behaviors by debt collectors, it does not bar any attempt to collect a legitimate debt." *Davis v. DISH Network, LLC*, 2019 WL 5406241, at *7 (S.D. W. Va. Oct. 22, 2019) (granting defendant's motion for summary judgment).

Although Plaintiff alleges that RoundPoint referenced property inspection fees on "form letters, such as reinstatement quotes, repayment plan notices, default notices and payoff statements," this assertion is supported solely by the testimony that RoundPoint's corporate designee provided regarding templates of the communications it sends to West Virginia consumers. Opposition at p. 18. While Plaintiff may find it convenient to invent facts, periodic

---

[12] In *Patrick v. PHH Mortg. Corp.*, 937 F.Supp.2d 773 (N.D. W. Va. 2013), this Court merely found that the plaintiff asserted allegations sufficient to withstand a motion to dismiss. Moreover, Plaintiff's citation to *Alexander* is inapposite, as the court interpreted a definition in a Maryland statute. 23 F.4th 370 at 375.

9

statements are the only form of correspondence that she enclosed with the Opposition and that RoundPoint sent to her within the statutory period. Thus, any correspondence that RoundPoint sent to Plaintiff before May 1, 2017 or that it sent to other consumers are of no import.

Accordingly, with respect to Plaintiff's allegations that RoundPoint attempted to collect inspection fees, the sole question is whether RoundPoint's issuance of periodic statements can give rise to a §46A-2-127 or §46A-2-128 claim. This Court has repeatedly answered this question in the negative, including certain instances where a servicer's statements referenced amounts that it was not legally permitted to assess.[13] Even if a servicer is ordered to pay damages to a borrower for assessing improper amounts in violation of a federal statute, its inclusion of these amounts on a periodic statement does not constitute a violation of §46A-2-127. *Rice v. Green Tree Servicing, LLC*, 2015 WL 5443708, at *12 (N.D. W. Va. Sept. 12, 2015). In *Rice*, this Court entered summary judgment in a servicer's favor on a §46A-2-127 claim despite the servicer including PMI that it assessed in violation of the Homeowners Protection Act of 1998 in periodic statements. *Id*.

Similarly, RoundPoint's assessment of the inspection fees was based upon its interpretation of a statute and the inclusion of these amounts on periodic statements was done to provide an accurate itemization of the total amount owed. Thus, even if this Court were to find that RoundPoint lacked the authority to assess the inspection fees, RoundPoint could not be deemed to have violated §46A-2-127 or §46A-2-128 by including these fees on periodic statements since they were assessed in accordance with a well-reasoned interpretation of §46A-2-115 and applicable

---

[13] While Plaintiff attempts to seize upon a disclaimer that RoundPoint provided in its periodic statement indicating that it was a debt collector and was attempting to collect a debt, it is widely accepted that these types of disclaimers are of no significance when evaluating unlawful debt collection claims. *See e.g. Boosahda v. Providence Dane LLC*, 462 Fed.Appx. 331, 334 (4th Cir. 2012); *Goodson v. Bank of America, N.A.*, 600 Fed.Appx. 422, 432 (6th Cir. 2015) (declaring that the use of a similar disclaimer did not transform an informational letter into debt collection activity and the inclusion of the disclaimer was "legally irrelevant"); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386, n. 3 (7th Cir. 2010) (holding that the use of a similar disclaimer did not automatically trigger the protections of the FDCPA).

case law.  Accordingly, Plaintiff cannot plausibly allege that the inclusion of these amounts on her statements constituted a fraudulent, deceptive, or misleading action.[14]

Indeed, if a servicer's periodic statements contain inaccurate information regarding the total amount owed, its conduct cannot violate §46A-2-127 or §46A-2-128 when the statements are modeled after the sample forms provided by the Consumer Financial Protection Bureau.  *Perrine v. Branch Banking and Trust Company*, 2018 WL 11372226, at *5 (N.D. W. Va. Sept. 25, 2018). Like the servicer in *Perrine*, RoundPoint issued periodic statements in compliance with 12 C.F.R. §1026.41[15] and modeled its statements after the Sample Form of Periodic Statement attached to §1026.41 as Appendix H-30.   Chang Decl., Ex. B.  RoundPoint's use of this sample form was designed to ensure that it supplied an "Explanation of Amount Due" that provided a line item breakdown of the composition of the amount due in connection with the Loan.

Thus, even if this Court were to find that RoundPoint was not permitted to assess one of the inspection fees at issue, it must still reject Plaintiff's contentions that RoundPoint was "engaging in debt collection activity" by providing an itemized breakdown of the total amount owed and a summary of the fees that were assessed. RoundPoint styled its periodic statements in this manner in order to comply with §1026.41, and its inclusion of this information cannot possibly constitute an attempt to collect a debt, much less an unscrupulous one.[16]

---

[14] While Plaintiff takes issue with *Rice*'s use of "unscrupulous," arguing this term is not found within the text of the WVCCPA, this Court's use of unscrupulous was included in a citation to the Supreme Court of Appeals of West Virginia's statement in *Thomas* (a decision Plaintiff relies upon for other purposes) that recited the WVCCPA's design of protecting against unscrupulous collection practices.

[15] 12 C.F.R. §1026.41 sets forth, in detail, the required content and layout of the periodic statements that servicers are required to send to borrowers.  These statements must include, among other things, the payment due date, the amount due, an explanation and breakdown of the amount due, the total sum of any fees or charges imposed since the last statement was issued, a breakdown of all payments received since the last statement was issued, and a list of transactions that occurred since the last statement was issued. *See* 12 C.F.R. §1026.41(d).  In addition, if the loan is past due by more than 45 days, the statement must include, among other things, the total payment amount needed to bring the account current. *Id.*

[16] This Court reached a similar conclusion in *Birchfield v. Rushmore Loan Management Services, LLC*, 2019 WL 9832188, at *14 (N.D. W. Va. Jan. 29, 2019), where it noted that a servicer's periodic statements merely showed the amount owed on the loan and were entirely accurate representations that "simply could not be found in any way to be false or misleading."

11

Moreover, Plaintiff cannot cite to a single decision holding that a servicer attempted to collect a debt in violation of the WVCCPA when sending a periodic statement.[17] While she alleges that "numerous courts have recognized that representations made in billing statements are debt collection activity and may violate consumer laws," these decisions simply denied dispositive motions. For instance, in *Manning v. Wells Fargo Bank, N.A.*, 2009 WL 10709758, at *6 (N.D. W. Va. Sept. 24, 2009), this Court denied a motion to dismiss and allowed for the possibility that the plaintiffs *may* have a §46A-2-127 claim if they could show that the defendant sent statements that included charges for "unauthorized and illegal fees."[18] In *Patrick* – another case that denied a motion to dismiss and was decided before §1026.41 was enacted – this Court never mentioned whether the communications at issue were monthly statements. 937 F.Supp.2d at 784-85.[19]

In attempting to salvage her claims, Plaintiff falsely alleges that none of the cases cited by RoundPoint involved a §46A-2-127(g) claim. In *Perrine*, the plaintiffs' counsel – the same attorney who represents Plaintiff – filed a dispositive motion alleging that the defendant committed a separate violation of §46A-2-127(g) with each monthly statement's inclusion of an insurance premium that the defendant lacked the authority to assess. Chang Decl., Ex. C at p. 11. Similarly, in an opposition to the defendant's dispositive motion, the plaintiffs asserted a familiar argument that the issuance of monthly statements referencing the unpaid premium was a debt collection

---

[17] Although Plaintiff cites to a trio of decisions where courts refused to dismiss claims pursuant to the FDCPA that arose out of a servicer's issuance of monthly statements, multiple circuit courts of appeal have held that a servicer's issuance of a periodic statement is not an attempt to collect a debt. *See e.g. Green v. Spec. Loan Servicing, LLC*, 766 Fed.Appx. 777, 784 (11th Cir. 2019) (monthly statements are not an unlawful debt collection communication); *Bailey v. Security Nat. Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998) (a monthly statement was not an attempt to collect a debt because it did not demand payment, merely informed the plaintiffs about the status of their loan, and contained prospective due dates only).

[18] Importantly, this decision was issued several years before 12 C.F.R. §1026.41 was enacted, contained no discussion of a servicer's obligation to send periodic statements, and did not even specify whether the "statements" it referred to were periodic statements or other forms of servicing communications.

[19] While Plaintiff believes that *Flagstar Bank, FSB v. Leintu*, Civil Action No. 15-C-320 (Berkeley Cty. Sept. 26, 2016) supports her claims, the court's one-paragraph disposition denying the defendant's motion for summary judgment lumped together its analysis regarding the representations that the defendant made in letters with information provided in billing statements. Similarly, the court made no distinction between the legality of attorneys' fees and property inspection fees and cited to no case law in reserving further decision for trial because of the presence of disputed facts.

activity that violated the WVCCPA because §46A-2-127(g) prohibits "*any representation* that illegitimate fees may be added to a borrower's account." *Id*., Ex. D at p. 17 (emphasis within). This Court granted the defendant's motion, thus rejecting Plaintiff's argument that 46A-2-127(g)'s use of the term "any" includes periodic statements; s*ee also Tucker v. Navy Federal Credit Union*, 2011 WL 6219852, at *7-8 (N.D. W. Va. Dec. 14, 2011) (dismissing §46A-2-127(g) claim and rejecting a claim that the defendant made a fraudulent, deceptive, or misleading representation).[20]

Thus, in addition to failing to show that RoundPoint lacked the authority to assess property inspection fees, Plaintiff cannot demonstrate that RoundPoint's inclusion of these amounts on its periodic statements in accordance with the express language of the DOT and its interpretation of West Virginia law can give rise to a claim under §46A-2-127 or §46A-2-128.[21]

**F.   This Court Should Disregard Arguments Concerning RoundPoint's Decision to Stop Assessing Inspection Fees and the Impact of its Witness's Testimony.**

Plaintiff alleges with no support that RoundPoint's decision to stop assessing inspection fees to West Virginia consumers was an admission that it lacked the authority to do so. Opposition at p. 3. In alleging in conclusory fashion that this change in practices was "an acknowledgement that no West Virginia statute expressly authorized" inspection fees, Plaintiff is merely attempting

---

[20] Similarly, this Court should reject Plaintiff's misguided attempt to lighten the pleading standard for her §46A-2-127(g) claim and equate the absence of the term "false" in that subsection with a declaration that any representation is sufficient to establish a claim. In asserting this unsupported argument, Plaintiff ignores the preamble to §46A-2-127, which proscribes "fraudulent, deceptive or misleading" representations. Plaintiff is required to meet a heightened standard and supply particular information showing that RoundPoint deceived or intended to deceive her in order to state a §46A-2-127 claim, and her failure to do so is fatal to her claim. *See e.g. Grimmett v. Sunlight Financial LLC*, 2023 WL 6449447, at *9 (S.D. W. Va. Oct. 3, 2023) (dismissing WVCCPA claim); *Hanson v. Amerihome Mortgage Company, LLC*, 2017 WL 6626328, at *4 (S.D. W. Va. Dec. 28, 2017) (dismissing the plaintiffs' §46A-2-127 claims because they could not show that their loan servicer acted deceptively or misled them).

[21] Curiously, Plaintiff alleges that her claim pursuant to W. Va. Code §46A-2-124(f) "is merely derivative of claims already addressed" and that further discussion is "unnecessary." Opposition at p. 24. However, this claim requires Plaintiff to show that RoundPoint acted coercively or made threats to her when it assessed inspection fees and issued monthly statements referencing these fees. A claim that a servicer acted coercively or made certain threats is not derivative of any of Plaintiff's §46A-2-127 or §46A-2-128 claims, and her failure to supply any facts or argument in support of this claim warrants the entry of summary judgment in RoundPoint's favor. *See e.g. Sanders v. CBCINNOVIS, Inc.*, 2016 WL 6811095, at *2 (N.D. W. Va. July 13, 2016) (holding that the plaintiff's §46A-2-124 claim was ripe for dismissal because there were no facts demonstrating that the defendant engaged in any threat, coercion or attempted coercion).

to distract this Court from the lack of factual and legal basis for her claims. █████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ ▪

Plaintiff's reliance upon RoundPoint's decision as an artificial basis to support her claims is contrary to public policy and the evidentiary rules that bar parties from attempting to use subsequent remedial measures as evidence of culpability. *See e.g. Mabe v. Huntington Coca-Cola Bottling Co.*, 145 W. Va. 712, 718 (1960) ("any precaution for the future is not to be construed as an admission of responsibility in the past").[23]  In addition, adopting this argument would chill voluntary reimbursements by lenders who might chose to avoid similar arguments.

Plaintiff also doubles down on a desperate argument that she asserted in her motion and that makes improper use of the legal conclusions that Ms. Todd was asked to testify to.  Plaintiff alleges that Ms. Todd's testimony contains "multiple admissions" that somehow bind RoundPoint and "completely undercut its theory of the case."  Opposition at p. 2.  Moreover, Plaintiff alleges that this testimony established that inspection fees were not incurred in realizing on a security interest and that RoundPoint could not identify a statutory basis for assessing them.  *Id*. at p. 2-3.

In support of her contentions, Plaintiff cites to a pair of decisions that merely stand for the proposition that a <u>fact</u> a corporate designee testifies to is binding upon a corporation.  Neither of these decisions held that a designee's legal conclusions are binding on the designating party, and it is widely accepted that the inverse is true.[24]  It is also well-settled that a 30(b)(6) deposition is

─────────────────────

▪ ██████████████████████████████████████████████ ████

[23] *See also Dickerson v. CBET, Inc.*, 2016 WL 7799578, at *5 (E.D. Tenn. Mar. 14, 2016) (barring plaintiff from relying upon defendant's decision to cease using a form to support her FDCPA claim because the Federal Rules of Evidence prohibit the use of subsequent remedial measures to prove culpable conduct).
[24] *See e.g. Vehicle Market Research, Inc. v. Mitchell International, Inc.*, 839 F.3d 1251, 1260-61 (10th Cir. 2016) ("a 30(b)(6) witness's legal conclusions are not binding on the party who designated him"); *Snapp*

not an appropriate vehicle to ascertain a corporate party's litigation positions. *Courtland Company, Inc. v. Union Carbide Corporation*, 2022 WL 2545508, at *2 (S.D. W. Va. Apr. 14, 2022). Accordingly, a party may not elicit testimony from a corporate designee that "asks for conclusions as to ultimate issues." *Id.*[25] Plaintiff's misplaced reliance upon the legal conclusions of a lay witness belie her failure to demonstrate that RoundPoint lacked the authority to assess inspection fees. As such, Plaintiff cannot use these conclusions to support her poorly-founded claims

### G. Plaintiff Remains Unable to Provide any Factual Support for Count III.

Plaintiff makes a half-hearted attempt to offer support for her individual claims by claiming that RoundPoint "simply ignores [her] testimony." Opposition at p. 24. To the contrary, RoundPoint referenced several different areas of testimony in the Motion, highlighted the inconsistencies in the information that Plaintiff supplied, and noted her admission that the calls at issue likely occurred in 2013 or 2014. Tellingly, Plaintiff makes no reference to the contents of the 35 call recordings that she received in discovery involving calls that took place between July 2017 and March 2019. Because there is nothing present in these recordings to support Plaintiff's claims, she is left to rely upon her vague recollection of calls that occurred nearly one decade ago.

While Plaintiff makes a conclusory reference to the "volume" of calls, she provides no specifics regarding the dates of the calls at issue despite receiving Servicing Notes and recordings and appears to be merely relying upon the scattershot information pled in the Amended Complaint. Because Plaintiff failed to provide this information and cannot establish that the calls at issue occurred in or after May 2017, the entry of summary judgment in RoundPoint's favor is warranted.

---

*v. United Transportation Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) ("a Rule 30(b)(6) deponent's own interpretation of the facts or legal conclusions do not bind the entity"); and *Puskarich v. BNSF Company*, 2022 WL 611276, at *6 (D. Wyo. Feb. 22, 2022) (declaring that "[q]uestioning a lay witness about legal conclusions surrounding asserted affirmative defenses is improper" and stating that questions seeking to bind a corporate defendant to legal positions are not a proper line of questioning for a deposition).

[25] S*ee also Parsons v. Columbia Gas Transmission, LLC*, 2021 WL 5413675, at *1 (S.D. W. Va. Sept. 10, 2021) (it is improper to ask a 30(b)(6) witness to testify regarding legal conclusions about the ultimate issues in the case); *Blanton v. Huntington Mall Company*, 2017 WL 4581798, at *5 (S.D. W. Va. Oct. 13, 2017) (plaintiff improperly asked a 30(b)(6) witness to provide testimony regarding a legal conclusion).

### III.  <u>CONCLUSION</u>

For the foregoing reasons, RoundPoint respectfully requests that this Court enter an Order granting its Motion for Summary Judgment.

Respectfully submitted,

**BLANK ROME LLP**

*/s/Carrie Goodwin Fenwick*
Carrie Goodwin Fenwick
WV Bar No. – 7164
GOODWIN & GOODWIN, LLP
300 Summers Street, Suite 1500
Charleston, WV 25301
(304) 346-7000
cgf@goodwingoodwin.com

*/s/ Kevin Eddy*
Kevin Eddy
WV Bar No. – 12390
501 Grant Street, Suite 850
Pittsburgh, PA 15219
(412) 932-2757
Email: KEddy@BlankRome.com

*/s/ Cheryl S. Chang*
Cheryl S. Chang
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
(424) 239-3400
Email: Cheryl.Chang@BlankRome.com
(Admitted *Pro Hac Vice*)
*Counsel for Defendant*

Dated: October 25, 2023

## <u>CERTIFICATE OF SERVICE</u>

I, Carrie Goodwin Fenwick, hereby certify that on this 25th day of October, 2023, a true

copy of the foregoing document was served on the following parties via electronic mail and ECF:

Jason E. Causey, Esquire
Bordas & Bordas, PLLC
1358 National Road
Wheeling, WV 26003

Patricia M. Kipnis, Esquire
Bailey & Glasser LLP
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
*Attorneys for Plaintiff*

*/s/ Carrie Goodwin Fenwick*
Carrie Goodwin Fenwick