IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

PATRICIA EDGE in her own right and as
representative of a class of persons
similarly situated,

       Plaintiff,

v.                               CIVIL ACTION NO. 1:21-CV-122
                                       (KLEEH)

ROUNDPOINT MORTGAGE SERVICING CORPORATION,

       Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 105] AND DENYING PLAINTIFF'S PARTIAL
MOTION FOR SUMMARY JUDGMENT [ECF NO. 103]**

Pending before the Court are *Plaintiff's Motion for Partial
Summary Judgment* [ECF No. 103] and *Defendant's Motion for
Summary Judgment* [ECF No. 105]. For the reasons discussed
herein, Plaintiff Patricia Edge's Motion [ECF No. 103] is **DENIED**
and Defendant RoundPoint Mortgage Servicing Corporation's Motion
[ECF No. 105] is **GRANTED**.

## I.    RELEVANT PROCEDURAL HISTORY

On September 2, 2021, Defendant RoundPoint Mortgage
Servicing Corporation ("RoundPoint") removed this action from
the Circuit Court of Harrison County, West Virginia. ECF No. 1.
On August 1, 2022, Plaintiff Patricia Edge ("Plaintiff" or
"Edge") filed a motion for leave to file an amended class
complaint, which was granted. ECF Nos. 41, 52, 53. On August 22,

2023, Plaintiff filed a motion for class certification [ECF No. 84], which the Court granted on March 29, 2024. ECF No. 154.

On September 19, 2023, Plaintiff moved for partial summary judgment. ECF No. 103. Defendant responded in opposition to Plaintiff's Motion on October 10, 2023 [ECF No. 121] and Plaintiff replied in support of her Motion [ECF No. 139]. Simultaneously, Defendant also moved for summary judgment on all claims on September 19, 2023. ECF No. 105. Plaintiff responded in opposition to Defendant's Motion on October 11, 2023 [ECF No. 123] and Defendant replied in support of summary judgment on October 25, 2023 [ECF No. 128]. On November 15, 2023, the Court took up arguments on both motions. During the hearing, the Court granted a joint motion to dismiss the W.Va. Code §46A-2-124(f) claims in Count I of the Amended Complaint. Both motions are fully briefed and ripe for review.

## II.  <u>FACTUAL BACKGROUND</u>

Plaintiff Patricia Edge received a loan on April 26, 2002, in the amount of $128,000.00 that was secured by a Deed of Trust ("DOT") and Note. ECF No. 110, Def. Mem. Supp. Mot. Summ. J, Affidavit of Amber Todd at Exs. A, B. The DOT permitted RoundPoint to make property inspections and provides a mechanism for issuing refunds on loan charges. Todd Aff., Ex. A at p. 6. Uniform Covenant 14 of the DOT states:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, . . . property inspection and valuation fees.

Id. at p. 9. The DOT further provides that if Plaintiff defaults on her loan and wishes to reinstate it, she must among other things pay "all expenses incurred in enforcing the Security Instrument, including, but not limited to . . . property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument." Id. at p. 10

Plaintiff alleges that RoundPoint impermissibly profits from the homeowners whose mortgages it services by charging and collecting illegal property inspection fees which are not permitted by statute. Am. Compl. ¶¶ 5-17. RoundPoint began serving Edge's loan on September 1, 2014. Todd Aff. at ¶ 8. At such time, Plaintiff was experiencing financial difficulties [Pl. Ex. 3, Edge Dep. at 5-60] and was already in default because the August 2014 installment was past due. Todd Aff. at ¶ 8, Ex. C.

As of December 30, 2016, Plaintiff's loan was brought current. Todd Aff., Ex. C. However, Plaintiff then failed to make January or February 2017 payments. Id. Plaintiff made payments on March 28, 2017 and March 31, 2017 to satisfy the

January and February assessments. Id. RoundPoint sent aNotice of Right to Cure, notifying Edge that she was in default on April 25, 2017. Id. at Ex. D. Plaintiff did not make another loan payment until August 31, 2017. Id. at Ex. C.

On April 28, 2017, a vendor on behalf of RoundPoint performed a property inspection on the subject property. Id. at ¶10, Ex. E. The vendor assessed Defendant a $15.00 charge for completing the inspection. Id. RoundPoint paid the vendor and then assessed a property inspection fee of $15.00 to Edge's loan on May 1, 2017 in accordance with Uniform Covenant 14 of the DOT. Id. at ¶11, Ex. C. Because Plaintiff remained in default, RoundPoint's vendor performed inspections of the Property on June 2, 2017, July 3, 2017, and August 6, 2017 and assessed a charge of $15.00 to RoundPoint for each inspection. Id. Upon paying the vendor for each inspection, Defendant then assessed a $15.00 property inspection fee to Edge's loan on June 5, 2017, July 5, 2017, and August 8, 2017. Id. at ¶13, Ex. C.

Just as Edge's loan was being referred to foreclosure, Plaintiff submitted a request for loan modification assistance on June 30, 2017. Id. at ¶18, Ex. I. Plaintiff was approved for a trial period plan on August 10, 2017. Id. The approval letter informed Plaintiff that if she made her first trial payment in a timely fashion, RoundPoint would suspend all foreclosure-related activities. Id. Plaintiff made her first trial payment on August

4

31, 2017. Id. at Ex. C. After Plaintiff completed the trial plan, she entered into a Loan Modification Agreement with RoundPoint in December 2017 in which Plaintiff and RoundPoint agreed that RoundPoint would capitalize $4,978.96 in past due principal, interest, escrow, and recoverable loan charges into the unpaid principal balance of the loan in order to bring the loan current Id. at Ex. J at p. 1. On April 1, 2019, RoundPoint transferred the servicing of the loan to BSI Financial Services, Inc. Id. at ¶22.

In February 2019, Defendant made the business decision to stop assessing inspection fees to all loans secured by West Virginia properties. ECF No. 110, Def. Mem. Supp. Mot. Summ. J., Declaration of Cheryl Yang at Ex. A, 22:4-23:19. Roundpoint further decided in March 2020 to reimburse West Virginia borrowers who were current on their loans for the property inspection fees. Plaintiff received a check for $240 and a letter explaining the check was a reimbursement for over-collection of fees. Id. at Ex. C; Todd Aff. at ¶ 23. Plaintiff deposited the check in her bank account. Todd Aff. at ¶ 25; Chang Dec., Ex. D, Edge Dep. at 78:12-14, 82:1-3.

Plaintiff alleges that RoundPoint impermissibly profits from the homeowners whose mortgages it services by charging and collecting illegal property inspection fees which are not permitted by statute. Am. Compl. ¶¶ 5-17. Plaintiff specifically

alleges that her loan history and mortgage billing statements confirm RoundPoint assessed these property inspection fees to her four times within the applicable statute of limitations.

### III. <u>LEGAL STANDARD</u>

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." <u>Id.</u> at 317–18.

Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The Court views the evidence in the light most favorable to the non-moving party and draws any reasonable inferences in the non-moving party's favor. <u>See</u> Fed. R. Civ. P.

56(a); see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

"When faced with cross-motions for summary judgment, the court must review each motion on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). The same standards of review apply when both parties file motions for summary judgment. See ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 45 n. 3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment — even where . . . both parties have filed cross motions for summary judgment").

## IV.   DISCUSSION

Plaintiff's Amended Complaint alleges that RoundPoint's property inspection fee is an illegal assessment of fees under sections 46A-2-127(d), -127(g), -128(c), and -128(d) of the West Virginia Consumer Credit and Protect Act ("WVCCPA").

For the reasons that follow, Defendant is entitled to summary judgment on each of Plaintiff's claims. Thus, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Partial Motion for Summary Judgment is **DENIED**.

### A. WVCCPA Statutory Provisions Relevant to Count I and Count II.

Section 127 of the WVCCPA prohibits a debt collector from using "any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." W. Va. Code §46A-2-127. Section 127 provides instances of conduct which are deemed to violate the section. Id. Relevant here, Plaintiff claims that Defendant's conduct violated §46A-2-127(d) and (g) in Counts I and II.[1] Under §46A-2-127(d), a debt collector cannot make "[a]ny false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding." And, under §46A-2-127(g), a debt collector cannot make "[a]ny representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation."

Section 46A-2-128 of the WVCCPA provides that "[n]o debt collector may use unfair or unconscionable means to collect or attempt to collect any claim." W. Va. Code §46A-2-128. Specifically, Plaintiff alleges RoundPoint violated §46A-2-128(c), which prohibits "[t]he collection or the attempt to

_____

[1] While Plaintiff's Amended Complaint references violations of §46A-2-127(c) in Count I, Plaintiff's briefing throughout the case focuses only on subsections (d) and (g).

8

collect from the consumer all or any part of the debt collector's fee or charge for services rendered," and §46A-2-128(d), which provides: "The collection of or the attempt to collect any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating or modifying the obligation and by statute or regulation."

### B. Plaintiff Edge Possesses Article III Standing.

As an initial matter, the Court finds Plaintiff Edge has standing to bring her claims. Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const., Art. III, § 2. Article III standing ensures that the judicial process stays in balance with the other political branches and that the courts perform a properly judicial role. Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). Thus, the "irreducible constitutional minimum" of standing requires three elements — a plaintiff must show (1) she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury must be fairly traceably, or a causal connection, to challenged conduct by the defendant; and (3) the injury is likely redressable by a favorable judicial

decision, not merely speculative. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-561 (1992).

A "particularized" injury "affect[s] the plaintiff in a personal and individual way." <u>Spokeo, Inc.</u>, 678 U.S. at 339. Concrete injuries are "real, and not abstract," and the most obvious concrete injuries are tangible harms, like a monetary harm. <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413, 424-425 (2021).

Here, Defendant argues that Plaintiff Edge did not suffer a particularized or concrete injury because she was reimbursed for the property inspection fees. ECF No. 106 at pp. 14-15. Thus, Defendant contends that Plaintiff has not incurred an ascertainable loss of money or property because she did not pay the allegedly unlawful inspection fees. <u>Id.</u> Plaintiff, in contrast, asserts that Edge and other class members who were issued a refund still have standing because they were charged the property inspection fees and were not refunded for more than a year following the final inspection fee. ECF No. 120 at pp. 14-15. Edge thus asserts that the temporal loss of the $240 dollars qualifies as an economic injury. <u>Id.</u> at p. 15. Furthermore, the refund did not include the interest that accrued on the fees as RoundPoint added them to the "Unpaid Principal Balance" on Edge's loan modification. <u>Id.</u> Thus, the $240 became subject to 6.875 percent annual interest. <u>Id.</u>

Here, Plaintiff has Article III standing because she was assessed the property inspection fees and has not been reimbursed for the accumulating interest from said fees. See Parker v. Goldman Sachs Mortg. Co. Ltd. P'ship., 596 F.Supp. 3d 559, 566-67 (D. Md. 2022) (finding borrowers had standing when they alleged claims arising from illegal property inspection fees). In addition, the injury is concrete because a monetary harm is a real, tangible injury. Furthermore, the injury is actual or imminent as Plaintiff suffers monetary harm through the added interest. There is a causal connection between the alleged injury of added interest and the challenged action of charging property inspection fees. Finally, a favorable judicial decision would redress Edge's injury because she would be able to recover the interest added to the principal loan as a result of the inspection fees. Thus, Plaintiff Edge has standing.

### C. Defendant RoundPoint is a "Debt Collector" under the WVCCPA.

Under the WVCCPA, a "debt collector" includes "any person or organization engaging directly or indirectly in debt collection." W. Va. Code §46A-2-122(d). Furthermore, debt collection "means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer." Id. at §46A-2-122(c).

The Supreme Court of Appeals of West Virginia has further clarified that the plain meaning of §46A-2-122 "requires that the provisions of article 2 of Chapter 46A regulating improper debt collection practices in consumer credit sales must be applied alike to all who engage in debt collection, be they professional debt collectors or creditors collecting their own debts." Syl. Pt. 3, <u>Thomas v. Firestone Tire & Rubber Co.</u>, 266 S.E.2d 905 (W. Va. 1980); <u>Barr v. NCB Mgmt. Servs., Inc.</u>, 711 S.E.2d 577, 583 (W. Va. 2011). "The Court emphasized the legislature's use of the word 'any' in defining a debt collector, and stated 'it would be improper for this Court to limit the application of the statute to the activities of professional collection agencies.'" <u>Patrick v. PHH Mortg. Corp.</u>, 937 F. Supp. 2d 773, 782 (N.D.W. Va. 2013) (discussing <u>Thomas</u>, 266 S.E.2d 905). <u>See</u> <u>Alexander v. Carrington Mortg. Servs, LLC</u>, 23 F.4th 370, 375 (4th Cir. 2022) (finding a loan servicer is a debt collector because it is "collecting borrowers' monthly mortgage payments").

While Defendant argues to the contrary, West Virginia law makes clear that RoundPoint, as a loan servicer, falls within the WVCCPA's definition of a debt collector. By servicing Edge and other class members' loans, RoundPoint was collecting money due and owing on the loans, as a professional debt collector. Thus, this argument rightfully fails.

### D. Plaintiff Did Not Waive Her WVCCPA Claims.

While the DOT included a waiver provision, the waiver is unenforceable, here, against WVCCPA claims. W. Va. Code §46A-1-107 provides: "Except as otherwise provided in this chapter, a consumer may not waive or agree to forego rights or benefits under this chapter or under article two-a, chapter forty-six of this code." §46A-1-107. See Clements v. HSBC Auto Finance, Inc., 2010 WL 4281697 (S.D.W. Va. Oct. 19, 2010) ("Even assuming *arguendo* that Plaintiffs did consent, W.Va. Code Section 46A-1-107 provides that a consumer may not 'waive or agree to forgo rights or benefits' under the WVCCPA."). Thus, Edge's or any other class members' acceptance of the refund check for the property inspection fees would not prohibit them from pursuing their claims and receiving other damages under the WVCCPA, if successful. Thus, the waiver argument fails.

### E. The Property Inspection Fees are Lawful.

Though Plaintiff possesses Article III standing and did not waive her claims, the claims still fail as a matter of law because the subject property inspection fees did not violate the WVCCPA and are lawful.

W. Va. Code §46A-2-115, titled "Limitation on default charges" provides in pertinent part:

> (a)   Except   for   reasonable   expenses,
> including   costs   and   fees   authorized   by
> statute   incurred   in   realizing   on   a   security

> interest, the agreements that evidence a
> consumer credit sale or a consumer loan may
> not provide for charges as a result of
> default by the consumer other than those
> authorized by this chapter.

§46A-2-115(a). "Section 46A-2-115 indicates that 'reasonable expenses' may be charged by a lender as a result of default, including those expressly authorized by statute. Thus, reasonable expenses are permitted, as well as those authorized by statute." McFarland v. Wells Fargo Bank, N.A., 19 F. Supp. 3d 663, 676 (S.D.W. Va. 2014), aff'd in part, vacated in part, 810 F.3d 273 (4th Cir. 2016) (vacated on other grounds). Thus, lawful default fees under §46A-2-115(a) "must (1) be incurred 'in realizing on a security interest' and (2) be reasonable." Id. (finding the property inspection fees were lawful and granting summary judgement in favor of bank). Property inspection fees are incurred in realizing on a security interest because they occur once a debtor is in default and the debt collector has the right to foreclose. Id. See Kesling v. Countrywide Home Loans, Inc., 2011 WL 227637, at *5 (S.D.W. Va. Jan. 24, 2011) (finding §46A-2-115(a) provides statutory authorization for debt collectors imposition of reasonable inspection fees); Gillis v. Bayview Loan Servicing, LLC, Civil Action No. 17-C-20 (Barbour County Cir. Ct. Dec. 7, 2018) (finding property preservation fees permitted under West Virginia law).

Here, Plaintiff argues that §46A-2-128(d) prohibits a creditor from charging any fee unless it (1) appears in the contract itself, and (2) is <u>expressly</u> authorized by West Virginia statute or regulation. Pl. Mem in Supp of Partial Summ. J., ECF No. 104-1 at p. 1. Plaintiff further asserts that because §46A-2-115(a) does not expressly authorize property inspection fees, RoundPoint violated §127 and §128 of the WVCCPA. <u>Id.</u> at p. 7. Plaintiff first argues that its reading of the statute is clear and based on its plain language. <u>Id.</u> at p. 13. ("[T]o come within the exception, a fee must be expressly authorized by the WVCCPA or another provision governing the foreclosure of real estate,"). Alternatively, Plaintiff argues that §46A-2-115(a) is ambiguous and thus subject to statutory interpretation. Thus, relying on various forms of statutory construction, Plaintiff contends the legislative intent; rule of *in pari materia*; regulatory guidance, legislative history, and case law; and the rule against absurd result all support that §128(d) requires an express authorization and that §115(a) does not provide for said express authorization. <u>Id.</u> at pp. 14-23.

In contrast, Defendant asserts that the WVCCPA unambiguously provides, and case law supports, that a servicer may assess property inspection fees to a loan in default. ECF No. 110 at p. 8. Moreover, RoundPoint argues that a West Virginia Court already rejected Edge's argument and

interpretation of §46A-2-115(a). Id. at p. 11 (citing McFarland, 19 F. Supp. 3d at 676 ("The plaintiff's argument that all fees are prohibited, save those expressly enumerated by statute, is without merit. Section 46A-2-115 indicates that 'reasonable expenses' may be charged by a lender as a result of default, including those expressly authorized by statute. Thus, reasonable expenses are permitted, as well as those authorized by statute."). Furthermore, in opposition to Plaintiff's partial motion for summary judgment, Defendant highlights that the 2016 amendments to §115(a) inserted a comma after "reasonable expenses" and before "including", indicating that "costs and fees authorized by statute incurred in realizing on a security interest" are just an example of the permitted reasonable fees. ECF No. 126 at pp. 7-8.

With this framework in mind, Defendant thus argues that the subject property inspection fees are lawful because they were assessed when Edge was in default on her loan and the DOT authorized RoundPoint to inspect the property. ECF No. 110 at p. 10. Defendant further argues that $15.00 inspection fee was reasonable and the inspections for which Edge was billed, did occur. Id.

The Court agrees with Defendant's and multiple West Virginia courts' interpretation of §46A-2-115(a). On its face, the statute authorizes "reasonable expenses" and by using

16

"including" and an offset clause with the illustrative example
of statutorily authorized costs and fees. As the Supreme Court
of the United States and the Fourth Circuit have recognized, "the
term 'including' is not one of all-embracing definition, but
connotes simply an illustrative application of the general
principle." United States v. Hawley, 919 F.3d 252, 256 (4th Cir.
2019) (quoting Federal Land Bank of St. Paul v. Bismarck Lumber
Co., 314 U.S. 95 (1941)). Rather, "[w]hen 'include' is utilized
in a statute, it is generally improper to conclude that entities
not specifically enumerated are excluded." Hawley, 919 F.3d at
256 (quoting Jones v. Am. Postal Workers Union, 192 F.3d 417,
426 (4th Cir. 1999)).

Thus, §115(a) unambiguously provides an exception for
reasonable expenses and permits contractual agreements that
allow the cost of default fees to be passed on to the debtor. In
addition to the plain reading of §115(a), the Court is persuaded
by the well-reasoned opinions of its fellow State and Federal
West Virginian Courts. McFarland, 19 F. Supp. 3d at 676;
Kesling, 2011 WL 227637, at *5; Gillis, Civil Action No. 17-C-20
(Barbour County Cir. Ct. Dec. 7, 2018). Plaintiff offers no
legitimate argument to discount these cases, beyond simply
disagreeing with them. This Court declines to find contrary to
its fellow Courts when it separately agrees that §115(a) is not
ambiguous and is plainly not limited to "costs and fees

17

authorized by statute incurred in realizing on a security interest." Plaintiff's reading of the statute is not supported by this State's case law and similarly makes the statutes use of the word "including" superfluous. Thus, this Court hereby finds that W. Va. Code §46A-2-115(a) authorizes "reasonable" fees associated with "realizing on a security interest." Thus, Plaintiff's Motion for Partial Summary Judgment is **DENIED**. ECF No. 103.

Applying §46A-2-115(a) to the case at issue, the Court further finds that RoundPoint's property inspection fees are lawful. Lawful default fees under §46A-2-115(a) "must (1) be incurred 'in realizing on a security interest' and (2) be reasonable." McFarland, 19 F. Supp. 3d at 676. First, the undisputed facts show that Defendant assessed the property inspection fees between May 2017 and August 2017 when Edge was in default on her loan. Second, Plaintiff agreed in the DOT to allow the lender or its agents to "make reasonable entries upon and inspections of the Property." Todd Aff., Ex. A at p. 6. Further, the DOT states the "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, . . . property inspection and valuation fees." Id. at p. 9. The DOT further provided that Plaintiff would be in

18

default of her loan if she did not pay the full monthly payments on time. Id. at p. 2. Here, the property inspection fees clearly were charged when Edge was in default on her loan in 2017. Moreover, the inspection fee was associated with realizing Defendant's security interest because it needed to ensure that the property was maintained in good condition. This finding is further supported by the fact that the property inspections ceased once Plaintiff's loan modification was accepted and RoundPoint was no longer pursuing foreclosure.

Finally, Plaintiff does not readily dispute that a $15.00 inspection fee is reasonable. The vendors completing the inspections charged RoundPoint $15.00 per inspection, which RoundPoint then assessed to Plaintiff. Defendant did not make a profit by charging only the expenses it incurred in realizing its security interest. Thus, the property inspection fees were lawfully assessed against Plaintiff.

Accordingly, Defendant's Motion for Summary Judgment [ECF No. 105] is **GRANTED** as to Plaintiff's claims in Count I for illegal fees and Count II for false representation of amount of claim [ECF No. 53] because the property inspection fees are lawful under the WVCCPA.

**F. Defendant's Motion for Summary Judgement is Granted as to Count III.**

Finally, the Court addresses Edge's individual claim which asserts RoundPoint violated five different sections of the WVCCPA: §46A-2-124, -125, -125(d), -127, and -128. ECF No. 53. For the reasons stated supra, Plaintiff's claims under §127 and §128 fail as a matter of law because RoundPoint did not assess an unlawful fee or fraudulently misrepresent the amount owed by Plaintiff.

Section 124 of the WVCCPA provides that "[n]o debt collector shall collect or attempt to collect any money alleged to be due and owing by means of any threat, coercion or attempt to coerce." W. Va. Code §46A-2-124. Specifically, Plaintiff alleged in the Amended Complaint that RoundPoint attempted to collect the debt by coercion. ECF No. 53 at ¶ 49(b).

Section 125 of the WVCCPA prohibits a debt collector from "unreasonably oppress[ing] or abus[ing] any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another." §46A-2-125. Furthermore, §125(d) prohibits "calling any person more than thirty times per week or engaging any person in telephone conversation more than ten times per week, or at unusual times or times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number." §46A-2-

125(d). Whether a debt collector's conduct violates §125(d) is held to the standpoint of a reasonable person. Id. Calls between 8:00 a.m. and 9:00 p.m. are assumed convenient times for communicating. Id.

Here, Defendant argues that Count III fails as to §124 and §125 because Plaintiff has not shown that Defendant acted coercively, unfairly, or unconscionably, or that it made fraudulent, deceptive, or misleading representations. ECF No. 110 at p. 23. Specifically, Defendant argues that Plaintiff has not presented any evidence that Defendant acted with the intent to annoy, abuse, oppress, or threaten her when calling her regarding her loan. Id. Moreover, Defendant denies that it made more than 30 calls to Plaintiff per week or spoke with her on more than ten occasions in one week between July 2017 and March 2019. Id. at p. 24. Rather, the record includes 35 call recordings in the subject time frame between RoundPoint and Edge. Id.; Chang Decl. at ¶10. Defendant further contends that Edge's testimony does not support her claim because the alleged harassing calls occurred when RoundPoint started servicing the loan (2013 or 2014) and did not happen after she applied for a loan modification in June 2017. Chang Decl., Ex. D at 60:5-18; 142:9-22.

In contrast, Plaintiff argues that a genuine fact exists as to Count III because Plaintiff testified that the frequency of

21

calls varied and that she sometimes received more than one call a day [Edge Depo., at 55-56, 60.]; that the calls made her feel like a dead beat [Id., at 59]; and that she was told to make the payments as soon as possible or she would go into foreclosure [Edge Depo., at 96]. Thus, Plaintiff contends that she has met her burden on intent, through her testimony, based on the volume and nature of the calls. ECF No. 120 at p. 25.

Here, Plaintiff has failed to create a genuine issue of material fact that she was threatened, coerced, or oppressed by RoundPoint between July 2017 and March 2019 in their efforts to collect the money owed. First, the evidence shows that Plaintiff initiated 16 of the 35 calls between the parties between July 2017 and March 2019. Many of the calls pertained to Plaintiff's loan modification. The record shows that Plaintiff did not express frustration to RoundPoint regarding the number, nature, or timing of the phone calls.

Furthermore, Edge's deposition testimony, despite Plaintiff's contentions, does not support Count III. Importantly, the nonmoving party must bring forward affidavits or other evidence displaying the genuine issue of material fact for trial. Celotex, 477 U.S. at 323-325. Nowhere in the Plaintiff's deposition does it specify that the calls that were allegedly threatening in nature were made during the statute of

limitations.[2] Rather, Plaintiff testified in the deposition that the alleged threatening calls likely took place in 2013-2014 and the calls at issue did not continue after applying for loan modification in June 2017. Chang Decl., Ex. D, Edge Dep. at 56:11-15, 142:9-22. What is more, even if Defendant did call Plaintiff once per day, that would be a permissible volume of calls under §125(d). And, it is a fact – acknowledged in the DOT – that foreclosure can occur if Plaintiff fails to pay her monthly loan payment. While this may have been upsetting for Plaintiff to hear, Defendant sharing this reality with her is not evidence of a threat. Thus, the nature and volume of the calls does not support Plaintiff's claims in Count III.

Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Count III and Count III of Plaintiff's Amended Complaint [ECF No. 53] is **DISMISSED**.

## V.   CONCLUSION

For the reasons stated herein, *Defendant's Motion for Summary Judgment* [ECF No. 105] is **GRANTED** and *Plaintiff's Motion for Partial Summary Judgment* [ECF No. 103] is **DENIED**. Plaintiff's Amended Complaint [ECF No. 53] is **DISMISSED WITH PREJUDICE**.

---

[2] See W. Va. Code §46A-5-101(1) (requiring that "no action pursuant to this subsection may be brought more than four years after the violations occurred").

This action is thus **STRICKEN** from the Court's active docket and the Clerk is **DIRECTED** to enter judgment in favor of RoundPoint Mortgage Servicing Corporation.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record by the CM/ECF system.

**DATED:**  September 27, 2024

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA